IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **335 RIGHTERS FERRY ROAD, LP,** *Plaintiff*, | : : : | **CIVIL ACTION** |
| v. | : : | |
| **MINNO & WASKO ARCHITECTS AND PLANNERS, PC** *and* **MOORE CONSULTING ENGINEERS, LLC,** *Defendants*. | : : : : : | **NO. 23-cv-1963** |

**MEMORANDUM**

**KENNEY, J.**                                                                                    **NOVEMBER 1, 2024**

The Court writes for the benefit of counsel and the parties. Third-Party Defendant Harkins Builders' Inc. ("Harkins") moves to dismiss Third-Party Plaintiff Minno & Wasko Architects and Planners, PC ("M&W")'s Third-Party Complaint. ECF No. 81. For the reasons discussed here, this motion is denied as to Counts I, II, III, IV, and V, and granted as to Counts VI and VII.

**A. Counts I and II**

Count I (Contribution) and Count II (Common Law Indemnification) remain in this case because M&W has stated claims upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6) and the *Iqbal*/*Twombly* framework. Harkins asserts that the gist-of-the-action doctrine bars these claims because Harkins's legal duty to Plaintiff 335 Righters Ferry Road, LP ("Owner") is purely contractual in nature, such that M&W and Harkins cannot be joint tort-feasors. ECF No. 92 at 2. However, under Pennsylvania law, "[a] party to a contract has two duties: a contractual duty and a legal duty to act without negligence towards both the other party to the contract and third parties." *Reformed Church of Ascension v. Theodore Hooven & Sons, Inc.*, 764 A.2d 1106, 1110 (Pa. Super. Ct. 2000) (citation omitted). Thus, if Harkins breached a legal duty to Owner to

act without negligence, Harkins can conceivably be a joint tort-feasor with M&W. *See Zurich Am. Ins. Co. v. A.T. Chadwick Co., In*c., No. 20-2180, 2022 WL 425890, at *2 (E.D. Pa. Feb. 11, 2022) (finding that if the contractor breached its duty to the property owner by making a faulty temporary repair to a water pipe, then the contractor and company hired by the owner to make a permanent repair could be jointly liable to the owner for damages caused by the repair).

M&W has pled ample facts that, accepted as true, make plausible M&W's claims that Harkins, as General Contractor, created conditions that resulted in damages to Owner's building and thus may be liable for all or some of those damages (*see, e.g.*, deposition testimony from Rick Sudall, managing director of Owner: "Harkins was absolutely cutting corners" to finish construction of the building. ECF No. 72-4, Dep. Tr.  254:23 – 255:2). *See also Zurich*, 2022 WL 425890, at *2 ("[I]n creating temporary conditions, a contractor has a duty to use reasonable care to create those conditions safely for those whom the contractor has reason to know may be affected." (citation omitted)). Thus, these claims survive Harkins's motion to dismiss.

**B. Count III**

In Count III (Contractual Indemnification), M&W avers that § 3.18 of the contract between Owner and Harkins indemnifies M&W for claims, including those made against M&W by Plaintiff itself, that arise out of Harkins's alleged negligence. ECF No. 72 ¶ 148. Harkins responds that the contract only indemnifies M&W for third-party claims made against Owner, not claims made by Owner itself against M&W. That is, Harkins asserts, the contract does not indemnify M&W for "first-party" claims. Both sides present caselaw in support of their differing contract interpretations, to no clear result. None of the cases cited by the parties are on point with respect to the factual scenario here, where an indemnitee (M&W), who is ***not*** a party to the operative contract, is sued by a party to the contract (Owner).

In the absence of caselaw mirroring the facts here, M&W presents instances where the court has interpreted an indemnification clause as guarding an owner against claims made by first parties, not third parties only. For example, in *STS Holdings, Inc. v. CDI Corp.*, No. 99-3480, 2004 WL 739869, at *1 (E.D. Pa. March 19, 2004), STS and CDI entered a stock purchase agreement and STS sued CDI for damages. To avoid having damages capped at $1,000,000, as stipulated by the agreement, STS argued that the indemnification clause applied only to third-party claims against STS. *Id.* at *2. The court disagreed, holding that the clause did not expressly do so. *Id.* at *3.

M&W also cites *Waynesborough Country Club of Chester Cty. v. Diedrich Niles Bolton Architects, Inc.*, No. 07-155, 2008 WL 4916029 (E.D. Pa. Nov. 12, 2008), to argue that an indemnification clause does not apply to third-party claims only. In that case, the club and the architect entered a contract, and the club sued the architect for damages. *Id.* at *1. The club then sought to recoup attorneys' fees from the architect under the contract's indemnification clause, which the architect argued applied to third-party claims only. *Id.* at *2. The court disagreed, holding that, as in *STS Holdings*, the plain language of the indemnification clause did not limit indemnification for attorneys' fees to third-party claims. *Id.* at *5.

M&W reasons that, based on this caselaw, the indemnification language in the Owner-Harkins contract obligates Harkins to indemnify M&W against claims by Owner. However, before finding that M&W has successfully "unlock[ed] the doors to discovery," the Court must take a closer look at Harkins's analysis in support of its Motion to Dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Harkins, like M&W, lacks caselaw that squarely supports its arguments. Nevertheless, Harkins cites two cases—*Jalapenos, LLC v. GRC Gen. Contractor, Inc.*, 939 A.2d 925 (Pa. Super.

3

Ct. 2007) and *Church Mut. Ins. Co. v. Palmer Constr. Co.*, 153 F. App'x 805 (3d Cir. 2005)—to argue that indemnification agreements "ordinarily relate to third-party claims against a contracting party, not claims by one of the contracting parties." ECF No. 81 at 29. In discussing *Jalapenos*, Harkins latches onto the lower court's finding that the indemnification clause in the parties' contract only pertained to Jalapenos's losses to third parties. *Id.*, citing *Jalapenos*, 939 A.2d at 932. Yet, as M&W points out, ECF No. 87 at 41, the Pennsylvania Superior Court cited this finding to determine only that the contract's waiver of subrogation clause controlled with respect to Jalapenos's insurance coverage for GRC's negligence, *Jalapenos*, 939 A. 2d at 932. Similarly, in *Church*, the Third Circuit looked at the indemnification clause in the parties' contract to determine only that the waiver clause barred the insurer's subrogation claim. 153 F. App'x at 808-09.

The cases cited by Harkins and M&W all concern indemnification with respect to claims made by parties with contractual privity. This is not the scenario here, where a party to a contract makes a claim against a third party who is also an indemnitee in the contract. The question remains as to whether § 3.18 can require Harkins to indemnify M&W against claims made by Owner. In the absence of express contractual language barring such an application § 3.18, and in the absence of persuasive caselaw saying as much, we conclude that it remains plausible that § 3.18 could apply to claims made by Owner against M&W. Accordingly, Count III is not dismissed.

**C. Counts IV and V**

Count IV (Negligence) and Count V (Negligent Misrepresentation) remain in the case, as M&W has pled sufficient facts, supported by exhibits attached to the complaint—deposition testimony, meeting notes, and emails among parties to this action—to state these negligence claims with plausibility. *Pension Benefit Guar. Corp. v. White Consol. Indus. Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) ("To decide a motion to dismiss, courts generally consider only allegations

contained in the complaint, exhibits attached to the complaint and matters of public record." (citations omitted)). M&W's allegations that Harkins engaged in negligent conduct as General Contractor of the building project form the basis of M&W's contribution and common law indemnification claims, and the question of whether and to what extent Harkins owed both Owner and M&W a duty of care—"the primary element in any negligence action"—remains subject to additional discovery as the case progresses. *Althaus ex rel. Althaus v. Cohen*, 756 A.2d 1166, 1168 (Pa. 2000).

Harkins asserts that Pennsylvania's two-year statute of limitations for negligence actions bars these claims. "Whether the statute of limitations has run on a claim is question of law for the trial court to determine." *Fine v. Checcio*, 870 A.2d 850, 859 (Pa. 2005). The Court makes that determination here: the statute of limitations has not run. The discovery rule effectively tolls the statute of limitations "until that point when a plaintiff knows or reasonably should know: (1) that he has been injured; and (2) that his injury has been caused by another party's conduct." *K.A.R. v. T.G.L*, 107 A.3d 770, 779 (Pa. Super. Ct. 2014) (citation omitted). The earliest date the statute of limitations could have started to run is May 24, 2023, the day that Owner filed its complaint, bringing claims against M&W for breach of contract and professional negligence. ECF No. 1. Thus, the statute of limitations has not run.

Accordingly, we do not agree with M&W that additional discovery is required to determine when M&W could have ascertained it was injured. ECF No. 87 at 45. Rather, we find more compelling M&W's argument that, prior to May 24, 2023, M&W had no standing to bring a claim against Harkins because M&W had no ownership stake in the building and thus suffered no damages due to Harkins's alleged negligence. ECF No. 87 at 45. Had M&W sued Harkins for negligence prior to May 24, 2023, the Court would have dismissed the case for lack of "real and

concrete" controversy. *Firearm Owners Against Crime v. Papenfuse*, 261 A.3d 467, 481 (Pa. 2021) (citation omitted); *See also Markham v. Wolf*, 136 A.3d 134, 140 (Pa. 2016) ("The keystone to standing . . . is that the person must be negatively impacted in some real and direct fashion.") (citation omitted)). Thus, the question of timeliness arises only when claims are justiciable, and in this case, that date is May 24, 2023. *See Pocono Int'l Raceway v. Pocono Produce, Inc.*, 468 A.2d 468, 471 (Pa. 1983) ("[T]he statute of limitations begins to run as soon as the right to institute and maintain a suit arises . . . ." (citation omitted)).

### D. Count VI

Count VI (Breach of Implied Covenant of Good Faith and Fair Dealing) is dismissed because, under Pennsylvania law, this covenant does not form the basis of a standalone claim. *See McCabe v. Marywood Univ.*, 166 A.3d 1257, 1261 n.2 (Pa. Super. Ct. 2017) ("Pennsylvania does not recognize an independent cause of action for breach of a covenant of good faith and fair dealing."); see also *Hanaway v. Parkesburg Grp., LP*, 132 A.3d 461, 471 (Pa. Super. Ct. 2015), *aff'd in part, rev'd on other grounds*. This count is dismissed with prejudice because given that "[t]here is no set of allegations that could provide [Plaintiffs] with a valid claim under [their own] theory[,] any [further] amendment would be futile." *Johnson v. RovMain, Inc.*, No. CV 22-5219, 2023 WL 2723110, at *2 (E.D. Pa. Mar. 31, 2023).

### E. Count VII

Count VII (Breach of Contract) is dismissed because the facts pled, taken as true, do not support M&W's claim that it can sue for breach of contract as a third-party beneficiary of the contract between Owner and Harkins. In Pennsylvania, a party becomes a third-party beneficiary only when a contract between or among parties makes clear that the contract is to benefit a third party, or if the circumstances are so compelling as to effect the intent of the parties to recognize a

third-party's beneficiary right. *Scarpitti v. Weborg*, 609 A.2d 147, 150 (Pa. 1992). To support its claim of third-party beneficiary status, M&W points to Article III of the contract, which states that "[Harkins] . . . covenants with the Owner to cooperate with the Architect and exercise the Contractor's skill and judgment in furthering the interests of the Owner . . . ." *See* ECF No. 72, Ex. 2. M&W also points to the contract's indemnification language at § 3.18, discussed *supra*. But the language in neither of these clauses expressly makes M&W a third-party beneficiary to the Owner-Harkins contract, nor does M&W present circumstances so compelling as to effect intent to recognize M&W as a third-party beneficiary.

Further, the contract expressly states at § 1.1.2 that "[t]he Contract Documents shall not be construed to create a contractual relationship of any kind (1) between the Contractor and the Architect or the Architect's consultants . . . or (3) between the Owner and the Architect or the Architect's consultants." ECF No. 72-4 at 76. This language makes clear that the parties did not intend to confer third-party beneficiary status to M&W. *See Pierce Assocs., Inc. v. Nemours Found.*, 865 F.2d 530, 539 (3d Cir. 1988) (finding that similar language regarding contractors and subcontractors in § 1.1.2 of an AIA contract—"Nothing contained in the Contract Documents shall create any contractual relationship between the Owner or the Architect and any Subcontractor"—"does not manifest an intent by [Owner] and [Contractor] to confer third party beneficiary status upon [Subcontractor]"). Accordingly, the Court does not find this count sufficiently plausible to warrant additional discovery.

**F. Conclusion**

In sum, Harkins's Motion to Dismiss is denied with respect to Counts I, II, III, IV, and V, and granted with respect to Counts VI and VII. An appropriate order will be issued.

BY THE COURT:

/s/ Chad F. Kenney

———————————————

**CHAD F. KENNEY, JUDGE**