# IN THE UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| 335 RIGHTERS FERRY ROAD, LP | CIVIL ACTION NO.: |
| Plaintiff, | NO. 2:23-cv-01963 |
| vs. | |
| MINNO & WASKO ARCHITECTS AND PLANNERS, PC and MOORE CONSULTING ENGINEERS, LLC | CIVIL ACTION - LAW |
| Defendants. | |
| And | **JURY TRIAL DEMANDED** |
| MINNO & WASKO ARCHITECTS AND PLANNERS, PC | |
| Third-Party Plaintiff | |
| vs. | |
| HARKINS BUILDERS, INC., AND NOLEN PROPERTIES | |
| Third-Party Defendants | |
| And | |
| HARKINS BUILDERS, INC. | |
| Third-Party Plaintiff, | |
| vs. | |
| HOMESERVE USA ENERGY SERVICES, LLC d/b/a UGI HEATING, COOLING & PLUMBING f/k/a UGI HVAC ENTERPRISES, INC., and | |
| LIBERTY MUTUAL INSURANCE COMPANY, and | |

CENTRAL II, INC., and

ALTHEA STONE CORPORATION, and

AMERICAN SOUTHERN
INSURANCE COMPANY, and

LEGACY SERVICES USA, LLC, and

UNITED STATES FIRE INSURANCE
COMPANY, and

LM CONSTRUCTION ENTERPRISES,
INC.

                Third-Party Defendants.

## THIRD-PARTY DEFENDANT, HARKINS BUILDERS, INC.'S THIRD-PARTY COMPLAINT

Third-Party Defendant/Third-Party Plaintiff, Harkins Builders, Inc., by its counsel, Fowler Hirtzel McNulty & Spaulding, LLC, avers by way of Third-Party Complaint against the above-captioned Third-Party Defendants as follows:

## NATURE OF THE ACTION

1.     This matter arises from the construction of an apartment complex and Plaintiff 335 Righters Ferry Road, LP's claims for money damages resulting from the alleged negligent design of the project.

2.     Plaintiff, 335 Righters Ferry Road, LP ("Plaintiff"), is a single-purpose entity that developed and owns the 210-unit apartment complex at 335 Righter's Ferry Road, Bala Cynwyd, Pennsylvania (the "Project" or "Building").

3.    Plaintiff initiated this action against Minno and Wasko Architects and Planners, PC ("M&W") and Moore Consulting Engineers, LLC ("Moore") in May of 2023 alleging that those design professionals failed to properly design the Project's HVAC system, resulting in excessive interior humidity with ensuing property damages.  A true and correct copy of Plaintiff's Complaint is attached hereto as **Exhibit "A".**

4.    Third-Party Plaintiff, M&W filed a Third-Party Complaint against Harkins, the Project's General Contractor, for alleged deficiencies in the construction of the building envelope and for alleged misrepresentations to the Plaintiff during the value engineering process for the Project's HVAC system which "contradicted, reversed, overruled, and/or bypassed Moore and M&W." A true and correct copy of M&W's Third-Party Complaint is attached hereto as **Exhibit "B"**, at ¶ 38.

5.    With respect to the installation and/or construction of Project's HVAC system and building envelope, any work material to the deficiencies alleged by M&W was performed by the Third-Party Defendants named herein.

## THE PARTIES

6.    Third-Party Plaintiff, Harkins Builders, Inc. is a Maryland corporation with a principal place of business located at 10490 Little Patuxent Pkwy #400, Columbia, MD.

{W1808759.1}

7.     Third-Party Defendant, HomeServe USA Energy Services, LLC d/b/a UGI Heating, Cooling & Plumbing f/k/a UGI HVAC Enterprises Inc. (referred herein as "UGI") is a Delaware limited liability company with a principal place of business at 601 Merritt 7, FL 6, Norwalk, CT 06851-1174.

8.     Third-Party Defendant, Liberty Mutual Insurance Company (referred herein as "Liberty Mutual"), is a Massachusetts corporation with a principal place of business located at 175 Berkely Street, Boston, MA 02116.

9.     Third-Party Defendant, Central II, Inc. (referred herein as "Central") is a Pennsylvania corporation with a principal place of business located at 402-B Huntingdon Pike, Rockledge, PA 19046.

10.     Third-Party Defendant, Athena Stone Corporation (referred herein as "Athena Stone") is a Maryland corporation with a principal place of business located at 8335 Pulaski Highway, 2nd Floor, Baltimore, MD 21237.

11.     Third-Party Defendant, American Southern Insurance Company (referred herein as "American Southern") is a Kansas Corporation with a principal place of business located at 3714 Northside Parkway, Bld. 400, #800, Atlanta GA, 303027.

12.     Third-Party Defendant, Legacy Services USA, LLC (referred herein as "Legacy Services"), is a Pennsylvania limited liability company with a principal place of business located at 95 James Way, Ste. 100, Southampton PA 18966.

13.     Third-Party Defendant, United States Fire Insurance Company (referred herein as "United States Fire") is a Delaware corporation with a principal place of business located at 101 Hudson Street, 32nd Floor, Jersey City, NJ 07302.

14.     Third-Party Defendant, LM Construction Enterprises Inc. (referred herein as "LM Construction") is a Pennsylvania corporation with a principal place of business at located at 110 Hafler Road, Sellersville, PA 18960.

## JURISDICTION AND VENUE

15.     This Court has original jurisdiction under 28 U.S.C. § 1332(a)

16.     This Third-Party Complaint is filed pursuant to Federal Rule of Civil Procedure 14(a).

17.     The Court has personal jurisdiction over the Third-Party Defendants because the claims arise out of acts or omissions that occurred in Pennsylvania.

18.     Venue is proper in this Court because a substantial part of the claims arise out of acts or omissions that occurred within this District and the improvements to real property, which is the subject of Plaintiff's underlying action, is situated within this district.

## UGI

19.     UGI, by and through its agents, performed work, including but not limited to, the installation and incorporation of the Building's HVAC system.

20.     Without admitting any factual averments or conceding its legal conclusions, solely for the purposes of this Third-Party Complaint, Harkins

incorporates all well-plead averments of M&W's Third-Party Complaint by reference, specifically those allegations related to UGI's involvement in the value engineering and installation of the Building's HVAC's system. See Exhibit "B" at ¶¶ 57, 58, 91, 172.

21.     Harkins and UGI entered into a Subcontract Agreement which governed their relationship. A true and correct copy of the Subcontract Agreement between Harkins and UGI is attached hereto as **Exhibit "C"**.

22.     In furtherance of its obligations under the Subcontract Agreement, UGI and Liberty Mutual executed a Performance Bond, No. 019064282, whereby UGI and Liberty Mutual bound themselves to Harkins for UGI's performance under the Subcontract Agreement. A copy of the UGI Bond is attached hereto as **Exhibit "D".**

23.     As part of UGI's Subcontract Agreement with Harkins, UGI agreed to:

> furnish and pay for all Work, supervision, labor, materials, equipment, tools, trucks, machinery, housing, scaffolding, hoists, overhead protections, layout, cutting, blocking, patching, cleaning, storage and implements, means of access, services, facilities, trade permits, applicable taxes, freight, insurance, and all other things necessary, required, incidental or related to the construction, improvement, installation and completion of the Work in strict accordance with the terms and provisions of the Subcontract Documents, and as further described within Exhibits A and B attached hereto, and to the satisfaction of Owner, Architect, Lenders (as the case may be), and Contractor. All Work covered by this Subcontract shall be performed in a skillful and workmanlike manner and, unless otherwise expressly provided in the Contract Documents, with new materials and equipment.

See Exhibit "C" at ¶ 2.

24. As part of UGI's Subcontract Agreement with Harkins, UGI agreed to indemnify, defend and hold harmless from claims brought against Harkins arising from or relating to UGI's work.

25. Specifically, the Subcontract Agreement between UGI and Harkins provides:

> **11. Indemnification:** To the fullest extent permitted by law, the Subcontractor shall defend, indemnify and hold harmless the Contractor, Owner, Nolen - 335 Righter Ferry Road, LP, Santander Bank, NA, Harkins Builders, Wells Fargo Insurance Services USA, Inc., and all of their respective officers, directors, employees, successors, members, subsidiaries, affiliates, assigns, agents and representatives (collectively the "Indemnitees") from and against claims, damages, losses, costs and expenses, including, but not limited to attorney's fees and expenses, to the extent arising out of or relating to the performance of the Work, including without limitation, any such claims, damages, losses or expenses attributable to bodily injury, sickness, disease, death, injury to or destruction of tangible property to the extent caused by the Subcontractor, the Subcontractor's lower tier subcontractors, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, regardless of whether or not such claim, damage, loss or expense is caused in part by a party indemnified hereunder. Such obligation shall not be construed to negate, abridge, or otherwise reduce other rights or obligations of indemnity which would otherwise exist as to a party or person described in this Paragraph. This liability shall be enforceable against Subcontractor whether an Indemnitee's damage, loss or expenses are established by judgment, arbitration or by settlement, and shall not be limited by a limitation on the amount or type of damages, compensation or benefits payable by or for the Subcontractor or the Subcontractor's lower-tier subcontractors under workers' compensation acts, disability benefit acts or other employee benefit acts. Subcontractor's indemnification obligations under this Paragraph shall survive completion and/or termination of this Subcontract for any reason for a period equal to the applicable statute of repose.

Id. at ¶ 11.

26.     The Subcontract Agreement between Harkins and UGI also required

UGI to procure and maintain insurance, naming Harkins as an additional insured:

**12. Insurance**: Subcontractor, and its lower tier subcontractors and suppliers, shall obtain and maintain in force for the duration of the Work, and for a period of two (2) years thereafter, including the times of any Work performed pursuant to Subcontractor's obligation under this Subcontract, insurance coverages that are required by the Subcontract Documents or as follows, whichever is greater in scope or amount: . . . (2) commercial general liability (CGL) with bodily injury and property damage limits of not less than $2,000,000 each occurrence, $2,000,000 general Aggregate, and $2,000,000 Products/Completed Operations . . . , which insurance shall be written on an occurrence form and shall cover liability arising from premises, operations, independent contractors, products-completed operations, personal injury, advertising injury, and liability arising out of contracts . . . Subcontractor's CGL and auto policies shall include Contractor, Owner, all other Indemnitees identified in Paragraph 11 hereof, and any others as may be reasonably required by the Subcontract Documents as additional insureds. Coverage for these additional insureds shall be the equivalent coverage as provided to the Subcontractor for ongoing operations and products and completed operations. Coverage for completed operations of Subcontractor shall be maintained in effect for the benefit of the additional insureds for a period of five (5) years following the completion of the Work. Additional insured coverage, as required in this subparagraph, shall apply as primary and non-contributory insurance with respect to any other insurance or self-insurance programs afforded to the additional insureds. . . . Notwithstanding anything to the contrary in the Contract Documents, Subcontractor waives all rights of recovery, including without limitation, subrogation rights, against Contractor, Owner, Architect and any other additional insureds for losses within the scope of Subcontractor's insurance policies. Subcontractor further agrees that all its insurance policies shall be primary and non-contributory with any other insurance available to Contractor, Owner, Architect or any other additional insureds . . .

Id. at ¶ 12 and Exhibit F.

27.    On August 20, 2024, counsel for Harkins sent UGI a tender letter requesting it defend, indemnify and hold Harkins harmless.  A true and correct copy of the counsel's August 20, 2024, tender correspondence is attached hereto as **Exhibit "E"**.

28.    Harkins also requested that UGI provide insurance coverage per its additional insured obligation under the terms of the Subcontract Agreement.  Id.

29.    UGI has failed to respond to Harkins' tender requests and failed to defend, hold harmless, and provide insurance coverage to Harkins.

30.    Further, on August 29, 2024, counsel for Harkins sent UGI's insurance carrier, Ace American Insurance Company, a tender letter requesting defense and indemnification under the terms of the policy or policies of insurance issued to UGI.  A true and correct copy of the counsel's August 29, 2024, tender correspondence is attached hereto as **Exhibit "F"**.

31.    To date, UGI has failed to fulfill its obligations under the terms of the Subcontract Agreement as UGI has not, amongst other things, provided a defense and/or indemnification for Harkins, nor has UGI provided insurance coverage for UGI relative to M&W's claims.

32.    As a result of UGI's breaches of the terms of the Subcontract Agreement, Harkins and its insurers have sustained damages and will continue to

sustain damages, including the costs and attorneys' fees expended to defend this lawsuit.

33.    Without admitting any of the allegations of M&W's Third-Party Complaint, Harkins presently avers that if the injuries and damages asserted in the complaint are proven to be true, in whole or in part, then UGI will be contractually required to defend, indemnify, and hold Harkins harmless against M&W's claims, pursuant to the terms of the Subcontract Agreement.

34.    Without admitting any of the allegations in M&W's Third-Party Complaint, if Harkins is found liable, in whole or in part, then UGI will be liable over to Harkins for contractual and/or common law indemnification and contribution.

## **LIBERTY MUTUAL'S PERFORMANCE GUARANTEES**

35.    Liberty Mutual issued a performance bond on UGI's behalf that guaranteed UGI would fulfill its contractual obligations.

36.    Per the terms of the bond, UGI and Liberty Mutual agreed to, jointly and severally, bind themselves to Harkins, and fully indemnify and save Harkins from all liability, costs, damage, expense, and attorney's fees which Harkins may suffer by reason of UGI's failure to perform the obligations set forth under its Subcontract Agreement with Harkins.

37.    To the extent it is proven that UGI breached its Subcontract Agreement with Harkins, Liberty Mutual is responsible for any damages proven against Harkins for the claims brought by M&W.

38.    Further, under the Bond, which expressly incorporates the Subcontract Agreement "…for all purposes"…, Liberty Mutual, as UGI's surety, is responsible for the damages, costs, expenses, and legal fees arising out of the failure of UGI to perform any of its obligations under the Subcontract Agreement, including without limitation, due to any defective work performed by UGI and the failure of UGI to insure, defend, indemnify, and hole Harkins harmless.

## CENTRAL

39.    Central, by and through its agents, performed work, including but not limited to, the furnishing and installation of the Building's exterior joint sealant.

40.    Without admitting any factual averments or conceding its legal conclusions, solely for the purposes of this Third-Party Complaint, Harkins incorporates all well-plead averments of M&W's Third-Party Complaint by reference, specifically those allegations related to deficiencies in the construction of the building envelope. See Exhibit "B" at ¶¶ 87-122.

41.    Harkins and Central entered into a Subcontract Agreement which governed their relationship.  A true and correct copy of the Subcontract Agreement between Harkins and Central is attached hereto as **Exhibit "G"**.

{W1808759.1}

42.     As part of Central's Subcontract Agreement with Harkins, Central

agreed to:

> furnish and pay for all Work, supervision, labor, materials, equipment,
> tools, trucks, machinery, housing, scaffolding, hoists, overhead
> protections, layout, cutting, blocking, patching, cleaning, storage and
> implements, means of access, services, facilities, trade permits,
> applicable taxes, freight, insurance, and all other things necessary,
> required, incidental or related to the construction, improvement,
> installation and completion of the Work in strict accordance with the
> terms and provisions of the Subcontract Documents, and as further
> described within Exhibits A and B attached hereto, and to the
> satisfaction of Owner, Architect, Lenders (as the case may be), and
> Contractor. All Work covered by this Subcontract shall be performed
> in a skillful and workmanlike manner and, unless otherwise expressly
> provided in the Contract Documents, with new materials and
> equipment.

Id. at ¶ 2.

43.     As part of Central's Subcontract Agreement with Harkins, Central

agreed to indemnify, defend and hold harmless from claims brought against Harkins

arising from or relating to Central's work.

44.     Specifically, the Subcontract Agreement between Central and Harkins

provides:

> **11. Indemnification:** To the fullest extent permitted by law, the
> Subcontractor shall defend, indemnify and hold harmless the
> Contractor, Owner, Nolen - 335 Righter Ferry Road, LP, Santander
> Bank, NA, Harkins Builders, Wells Fargo Insurance Services USA,
> Inc., and all of their respective officers, directors, employees,
> successors, members, subsidiaries, affiliates, assigns, agents and
> representatives (collectively the "Indemnitees") from and against
> claims, damages, losses, costs and expenses, including, but not limited
> to attorney's fees and expenses, to the extent arising out of or relating

to the performance of the Work, including without limitation, any such claims, damages, losses or expenses attributable to bodily injury, sickness, disease, death, injury to or destruction of tangible property to the extent caused by the Subcontractor, the Subcontractor's lower tier subcontractors, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, regardless of whether or not such claim, damage, loss or expense is caused in part by a party indemnified hereunder. Such obligation shall not be construed to negate, abridge, or otherwise reduce other rights or obligations of indemnity which would otherwise exist as to a party or person described in this Paragraph. This liability shall be enforceable against Subcontractor whether an Indemnitee's damage, loss or expenses are established by judgment, arbitration or by settlement, and shall not be limited by a limitation on the amount or type of damages, compensation or benefits payable by or for the Subcontractor or the Subcontractor's lower-tier subcontractors under workers' compensation acts, disability benefit acts or other employee benefit acts. Subcontractor's indemnification obligations under this Paragraph shall survive completion and/or termination of this Subcontract for any reason for a period equal to the applicable statute of repose.

Id. at ¶ 11.

45.    The Subcontract Agreement between Harkins and Central also required

Central to procure and maintain insurance, naming Harkins as an additional insured:

**12. Insurance**: Subcontractor, and its lower tier subcontractors and suppliers, shall obtain and maintain in force for the duration of the Work, and for a period of two (2) years thereafter, including the times of any Work performed pursuant to Subcontractor's obligation under this Subcontract, insurance coverages that are required by the Subcontract Documents or as follows, whichever is greater in scope or amount: . . . (2) commercial general liability (CGL) with bodily injury and property damage limits of not less than $2,000,000 each occurrence, $2,000,000 general Aggregate, and $2,000,000 Products/Completed Operations (if such CGL insurance contains an aggregate limit then the limit of $2,000,000 shall apply separately to this (or to each) project, which insurance shall be written on an occurrence form and shall cover liability arising from premises,

operations, independent contractors, products-completed operations, personal injury, advertising injury, and liability arising out of contracts . . . Subcontractor's CGL and auto policies shall include Contractor, Owner, all other Indemnitees identified in Paragraph 11 hereof, and any others as may be reasonably required by the Subcontract Documents as additional insureds. Coverage for these additional insureds shall be the equivalent coverage as provided to the Subcontractor for ongoing operations and products and completed operations. Coverage for completed operations of Subcontractor shall be maintained in effect for the benefit of the additional insureds for a period of five (5) years following the completion of the Work. Additional insured coverage, as required in this subparagraph, shall apply as primary and non-contributory insurance with respect to any other insurance or self-insurance programs afforded to the additional insureds. . . . Notwithstanding anything to the contrary in the Contract Documents, Subcontractor waives all rights of recovery, including without limitation, subrogation rights, against Contractor, Owner, Architect and any other additional insureds for losses within the scope of Subcontractor's insurance policies. Subcontractor further agrees that all its insurance policies shall be primary and non-contributory with any other insurance available to Contractor, Owner, Architect or any other additional insureds . . .

Id. at ¶ 12.

46.     On August 20, 2024, counsel for Harkins sent Central a tender letter requesting it defend, indemnify and hold Harkins harmless.  A true and correct copy of counsel's August 20, 2024 tender correspondence is attached hereto as **Exhibit "H"**.

47.     Harkins also requested that Central provide insurance coverage per its additional insured obligation under the terms of the Subcontract Agreement.  Id

48.     On August 29, 2024, counsel for Harkins sent Central's insurance carrier, Erie Insurance Exchange, a tender letter requesting defense and

indemnification under the terms of the policy or policies of insurance issued to Central.    A true and correct copy of counsel's August 29, 2024, tender correspondence is attached hereto as **Exhibit "I"**.

49.    By way of correspondence dated September 10, 2024, Erie Insurance Exchange denied Harkins' request for contractual defense and indemnification and additional insured coverage. A true and correct copy of Erie Insurance Exchange's September 10, 2024, correspondence is attached hereto as "**Exhibit J".**

50.    On August 29, 2024, counsel for Harkins sent Central's insurance carrier, Pennsylvania National Mutual Casualty Insurance Company, a tender letter requesting defense and indemnification under the terms of the policy or policies of insurance issued to Central.  A true and correct copy of counsel's August 29, 2024, tender correspondence is attached hereto as **Exhibit "K"**.

51.    By way of correspondence dated November 1, 2024, Pennsylvania National Mutual Casualty Insurance Company denied Harkins' request for contractual defense and indemnification and additional insured coverage. A true and correct copy of Pennsylvania National Mutual Casualty Insurance Company's November 1, 2024, correspondence is attached hereto as **Exhibit "L".**

52.    To date, Central has failed to fulfill its obligations under the terms of the Subcontract Agreement as Central has not, amongst other things, provided a

{W1808759.1}

defense and/or indemnification for Harkins, nor has Central provided insurance coverage for Harkins relative to M&W's claims.

53.     As a result of Central's breaches of the terms of the Subcontract Agreement, Harkins and its insurers have sustained damages and will continue to sustain damages, including the costs and attorneys' fees expended to defend this lawsuit.

54.     Without admitting any of the allegations of M&W's Third-Party Complaint, Harkins presently avers that if the injuries and damages asserted in the complaint are proven to be true, in whole or in part, then Central will be contractually required to defend, indemnify, and hold Harkins harmless against M&W's claims, pursuant to the terms of the Subcontract Agreement.

55.     Without admitting any of the allegations in M&W's Third-Party Complaint, if Harkins is found liable, in whole or in part, then Central will be liable over to Harkins for contractual and/or common law indemnification and contribution.

## **ATHENA STONE**

56.     Athena Stone, by and through its agents, performed work, including but not limited to, the furnishing and installation of all adhered thin brick and stone veneer of the building envelope for the project.

57.     Without admitting any factual averments or conceding its legal conclusions, solely for the purposes of this Third-Party Complaint, Harkins incorporates all well-plead averments of M&W's Third-Party Complaint by reference, specifically those allegations related to deficiencies in the construction of the building envelope.  See Exhibit "B" at ¶¶ 87-122.

58.     Harkins and Athena Stone entered into a Subcontract Agreement which governed their relationship.  A true and correct copy of the Subcontract Agreement between Harkins and Athena Stone is attached hereto as **Exhibit "M"**.

59.     In furtherance of its obligations under the Subcontract Agreement, Athena Stone and American Southern executed a Performance Bond, No. B98800033408, whereby Athena Stone and American Southern bound themselves to Harkins for Athena Stone's performance under the Subcontract Agreement. A copy of the Athena Stone Bond is attached hereto as **Exhibit "N".**

60.     As part of Athena Stone's Subcontract Agreement with Harkins, Athena Stone agreed to:

> furnish and pay for all Work, supervision, labor, materials, equipment, tools, trucks, machinery, housing, scaffolding, hoists, overhead protections, layout, cutting, blocking, patching, cleaning, storage and implements, means of access, services, facilities, trade permits,

applicable taxes, freight, insurance, and all other things necessary, required, incidental or related to the construction, improvement, installation and completion of the Work in strict accordance with the terms and provisions of the Subcontract Documents, and as further described within Exhibits A and B attached hereto, and to the satisfaction of Owner, Architect, Lenders (as the case may be), and Contractor. All Work covered by this Subcontract shall be performed in a skillful and workmanlike manner and, unless otherwise expressly provided in the Contract Documents, with new materials and equipment.

<u>See</u> Exhibit "M" at ¶ 2.

61.    As part of Athena Stone's Subcontract Agreement with Harkins, Athena Stone agreed to indemnify, defend and hold harmless from claims brought against Harkins arising from or relating to Athena Stone's work.

62.    Specifically, the Subcontract Agreement between Athena Stone and Harkins provides:

**11. Indemnification:** To the fullest extent permitted by law, the Subcontractor shall defend, indemnify and hold harmless the Contractor, Owner, Nolen - 335 Righter Ferry Road, LP, Santander Bank, NA, Harkins Builders, Wells Fargo Insurance Services USA, Inc., and all of their respective officers, directors, employees, successors, members, subsidiaries, affiliates, assigns, agents and representatives (collectively the "Indemnitees") from and against claims, damages, losses, costs and expenses, including, but not limited to attorney's fees and expenses, to the extent arising out of or relating to the performance of the Work, including without limitation, any such claims, damages, losses or expenses attributable to bodily injury, sickness, disease, death, injury to or destruction of tangible property to the extent caused by the Subcontractor, the Subcontractor's lower tier subcontractors, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, regardless of whether or not such claim, damage, loss or expense is caused in part by a party indemnified hereunder. Such obligation shall not be construed to

negate, abridge, or otherwise reduce other rights or obligations of indemnity which would otherwise exist as to a party or person described in this Paragraph. This liability shall be enforceable against Subcontractor whether an Indemnitee's damage, loss or expenses are established by judgment, arbitration or by settlement, and shall not be limited by a limitation on the amount or type of damages, compensation or benefits payable by or for the Subcontractor or the Subcontractor's lower-tier subcontractors under workers' compensation acts, disability benefit acts or other employee benefit acts. Subcontractor's indemnification obligations under this Paragraph shall survive completion and/or termination of this Subcontract for any reason for a period equal to the applicable statute of repose.

Id. at ¶ 11.

63.    The Subcontract Agreement between Harkins and Athena Stone also required Athena Stone to procure and maintain insurance, naming Harkins as an additional insured:

**12. Insurance:** Subcontractor, and its lower tier subcontractors and suppliers, shall obtain and maintain in force for the duration of the Work, and for a period of two (2) years thereafter, including the times of any Work performed pursuant to Subcontractor's obligation under this Subcontract, insurance coverages that are required by the Subcontract Documents or as follows, whichever is greater in scope or amount: . . . (2) commercial general liability (CGL) with bodily injury and property damage limits of not less than $2,000,000 each occurrence, $2,000,000 general Aggregate, and $2,000,000 Products/Completed Operations (if such CGL insurance contains an aggregate limit then the limit of $2,000,000 shall apply separately to this (or to each) project, which insurance shall be written on an occurrence form and shall cover liability arising from premises, operations, independent contractors, products-completed operations, personal injury, advertising injury, and liability arising out of contracts . . . Subcontractor's CGL and auto policies shall include Contractor, Owner, all other Indemnitees identified in Paragraph 11 hereof, and any others as may be reasonably required by the Subcontract Documents as additional insureds. Coverage for these additional insureds shall be the

equivalent coverage as provided to the Subcontractor for ongoing operations and products and completed operations. Coverage for completed operations of Subcontractor shall be maintained in effect for the benefit of the additional insureds for a period of five (5) years following the completion of the Work. Additional insured coverage, as required in this subparagraph, shall apply as primary and non-contributory insurance with respect to any other insurance or self-insurance programs afforded to the additional insureds. . . . Notwithstanding anything to the contrary in the Contract Documents, Subcontractor waives all rights of recovery, including without limitation, subrogation rights, against Contractor, Owner, Architect and any other additional insureds for losses within the scope of Subcontractor's insurance policies. Subcontractor further agrees that all its insurance policies shall be primary and non-contributory with any other insurance available to Contractor, Owner, Architect or any other additional insureds . . .

Id. at ¶ 12 and Exhibit F.

64.    On August 19, 2024, counsel for Harkins sent Athena Stone a tender letter requesting it defend, indemnify and hold Harkins harmless.  A true and correct copy of counsel's August 19, 2024, tender correspondence is attached hereto as **Exhibit "O".**

65.    Harkins also requested that Athena Stone provide insurance coverage per its additional insured obligation under the terms of the Subcontract Agreement. Id.

66.    Athena Stone has failed to respond to Harkins' tender requests and failed to defend, hold harmless, and provide insurance coverage to Harkins.

67.    Further, on August 29, 2024, counsel for Harkins sent Athena Stone's insurance carrier, Penn National Security Ins. Co., a tender letter requesting defense

{W1808759.1}

and indemnification under the terms of the policy or policies of insurance issued to Athena Stone.  A true and correct copy of the counsel's August 29, 2024, tender correspondence is attached hereto as **Exhibit "P".**

68.    To date, Athena Stone has failed to fulfill its obligations under the terms of the Subcontract Agreement as Athena Stone has not, amongst other things, provided a defense and/or indemnification for Harkins, nor has Athena Stone provided insurance coverage for Harkins relative to M&W's claims.

69.    As a result of Athena Stone's breaches of the terms of the Subcontract Agreement, Harkins and its insurers have sustained damages and will continue to sustain damages, including the costs and attorneys' fees expended to defend this lawsuit.

70.    Without admitting any of the allegations of M&W's Third-Party Complaint, Harkins presently avers that if the injuries and damages asserted in the complaint are proven to be true, in whole or in part, then Athena Stone will be contractually required to defend, indemnify, and hold Harkins harmless against M&W's claims, pursuant to the terms of the Subcontract Agreement.

71.    Without admitting any of the allegations in M&W's Third-Party Complaint, if Harkins is found liable, in whole or in part, then Athena Stone will be liable over to Harkins for contractual and/or common law indemnification and contribution.

## AMERICAN SOUTHERN'S PERFORMANCE GUARENTEES

72.    American Southern issued a performance bond on Athena Stone's behalf that guaranteed Athena Stone would fulfill its contractual obligations.

73.    Per the terms of the bond, Athena Stone and American Southern agreed to, jointly and severally, bind themselves to Harkins, and fully indemnify and save Harkins from all liability, costs, damage, expense, and attorney's fees which Harkins may suffer by reason of Athena Stone's failure to perform the obligations set forth under its Subcontract Agreement with Harkins.

74.    To the extent it is proven that Athena Stone breached its Subcontract Agreement with Harkins, Athena Stone is responsible for any damages proven against Harkins for the claims brought by M&W.

75.    Further, under the Bond, which expressly incorporates the Subcontract Agreement "…for all purposes"…, American Southern, as Athena Stone's surety, is responsible for the damages, costs, expenses, and legal fees arising out of the failure of Athena Stone's to perform any of its obligations under the Subcontract Agreement, including without limitation, due to any defective work performed by Athena Stone and the failure of Athena Stone to insure, defend, indemnify, and hole Harkins harmless.

## LEGACY

76.     Legacy, by and through its agents, performed work, including but not limited to, the furnishing and installation of the Building's roofing and siding systems.

77.     Without admitting any factual averments or conceding its legal conclusions, solely for the purposes of this Third-Party Complaint, Harkins incorporates all well-plead averments of M&W's Third-Party Complaint by reference, specifically those allegations related to deficiencies in the construction of the building envelope.  See Exhibit "B" at ¶¶ 87-122.

78.     Harkins and Legacy entered into two Subcontract Agreements which governed their relationship.  A true and correct copy of the Subcontract Agreements between Harkins and Legacy are attached jointly hereto as **Exhibit "Q"**.

79.     In furtherance of its obligations under the Subcontract Agreements, Legacy and United States Fire executed two Performance Bonds, No.6021166131 and 6021166077, whereby Legacy and United States Fire bound themselves to Harkins for Legacy's performance under the Subcontract Agreements. Copies of the Legacy Bonds are attached collectively hereto as **Exhibit "R".**

80.     As part of Legacy's Subcontract Agreements with Harkins, Legacy agreed to:

> furnish and pay for all Work, supervision, labor, materials, equipment, tools, trucks, machinery, housing, scaffolding, hoists, overhead protections, layout, cutting, blocking, patching, cleaning, storage and implements, means of access, services, facilities, trade permits,

applicable taxes, freight, insurance, and all other things necessary, required, incidental or related to the construction, improvement, installation and completion of the Work in strict accordance with the terms and provisions of the Subcontract Documents, and as further described within Exhibits A and B attached hereto, and to the satisfaction of Owner, Architect, Lenders (as the case may be), and Contractor. All Work covered by this Subcontract shall be performed in a skillful and workmanlike manner and, unless otherwise expressly provided in the Contract Documents, with new materials and equipment.

<u>See</u> Exhibit "Q" at ¶ 2.

81.    As part of Legacy's respective Subcontract Agreements with Harkins, Legacy agreed to indemnify, defend and hold harmless from claims brought against Harkins arising from or relating to Legacy's work.

82.    Specifically, both Subcontract Agreements between Legacy and Harkins provide:

**11. Indemnification:** To the fullest extent permitted by law, the Subcontractor shall defend, indemnify and hold harmless the Contractor, Owner, Nolen - 335 Righter Ferry Road, LP, Santander Bank, NA, Harkins Builders, Wells Fargo Insurance Services USA, Inc., and all of their respective officers, directors, employees, successors, members, subsidiaries, affiliates, assigns, agents and representatives (collectively the "Indemnitees") from and against claims, damages, losses, costs and expenses, including, but not limited to attorney's fees and expenses, to the extent arising out of or relating to the performance of the Work, including without limitation, any such claims, damages, losses or expenses attributable to bodily injury, sickness, disease, death, injury to or destruction of tangible property to the extent caused by the Subcontractor, the Subcontractor's lower tier subcontractors, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, regardless of whether or not such claim, damage, loss or expense is caused in part by a party indemnified hereunder. Such obligation shall not be construed to

negate, abridge, or otherwise reduce other rights or obligations of indemnity which would otherwise exist as to a party or person described in this Paragraph. This liability shall be enforceable against Subcontractor whether an Indemnitee's damage, loss or expenses are established by judgment, arbitration or by settlement, and shall not be limited by a limitation on the amount or type of damages, compensation or benefits payable by or for the Subcontractor or the Subcontractor's lower-tier subcontractors under workers' compensation acts, disability benefit acts or other employee benefit acts. Subcontractor's indemnification obligations under this Paragraph shall survive completion and/or termination of this Subcontract for any reason for a period equal to the applicable statute of repose.

Id. at ¶ 11.

83.    Both Subcontract Agreements between Harkins and Legacy also required Legacy to procure and maintain insurance, naming Harkins as an additional insured:

**12. Insurance:** Subcontractor, and its lower tier subcontractors and suppliers, shall obtain and maintain in force for the duration of the Work, and for a period of two (2) years thereafter, including the times of any Work performed pursuant to Subcontractor's obligation under this Subcontract, insurance coverages that are required by the Subcontract Documents or as follows, whichever is greater in scope or amount: . . . (2) commercial general liability (CGL) with bodily injury and property damage limits of not less than $2,000,000 each occurrence, $2,000,000 general Aggregate, and $2,000,000 Products/Completed Operations (if such CGL insurance contains an aggregate limit then the limit of $2,000,000 shall apply separately to this (or to each) project, which insurance shall be written on an occurrence form and shall cover liability arising from premises, operations, independent contractors, products-completed operations, personal injury, advertising injury, and liability arising out of contracts . . . Subcontractor's CGL and auto policies shall include Contractor, Owner, all other Indemnitees identified in Paragraph 11 hereof, and any others as may be reasonably required by the Subcontract Documents as additional insureds. Coverage for these additional insureds shall be the

equivalent coverage as provided to the Subcontractor for ongoing operations and products and completed operations. Coverage for completed operations of Subcontractor shall be maintained in effect for the benefit of the additional insureds for a period of five (5) years following the completion of the Work. Additional insured coverage, as required in this subparagraph, shall apply as primary and non-contributory insurance with respect to any other insurance or self-insurance programs afforded to the additional insureds. . . . Notwithstanding anything to the contrary in the Contract Documents, Subcontractor waives all rights of recovery, including without limitation, subrogation rights, against Contractor, Owner, Architect and any other additional insureds for losses within the scope of Subcontractor's insurance policies. Subcontractor further agrees that all its insurance policies shall be primary and non-contributory with any other insurance available to Contractor, Owner, Architect or any other additional insureds . . .

Id. at ¶ 11.

84.    On August 20, 2024, counsel for Harkins sent Legacy a tender letter requesting it defend, indemnify and hold Harkins harmless.  A true and correct copy of counsel's August 20, 2024, tender correspondence is attached hereto as **Exhibit "S"**.

85.    Harkins also requested that Legacy provide insurance coverage per its additional insured obligation under the terms of the respective Subcontract Agreements.  Id.

86.    Legacy has failed to respond to Harkins' tender requests and failed to defend, hold harmless, and provide insurance coverage to Harkins.

87.    To date, Legacy has failed to fulfill its obligations under the terms of the Subcontract Agreement as Legacy has not, amongst other things, provided a

defense and/or indemnification for Harkins, nor has Legacy provided insurance coverage for Harkins relative to M&W's claims.

88.    As a result of Legacy's breaches of the terms of the Subcontract Agreements, Harkins and its insurers have sustained damages and will continue to sustain damages, including the costs and attorneys' fees expended to defend this lawsuit.

89.    Without admitting any of the allegations of M&W's Third-Party Complaint, Harkins presently avers that if the injuries and damages asserted in the complaint are proven to be true, in whole or in part, then Legacy will be contractually required to defend, indemnify, and hold Harkins harmless against M&W's claims, pursuant to the terms of the Subcontract Agreement.

90.    Without admitting any of the allegations in M&W's Third-Party Complaint, if Harkins is found liable, in whole or in part, then Legacy will be liable over to Harkins for contractual and/or common law indemnification and contribution.

## UNITED STATES FIRE'S PERFORMANCE GUARANTEES

91.    United States Fire issued two performance bonds on Legacy's behalf that guaranteed Legacy would fulfill its contractual obligations.

92.    Per the terms of the bond, Legacy and United States Fire agreed to, jointly and severally, bind themselves to Harkins, and fully indemnify and save

Harkins from all liability, costs, damage, expense, and attorney's fees which Harkins may suffer by reason of Legacy's failure to perform the obligations set forth under its Subcontract Agreements with Harkins.

93.    To the extent it is proven that Legacy breached its Subcontract Agreement with Harkins, United States Fire is responsible for any damages proven against Harkins for the claims brought by M&W.

94.    Further, under the Bond, which expressly incorporates the Subcontract Agreement "…for all purposes"…, United States Fire, as Legacy's surety, is responsible for the damages, costs, expenses, and legal fees arising out of the failure of Legacy's to perform any of its obligations under the Subcontract Agreement, including without limitation, due to any defective work performed by Legacy and the failure of Legacy to insure, defend, indemnify, and hole Harkins harmless.

## <u>LM CONSTRUCTION</u>

95.    LM Construction, by and through its agents, performed work, including but not limited to, the furnishing and installation of an overlay roof on the Building.

96.    Without admitting any factual averments or conceding its legal conclusions, solely for the purposes of this Third-Party Complaint, Harkins incorporates all well-plead averments of M&W's Third-Party Complaint by reference, specifically those allegations related to deficiencies in the construction of the building envelope. <u>See</u> Exhibit "B" at ¶¶ 87-122.

97.    Harkins and LM Construction entered into a Subcontract which governed their relationship.  A true and correct copy of the Subcontract between Harkins and LM Construction is attached hereto as **Exhibit "T".**

98.    As part of LM Construction's Subcontract Agreement with Harkins, LM Construction agreed to:

> Perform all Work and shall furnish all supervision, labor, materials, tools, equipment, scaffold, overhead protection, layout, storage and all things necessary or incidental to make the Work complete and ready for operation in strict accordance with the Subcontract Documents.

See Exhibit "T" at Exhibit A, Scope of Work.

99.    As part of LM Construction's Subcontract with Harkins, LM Construction agreed to indemnify, defend and hold harmless from claims brought against Harkins arising from or relating to LM Construction's work.

100.    Specifically, the Subcontract Agreement between LM Construction and Harkins provides:

> **19. Indemnification:** To the fullest extent permitted by law, the Subcontractor shall defend, indemnify and hold harmless Contractor, Owner, Nolen - 335 Righter Ferry Road, LP Santander Bank, NA Harkins Builders Wells Fargo Insurance Services USA, Inc. and all of their respective officers, directors, employees, successors, members, subsidiaries, affiliates, assigns, agents and representatives (collectively the "Indemnitees") from and against all claims, damages, costs, losses, liability, lawsuits, and expenses, including but not limited to attorney's fees (collectively the "Claims"), arising out of or relating to, or alleged to arise out of or relate to, the performance of the Work, including but not limited to Claims for bodily injury, sickness, disease, death, injury to or destruction of property, including the loss of use associated therewith, and breach of this Subcontract, but only to the extent caused

by the Subcontractor or anyone for whose acts Subcontractor may be liable. Subcontractor's indemnification obligations hereunder shall not be construed to negate, or abridge, or otherwise reduce any other right or obligation of indemnity that would otherwise exist as to any party or person described in this Section 19.

Id. at ¶ 19.

101.   The Subcontract Agreement between Harkins and LM Construction also required LM Construction to procure and maintain insurance, naming Harkins as an additional insured:

**18. Insurance:** Before commencing the Work, Subcontractor shall procure and maintain at its own expense until final acceptance of the Work, or longer if so required in the Prime Contract, whichever is longer, commercial liability insurance (with completed operations coverage) on an occurrence basis in the amount of $1,000,000 per occurrence, $2,000,000 general aggregate, automobile liability insurance with a limit of not less than $1,000,000 each accident on an occurrence basis, and worker's compensation insurance (statutory requirements plus at least $100,000 each accident for Employer's Liability). Subcontractor expressly waives all rights of subrogation against Contractor and Owner. Certificates evidencing such insurance shall be provided to Contractor prior to the start of Subcontractor's Work, and with the exception of Worker's Compensation, such certificates shall identify Contractor and Owner as additional insured parties. All insurance will be primary and non-contributory over any other valid and collectable insurance, shall expressly waive rights of subrogation against Contractor and Owner, and shall provide for 30 days prior written notice of cancellation to Contractor.

Id. at ¶ 18.

102.   On August 21, 2024, counsel for Harkins sent LM Construction a tender letter requesting it defend, indemnify and hold Harkins harmless.  A true and correct

copy of counsel's August 21, 2024, tender correspondence is attached hereto as **Exhibit "U".**

103. Harkins also requested that LM Construction provide insurance coverage per its additional insured obligation under the terms of the Subcontract Agreement. Id.

104. LM Construction has failed to respond to Harkins' tender requests and failed to defend, hold harmless, and provide insurance coverage to Harkins.

105. Further, on August 29, 2024, counsel for Harkins sent LM Construction's insurance carrier, Motorist Mutual Insurance, a tender letter requesting defense and indemnification under the terms of the policy or policies of insurance issued to LM Construction. A true and correct copy of counsel's August 29, 2024, tender correspondence is attached hereto as **Exhibit "V".**

106. To date, LM Construction has failed to fulfill its obligations under the terms of the Subcontract Agreement as LM Construction has not, amongst other things, provided a defense and/or indemnification for Harkins, nor has LM Construction provided insurance coverage for Harkins relative to M&W's claims.

107. As a result of LM Construction's breaches of the terms of the Subcontract Agreement, Harkins and its insurers have sustained damages and will continue to sustain damages, including the costs and attorneys' fees expended to defend this lawsuit.

108.    Without admitting any of the allegations of M&W's Third-Party Complaint, Harkins presently avers that if the injuries and damages asserted in the complaint are proven to be true, in whole or in part, then LM Construction will be contractually required to defend, indemnify, and hold Harkins harmless against M&W's claims, pursuant to the terms of the Subcontract Agreement.

109.    Without admitting any of the allegations in M&W's Third-Party Complaint, if Harkins is found liable, in whole or in part, then LM Construction will be liable over to Harkins for contractual and/or common law indemnification and contribution.

110.    All conditions precedent to filing suit have been satisfied and/or waived.

## COUNT I - CONTRIBUTION

**Harkins v. UGI, Central, Athena Stone, Legacy, and LM Construction**

111.    Harkins repeats and reiterates each and every allegation heretofore made in this Third-Party Complaint as if set forth here more particularly at length.

112.    Harkins also incorporates by reference all well-plead averments of M&W's Third-Party Complaint, without admission, as though same were set forth herein.

113.    While denying liability on Harkins' part, should M&W recover damages in this action against Harkins, the Third-Party Defendants are liable over

to Harkins for contribution for any monies that Harkins may be found liable or responsible to M&W.

**WHEREFORE,** Third-Party Plaintiff, Harkins Builders, Inc., respectfully requests that this Honorable Court enter judgment in its favor and against Third-Party Defendants, HomeServe USA Services, LLC d/b/a UGI Heating Cooling & Plumbing f/k/a UGI HVAC Enterprises Inc., Central II Inc., Athena Stone Corporation, Legacy Services USA, LLC, and LM Construction Enterprises.

## COUNT II – BREACH OF CONTRACT

### Harkins v. UGI and Liberty Mutual

114.   Harkins repeats and reiterates each and every allegation heretofore made in this Third-Party Complaint as if set forth here more particularly at length.

115.   Harkins also incorporates by reference all well-plead averments of M&W's Third-Party Complaint, without admission, as though same were set forth herein.

116.   The Subcontract Agreement required UGI to perform its work in strict accordance with the terms and provisions of the Subcontract Documents and to the satisfaction of Owner, Architect, and Contractor, and in a skilled and workman like manner. See Exhibit "C" at ¶ 2.

117.   If the allegations of M&W's Complaint are proven true, UGI breached its obligation to perform its work in strict accordance with the Subcontract

Documents, to the satisfaction of the Owner, Architect or Contractor, and/or in a workman like manner.

118.   The Subcontract Agreement also contained an indemnification provision requiring UGI to defend, indemnify, and hold Harkins harmless from the types of claims asserted by M&W in this matter. <u>See</u> Exhibit "C" at ¶ 11.

119.   UGI is contractually obligated to defend, indemnify and hold Harkins harmless.

120.   Liberty Mutual (via its Performance Bond) agreed to fully indemnify and save Harkins from all liability, costs, damage, expense, and attorney's fees which Harkins may suffer by reason of UGI's failure to perform the obligations set forth under its Subcontract Agreement with Harkins.

121.   The failure of UGI and Liberty Mutual to defend, indemnify and hold Harkins harmless is a material breach of the Subcontract Agreement and Performance Bond.

122.   Additionally, the Agreement also requires UGI to procure and maintain insurance, naming Harkins as an Additional Insured. Id at ¶ 12.

123.   UGI's failure to provide insurance coverage for Harkins for the defense and indemnification owed by UGI to Harkins is a material breach of the Subcontract Agreement.

124.   As a result of UGI's breaches of the Subcontract Agreement, Harkins has incurred, and will continue to incur damages, including expenses, costs and attorneys' fees incurred in the investigation and defense of this action.

125.   As a result of the breaches of the Subcontract Agreement by UGI, Harkins is entitled to recover damages for said breaches, including all expenses, costs, and attorneys' fees incurred in the investigation and defense of this action, along with any judgment that may be entered against Harkins.

126.   Based on UGI's clear contractual obligations, Harkins submitted tender letters to UGI and UGI's insurer requesting that they provide additional insurance coverage and indemnification of Harkins. See Exhibits "D" and "E".

127.   To date, UGI and Liberty Mutual have failed to defend, indemnify and hold Harkins harmless, and provide insurance coverage to Harkins, as required by the Subcontract Agreement.

128.   As a result of UGI and Liberty Mutual's failure to adhere to their contractual obligations, Harkins has sustained damage, and continues to sustain damage, including damage in the nature of attorneys' fees and costs.

**WHEREFORE,** Third-Party Plaintiff, Harkins Builders, Inc., respectfully requests that this Honorable Court enter judgment in its favor and against Third-Party Defendants, HomeServe USA Services, LLC d/b/a UGI Heating Cooling & Plumbing f/k/a UGI HVAC Enterprises Inc., and Liberty Mutual Insurance Company

for breach of contract including delay damages, interest, costs and expenses, and such other relief as the Court deems just and proper.

## COUNT III – BREACH OF PERFORMANCE BOND

### Harkins v. UGI and Liberty Mutual

129.    Harkins repeats and reiterates each and every allegation heretofore made in this Third-Party Complaint as if set forth here more particularly at length.

130.    Harkins also incorporates by reference all well-plead averments of M&W's Third-Party Complaint, without admission, as though same were set forth herein.

131.    The Subcontract Agreement required UGI to perform its work in strict accordance with the terms and provisions of the Subcontract Documents and to the satisfaction of Owner, Architect, and Contractor, and in a skilled and workman like manner. See Exhibit "C" at ¶ 2.

132.    If the allegations of M&W's Complaint are proven true, UGI breached its obligation to perform its work in strict accordance with the Subcontract Documents, to the satisfaction of the Owner, Architect or Contractor, and/or in a workman like manner.

133.    The Subcontract Agreement also contained an indemnification provision requiring UGI to defend, indemnify, and hold Harkins harmless from the types of claims asserted by M&W in this matter. See Exhibit "C" at ¶ 11.

134. UGI is contractually obligated to defend, indemnify and hold Harkins harmless.

135. Liberty Mutual (via its Performance Bond) agreed to fully indemnify and save Harkins from all liability, costs, damage, expense, and attorney's fees which Harkins may suffer by reason of UGI's failure to perform the obligations set forth under its Subcontract Agreement with Harkins.

136. The failure of UGI and Liberty Mutual to defend, indemnify and hold Harkins harmless is a material breach of the Subcontract Agreement and Performance Bond.

137. Additionally, the Agreement also requires UGI to procure and maintain insurance, naming Harkins as an Additional Insured. Id at ¶ 12.

138. UGI's failure to provide insurance coverage for Harkins for the defense and indemnification owed by UGI to Harkins is a material breach of the Subcontract Agreement.

139. As a result of UGI's breaches of the Subcontract Agreement, Harkins has incurred, and will continue to incur damages, including expenses, costs and attorneys' fees incurred in the investigation and defense of this action.

140. As a result of the breaches of the Subcontract Agreement by UGI, Harkins is entitled to recover damages for said breaches, including all expenses,

costs, and attorneys' fees incurred in the investigation and defense of this action, along with any judgment that may be entered against Harkins.

141.    Based on UGI's clear contractual obligations, Harkins submitted tender letters to UGI and UGI's insurer requesting that they provide additional insurance coverage and indemnification of Harkins. See Exhibits "D" and "E".

142.    To date, UGI and Liberty Mutual have failed to defend, indemnify and hold Harkins harmless, and provide insurance coverage to Harkins, as required by the Subcontract Agreement.

143.    As a result of UGI and Liberty Mutual's failure to adhere to their contractual obligations, Harkins has sustained damage, and continues to sustain damage, including damage in the nature of attorneys' fees and costs.

**WHEREFORE,** Third-Party Plaintiff, Harkins Builders, Inc., respectfully requests that this Honorable Court enter judgment in its favor and against Third-Party Defendants, HomeServe USA Services, LLC d/b/a UGI Heating Cooling & Plumbing f/k/a UGI HVAC Enterprises Inc., and Liberty Mutual Insurance Company for breach of contract including delay damages, interest, costs and expenses, and such other relief as the Court deems just and proper.

## COUNT IV - CONTRACTUAL INDEMNIFICATION

### Harkins v. UGI and Liberty Mutual

144.    Harkins repeats and reiterates each and every allegation heretofore made in this Third-Party Complaint as if set forth here more particularly at length.

145.    Harkins also incorporates by reference all well-plead averments of M&W's Third-Party Complaint, without admission, as though same were set forth herein.

146.    For the reasons set forth above, any amount which Harkins will have to pay in this case in the nature of any settlement, judgment, costs, or attorneys' fees is a loss caused by UGI's failure to defend and indemnify Harkins, as required by the Subcontract Agreement and Liberty Mutual's Performance Bond.

147.    Therefore, Harkins demands full and complete indemnification for all losses and costs, including attorneys' fees, costs, settlements, and judgments in accordance with the terms of the Subcontract Agreement.

**WHEREFORE,** Third-Party Plaintiff, Harkins Builders, Inc., respectfully requests that this Honorable Court enter judgment in its favor and against Third-Party Defendant, HomeServe USA Services, LLC d/b/a UGI Heating Cooling & Plumbing f/k/a UGI HVAC Enterprises Inc. and Liberty Mutual Insurance Company for contractual indemnification including delay damages, interest, costs and expenses, and such other relief as the Court deems just and proper.

## COUNT V – BREACH OF CONTRACT

### Harkins v. Central

{W1808759.1}

148.   Harkins repeats and reiterates each and every allegation heretofore made in this Third-Party Complaint as if set forth here more particularly at length.

149.   Harkins also incorporates by reference all well-plead averments of M&W's Third-Party Complaint, without admission, as though same were set forth herein.

150.   The Subcontract Agreement required Central to perform its work in strict accordance with the terms and provisions of the Subcontract Documents and to the satisfaction of Owner, Architect, and Contractor, and in a skilled and workman like manner. See Exhibit "G" at ¶ 2.

151.   If the allegations of M&W's Complaint are proven true, Central breached its obligation to perform its work in strict accordance with the Subcontract Documents, to the satisfaction of the Owner, Architect or Contractor, and/or in a workman like manner.

152.   The Subcontract Agreement entered by Central contained an indemnification provision requiring Central to defend, indemnify, and hold Harkins harmless from the types of claims asserted by M&W in this matter. See Exhibit "G" at ¶ 11.

153.   Central is contractually obligated to defend, indemnify and hold Harkins harmless.

154. The failure of Central to defend, indemnify and hold Harkins harmless is a material breach of the Subcontract Agreement.

155. Additionally, the Agreement also requires Central to procure and maintain insurance, naming Harkins as an Additional Insured. Id. at ¶ 12.

156. Central's failure to provide insurance coverage for Harkins for the defense and indemnification owed by Central to Harkins is a material breach of the Subcontract Agreement.

157. As a result of Central's breaches of the Subcontract Agreement, Harkins has incurred, and will continue to incur damages, including expenses, costs and attorneys' fees incurred in the investigation and defense of this action.

158. As a result of the breaches of the Subcontract Agreement by Central, Harkins is entitled to recover damages for said breaches, including all expenses, costs, and attorneys' fees incurred in the investigation and defense of this action, along with any judgment that may be entered against Harkins.

159. Based on Central's clear contractual obligations, Harkins submitted tender letters to Central and Central's insurer requesting that they provide additional insurance coverage and indemnification of Harkins. See Exhibits "H", "I" and "K".

160. To date, Central has failed to defend, indemnify and hold Harkins harmless, and provide insurance coverage to Harkins, as required by the Subcontract Agreement.

{W1808759.1}

161.   As a result of Central's failure to adhere to its contractual obligations, Harkins has sustained damage, and continues to sustain damage, including damage in the nature of attorneys' fees and costs.

**WHEREFORE,** Third-Party Plaintiff, Harkins Builders, Inc., respectfully requests that this Honorable Court enter judgment in its favor and against Third-Party Defendant, Central II, Inc. for breach of contract including delay damages, interest, costs and expenses, and such other relief as the Court deems just and proper.

## COUNT VI - CONTRACTUAL INDEMNIFICATION

### Harkins v. Central

162.   Harkins repeats and reiterates each and every allegation heretofore made in this Third-Party Complaint as if set forth here more particularly at length.

163.   Harkins also incorporates by reference all well-plead averments of M&W's Third-Party Complaint, without admission, as though same were set forth herein.

164.   For the reasons set forth above, any amount which Harkins will have to pay in this case in the nature of any settlement, judgment, costs, or attorneys' fees is a loss caused by Central's failure to defend and indemnify Harkins, as required by the Subcontract Agreement.

165.   Therefore, Harkins demands full and complete indemnification for all losses and costs, including attorneys' fees, costs, settlements, and judgments in accordance with the terms of the Subcontract Agreement.

**WHEREFORE,** Third-Party Plaintiff, Harkins Builders, Inc., respectfully requests that this Honorable Court enter judgment in its favor and against Third-Party Defendant, Central II, Inc. for contractual indemnification including delay damages, interest, costs and expenses, and such other relief as the Court deems just and proper.

## COUNT VII – BREACH OF CONTRACT

### Harkins v. Athena Stone and American Southern

166.   Harkins repeats and reiterates each and every allegation heretofore made in this Third-Party Complaint as if set forth here more particularly at length.

167.   Harkins also incorporates by reference all well-plead averments of M&W's Third-Party Complaint, without admission, as though same were set forth herein.

168.   The Subcontract Agreement required Athena Stone to perform its work in strict accordance with the terms and provisions of the Subcontract Documents and to the satisfaction of Owner, Architect, and Contractor, and in a skilled and workman like manner. See Exhibit "M" at ¶ 2.

169.   If the allegations of M&W's Complaint are proven true, Athena Stone breached its obligation to perform its work in strict accordance with the Subcontract Documents, to the satisfaction of the Owner, Architect or Contractor, and/or in a workman like manner.

170.   The Subcontract Agreement entered by Athena Stone contained an indemnification provision requiring Athena Stone to defend, indemnify, and hold Harkins harmless from the types of claims asserted by M&W in this matter. Id at ¶ 11.

171.   Athena Stone is contractually obligated to defend, indemnify and hold Harkins harmless.

172.   American Southern (via its Performance Bond) agreed to fully indemnify and save Harkins from all liability, costs, damage, expense, and attorney's fees which Harkins may suffer by reason of Athena Stone's failure to perform the obligations set forth under its Subcontract Agreement with Harkins.

173.   The failure of Athena Stone and American Southern to defend, indemnify and hold Harkins harmless is a material breach of the Subcontract Agreement and Performance Bond.

174.   Additionally, the Agreement also requires Athena Stone to procure and maintain insurance, naming Harkins as an Additional Insured. Id at ¶ 12.

175.   Athena Stone's failure to provide insurance coverage for Harkins for the defense and indemnification owed by UGI to Harkins is a material breach of the Subcontract Agreement.

176.   As a result of Athena Stone's breaches of the Subcontract Agreement, Harkins has incurred, and will continue to incur damages, including expenses, costs and attorneys' fees incurred in the investigation and defense of this action.

177.   As a result of the breaches of the Subcontract Agreement by Athena Stone, Harkins is entitled to recover damages for said breaches, including all expenses, costs, and attorneys' fees incurred in the investigation and defense of this action, along with any judgment that may be entered against Harkins.

178.   Based on Athena Stone's clear contractual obligations, Harkins submitted tender letters to Athena Stone and Athena Stone's insurer requesting that they provide additional insurance coverage and indemnification of Harkins. See Exhibits "O" and "P".

179.   To date, Athena Stone and American Southern have failed to defend, indemnify and hold Harkins harmless, and provide insurance coverage to Harkins, as required by the Subcontract Agreement.

180.   As a result of Athena Stone and American Southern's failure to adhere to their contractual obligations, Harkins has sustained damage, and continues to sustain damage, including damage in the nature of attorneys' fees and costs.

{W1808759.1}

**WHEREFORE,** Third-Party Plaintiff, Harkins Builders, Inc., respectfully requests that this Honorable Court enter judgment in its favor and against Third-Party Defendants, Athena Stone Athena Stone Corporation and American Southern Insurance Company for breach of contract including delay damages, interest, costs and expenses, and such other relief as the Court deems just and proper.

## COUNT VI – BREACH OF PERFORMANCE BOND

### Harkins v. Athena Stone and American Southern

181.   Harkins repeats and reiterates each and every allegation heretofore made in this Third-Party Complaint as if set forth here more particularly at length.

182.   Harkins also incorporates by reference all well-plead averments of M&W's Third-Party Complaint, without admission, as though same were set forth herein.

183.   The Subcontract Agreement required Athena Stone to perform its work in strict accordance with the terms and provisions of the Subcontract Documents and to the satisfaction of Owner, Architect, and Contractor, and in a skilled and workman like manner. See Exhibit "M" at ¶ 2.

184.   If the allegations of M&W's Complaint are proven true, Athena Stone breached its obligation to perform its work in strict accordance with the Subcontract Documents, to the satisfaction of the Owner, Architect or Contractor, and/or in a workman like manner.

185.    The Subcontract Agreement entered by Athena Stone contained an indemnification provision requiring Athena Stone to defend, indemnify, and hold Harkins harmless from the types of claims asserted by M&W in this matter. Id. at ¶ 11.

186.    Athena Stone is contractually obligated to defend, indemnify and hold Harkins harmless.

187.    American Southern (via its Performance Bond) agreed to fully indemnify and save Harkins from all liability, costs, damage, expense, and attorney's fees which Harkins may suffer by reason of Athena Stone's failure to perform the obligations set forth under its Subcontract Agreement with Harkins.

188.    The failure of Athena Stone and American Southern to defend, indemnify and hold Harkins harmless is a material breach of the Subcontract Agreement and Performance Bond.

189.    Additionally, the Agreement also requires Athena Stone to procure and maintain insurance, naming Harkins as an Additional Insured. Id at ¶ 12.

190.    Athena Stone's failure to provide insurance coverage for Harkins for the defense and indemnification owed by Athena Stone to Harkins is a material breach of the Subcontract Agreement.

191.   As a result of Athena Stone's breaches of the Subcontract Agreement, Harkins has incurred, and will continue to incur damages, including expenses, costs and attorneys' fees incurred in the investigation and defense of this action.

192.   As a result of the breaches of the Subcontract Agreement by Athena Stone, Harkins is entitled to recover damages for said breaches, including all expenses, costs, and attorneys' fees incurred in the investigation and defense of this action, along with any judgment that may be entered against Harkins.

193.   Based on Athena Stone's clear contractual obligations, Harkins submitted tender letters to Athena Stone and Athena Stone's insurer requesting that they provide additional insurance coverage and indemnification of Harkins. <u>See</u> Exhibits "O" and "P".

194.   To date, Athena Stone and American Southern have failed to defend, indemnify and hold Harkins harmless, and provide insurance coverage to Harkins, as required by the Subcontract Agreement.

195.   As a result of Athena Stone and American Southern's failure to adhere to their contractual obligations, Harkins has sustained damage, and continues to sustain damage, including damage in the nature of attorneys' fees and costs.

**WHEREFORE,** Third-Party Plaintiff, Harkins Builders, Inc., respectfully requests that this Honorable Court enter judgment in its favor and against Third-Party Defendants, Athena Stone Athena Stone Corporation and American Southern

Insurance Company for breach of contract including delay damages, interest, costs and expenses, and such other relief as the Court deems just and proper.

## COUNT VII - CONTRACTUAL INDEMNIFICATION

### Harkins v. Athena Stone and American Southern

196.   Harkins repeats and reiterates each and every allegation heretofore made in this Third-Party Complaint as if set forth here more particularly at length.

197.   Harkins also incorporates by reference all well-plead averments of M&W's Third-Party Complaint, without admission, as though same were set forth herein.

198.   For the reasons set forth above, any amount which Harkins will have to pay in this case in the nature of any settlement, judgment, costs, or attorneys' fees is a loss caused by Athena Stone and American Southern's failure to defend and indemnify Harkins, as required by the Subcontract Agreement and Performance Bond.

199.   Therefore, Harkins demands full and complete indemnification for all losses and costs, including attorneys' fees, costs, settlements, and judgments in accordance with the terms of the Subcontract Agreement.

**WHEREFORE,** Third-Party Plaintiff, Harkins Builders, Inc., respectfully requests that this Honorable Court enter judgment in its favor and against Third-Party Defendants, Athena Stone Corporation and American Southern for contractual

indemnification including delay damages, interest, costs and expenses, and such other relief as the Court deems just and proper.

## COUNT VIII – BREACH OF CONTRACT

### Harkins v. Legacy and United States Fire

200.   Harkins repeats and reiterates each and every allegation heretofore made in this Third-Party Complaint as if set forth here more particularly at length.

201.   Harkins also incorporates by reference all well-plead averments of M&W's Third-Party Complaint, without admission, as though same were set forth herein.

202.   The Subcontract Agreements required Legacy to perform its work in strict accordance with the terms and provisions of the Subcontract Documents and to the satisfaction of Owner, Architect, and Contractor, and in a skilled and workman like manner. See Exhibit "Q" at ¶ 2.

203.   If the allegations of M&W's Complaint are proven true, Legacy breached its obligation to perform its work in strict accordance with the Subcontract Documents, to the satisfaction of the Owner, Architect or Contractor, and/or in a workman like manner.

204.   The Subcontract Agreement also contained an indemnification provision requiring Legacy to defend, indemnify, and hold Harkins harmless from the types of claims asserted by M&W in this matter. Id. at ¶ 11.

205.   Legacy is contractually obligated to defend, indemnify and hold Harkins harmless.

206.   United States Fire (via its Performance Bonds) agreed to fully indemnify and save Harkins from all liability, costs, damage, expense, and attorney's fees which Harkins may suffer by reason of Legacy failure to perform the obligations set forth under its Subcontract Agreement with Harkins.

207.   The failure of Legacy and Liberty Mutual to defend, indemnify and hold Harkins harmless is a material breach of the Subcontract Agreement and Performance Bond.

208.   Additionally, the Agreement also requires Legacy to procure and maintain insurance, naming Harkins as an Additional Insured. Id. at ¶ 12.

209.   Legacy's failure to provide insurance coverage for Harkins for the defense and indemnification owed by Legacy to Harkins is a material breach of the Subcontract Agreements.

210.   As a result of Legacy's breaches of the Subcontract Agreements, Harkins has incurred, and will continue to incur damages, including expenses, costs and attorneys' fees incurred in the investigation and defense of this action.

211.   As a result of the breaches of the Subcontract Agreement by Legacy, Harkins is entitled to recover damages for said breaches, including all expenses,

costs, and attorneys' fees incurred in the investigation and defense of this action, along with any judgment that may be entered against Harkins.

212.   Based on Legacy's clear contractual obligations, Harkins submitted a tender letter to Legacy requesting it provide additional insurance coverage and indemnification of Harkins. See Exhibit "S".

213.   To date, Legacy and United States Fire have failed to defend, indemnify and hold Harkins harmless, and provide insurance coverage to Harkins, as required by the Subcontract Agreements and Performance Bonds.

214.   As a result of Legacy and Liberty Mutual's failure to adhere to their contractual obligations, Harkins has sustained damage, and continues to sustain damage, including damage in the nature of attorneys' fees and costs.

**WHEREFORE,** Third-Party Plaintiff, Harkins Builders, Inc., respectfully requests that this Honorable Court enter judgment in its favor and against Third-Party Defendants, Legacy Services USA, LLC and United States Fire Insurance Co., for breach of contract including delay damages, interest, costs and expenses, and such other relief as the Court deems just and proper.

## COUNT IX – BREACH OF PERFORMANCE BOND

### Harkins v. Legacy and United States Fire

215.   Harkins repeats and reiterates each and every allegation heretofore made in this Third-Party Complaint as if set forth here more particularly at length.

216. Harkins also incorporates by reference all well-plead averments of M&W's Third-Party Complaint, without admission, as though same were set forth herein.

217. The Subcontract Agreements required Legacy to perform its work in strict accordance with the terms and provisions of the Subcontract Documents and to the satisfaction of Owner, Architect, and Contractor, and in a skilled and workman like manner. See Exhibit "Q" at ¶ 2.

218. If the allegations of M&W's Complaint are proven true, Legacy breached its obligation to perform its work in strict accordance with the Subcontract Documents, to the satisfaction of the Owner, Architect or Contractor, and/or in a workman like manner.

219. The Subcontract Agreement also contained an indemnification provision requiring Legacy to defend, indemnify, and hold Harkins harmless from the types of claims asserted by M&W in this matter. See Exhibit "C" at ¶ 11.

220. Legacy is contractually obligated to defend, indemnify and hold Harkins harmless.

221. United States Fire (via its Performance Bonds) agreed to fully indemnify and save Harkins from all liability, costs, damage, expense, and attorney's fees which Harkins may suffer by reason of Legacy failure to perform the obligations set forth under its Subcontract Agreement with Harkins.

222.   The failure of Legacy and United States Fire to defend, indemnify and hold Harkins harmless is a material breach of the Subcontract Agreement and Performance Bond.

223.   Additionally, the Agreement also requires Legacy to procure and maintain insurance, naming Harkins as an Additional Insured. Id at ¶ 12.

224.   Legacy's failure to provide insurance coverage for Harkins for the defense and indemnification owed by Legacy to Harkins is a material breach of the Subcontract Agreements.

225.   As a result of Legacy's breaches of the Subcontract Agreements, Harkins has incurred, and will continue to incur damages, including expenses, costs and attorneys' fees incurred in the investigation and defense of this action.

226.   As a result of the breaches of the Subcontract Agreement by Legacy, Harkins is entitled to recover damages for said breaches, including all expenses, costs, and attorneys' fees incurred in the investigation and defense of this action, along with any judgment that may be entered against Harkins.

227.   Based on Legacy's clear contractual obligations, Harkins submitted a tender letter to Legacy requesting it provide additional insurance coverage and indemnification of Harkins. See Exhibit "S".

228.    To date, Legacy and United States Fire have failed to defend, indemnify and hold Harkins harmless, and provide insurance coverage to Harkins, as required by the Subcontract Agreements and Performance Bonds.

229.    As a result of Legacy and Liberty Mutual's failure to adhere to their contractual obligations, Harkins has sustained damage, and continues to sustain damage, including damage in the nature of attorneys' fees and costs.

**WHEREFORE,** Third-Party Plaintiff, Harkins Builders, Inc., respectfully requests that this Honorable Court enter judgment in its favor and against Third-Party Defendants, Legacy Services USA, LLC and United States Fire Insurance Co., for breach of contract including delay damages, interest, costs and expenses, and such other relief as the Court deems just and proper.

## **COUNT X - CONTRACTUAL INDEMNIFICATION**

### **Harkins v. Legacy and United States Fire**

230.    Harkins repeats and reiterates each and every allegation heretofore made in this Third-Party Complaint as if set forth here more particularly at length.

231.    Harkins also incorporates by reference all well-plead averments of M&W's Third-Party Complaint, without admission, as though same were set forth herein.

232.    For the reasons set forth above, any amount which Harkins will have to pay in this case in the nature of any settlement, judgment, costs, or attorneys' fees is a loss caused by Legacy's failure to defend and indemnify Harkins, as required by the Subcontract Agreement and United States Fire's Performance Bond.

233.    Therefore, Harkins demands full and complete indemnification for all losses and costs, including attorneys' fees, costs, settlements, and judgments in accordance with the terms of the Subcontract Agreement.

**WHEREFORE,** Third-Party Plaintiff, Harkins Builders, Inc., respectfully requests that this Honorable Court enter judgment in its favor and against Third-Party Defendants, Legacy Services USA, LLC and United States Fire Insurance Company for contractual indemnification including delay damages, interest, costs and expenses, and such other relief as the Court deems just and proper.

## COUNT XI – BREACH OF CONTRACT

### Harkins v. LM Construction

234.    Harkins repeats and reiterates each and every allegation heretofore made in this Third-Party Complaint as if set forth here more particularly at length.

235.    Harkins also incorporates by reference all well-plead averments of M&W's Third-Party Complaint, without admission, as though same were set forth herein.

{W1808759.1}

236.    The Subcontract required LM Construction to perform its work in strict accordance with the terms and provisions of the Subcontract Documents. <u>See</u> Exhibit "T" at ¶ 2.

237.    If the allegations of M&W's Complaint are proven true, LM Construction breached its obligation to perform its work in strict accordance with the Subcontract Documents.

238.    The Subcontract Agreement entered by LM Construction also contained an indemnification provision requiring LM Construction to defend, indemnify, and hold Harkins harmless from the types of claims asserted by M&W in this matter. <u>See</u> Exhibit "T" at ¶ 19.

239.    LM Construction is contractually obligated to defend, indemnify and hold Harkins harmless.

240.    The failure of LM Construction to defend, indemnify and hold Harkins harmless is a material breach of the Subcontract Agreement.

241.    Additionally, the Agreement also requires LM Construction to procure and maintain insurance, naming Harkins as an Additional Insured. <u>Id</u>. at ¶ 12.

242.    LM Construction's failure to provide insurance coverage for Harkins for the defense and indemnification owed by LM Construction to Harkins is a material breach of the Subcontract Agreement.

243.   As a result of LM Construction's breaches of the Subcontract Agreement, Harkins has incurred, and will continue to incur damages, including expenses, costs and attorneys' fees incurred in the investigation and defense of this action.

244.   As a result of the breaches of the Subcontract Agreement by LM Construction, Harkins is entitled to recover damages for said breaches, including all expenses, costs, and attorneys' fees incurred in the investigation and defense of this action, along with any judgment that may be entered against Harkins.

245.   Based on LM Construction's clear contractual obligations, Harkins submitted tender letters to LM Construction and LM Construction's insurer requesting that they provide additional insurance coverage and indemnification of Harkins. See Exhibits "U" and "V".

246.   To date, LM Construction has failed to defend, indemnify and hold Harkins harmless, and provide insurance coverage to Harkins, as required by the Subcontract Agreement.

247.   As a result of LM Construction's failure to adhere to its contractual obligations, Harkins has sustained damage, and continues to sustain damage, including damage in the nature of attorneys' fees and costs.

**WHEREFORE,** Third-Party Plaintiff, Harkins Builders, Inc., respectfully requests that this Honorable Court enter judgment in its favor and against Third-

Party Defendant, LM Construction Enterprises Inc. for breach of contract including delay damages, interest, costs and expenses, and such other relief as the Court deems just and proper.

## COUNT XII - CONTRACTUAL INDEMNIFICATION

### Harkins v. LM Construction

248.   Harkins repeats and reiterates each and every allegation heretofore made in this Third-Party Complaint as if set forth here more particularly at length.

249.   Harkins also incorporates by reference all well-plead averments of M&W's Third-Party Complaint, without admission, as though same were set forth herein.

250.   For the reasons set forth above, any amount which Harkins will have to pay in this case in the nature of any settlement, judgment, costs, or attorneys' fees is a loss caused by LM Construction's failure to defend and indemnify Harkins, as required by the Subcontract Agreement.

251.   Therefore, Harkins demands full and complete indemnification for all losses and costs, including attorneys' fees, costs, settlements, and judgments in accordance with the terms of the Subcontract Agreement.

**WHEREFORE,** Third-Party Plaintiff, Harkins Builders, Inc., respectfully requests that this Honorable Court enter judgment in its favor and against Third-Party Defendant, LM Construction Enterprises Inc. for contractual indemnification

including delay damages, interest, costs and expenses, and such other relief as the

Court deems just and proper.

**[SIGNATURE ON THE FOLLOWING PAGE]**

**FOWLER HIRTZEL MCNULTY & SPAULDING, LLC**

**Dated: November 25, 2024**

By: **/S/ ANDREW J. SPAULDING**

ANDREW J. SPAULDING, ESQUIRE
SAMUEL A. GARSON, ESQUIRE
PA ID #: 88096
PA ID #: 324340
Fowler, Hirtzel, McNulty & Spaulding, LLC
1717 Arch Street., Suite 1310
Philadelphia, PA 19103
P: 215-789-4840
F: 215-613-4994
E: aspaulding@fhmslaw.com
E: sgarson@fhmslaw.com
Attorneys for Third Party Defendant, Harkin Builders, Inc.

{W1808759.1}