IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| 335 RIGHTERS FERRY ROAD, LP, | Civil Action No. 2:23-cv-01963 |
| Plaintiff, | |
| v. | JURY TRIAL DEMANDED |
| MINNO & WASKO ARCHITECTS AND PLANNERS, PC *et al.*, | |
| Defendants. | |

## AMENDED COMPLAINT

Plaintiff, 335 Righters Ferry Road, LP ("Righters Ferry"), hereby files this Amended Complaint against Defendants, Minno & Wasko Architects and Planners, PC ("Minno & Wasko") and Moore Consulting Engineers, LLC ("Moore"), and in support thereof, avers as follows:

### THE PARTIES

1. Righters Ferry is a single-purpose entity that developed and owns the 210-unit apartment complex located at 335 Righters Ferry Road in Bala Cynwyd, PA (the "Building").

2. Righters Ferry maintains a principal office and place of business at 70 East Lancaster Avenue, Frazer, PA 19355.

3. Righters Ferry is a Pennsylvania limited partnership, with three partners. Each partner is a Pennsylvania limited liability company, and the sole member of each of those companies is Righters Ferry Road Holdings, LLC.

4. Righters Ferry Road Holdings, LLC is a Pennsylvania limited liability company. The members of this limited liability company include an individual person and two trusts.

– 2 –

5. The aforementioned individual and trustees of the aforementioned two trusts are all Pennsylvania residents.

6. At all times material hereto, Righters Ferry was and is a resident of the Commonwealth of Pennsylvania.

7. Defendant Minno & Wasko holds itself out to the public as a full-service architectural firm and is a New Jersey professional corporation that maintains its principal place of business at 80 Lambert Lane, Suite 105, Lambertville, NJ 08530.

8. Minno & Wasko is a professional corporation and acts through its directors, officers, managers, employees, agents and subconsultants; and for their conduct (including acts and omissions), Minno & Wasko is responsible.

9. At all times material hereto, Minno & Wasko was and is a resident of the State of New Jesrey.

10. Defendant Moore holds itself out to the public as an engineering and design specialist firm with expertise in heating, ventilation, and air conditioning, and is a New Jersey limited liability company that maintains its principal place of business at 457 Oakshade Road, Shamong, NJ 08088.

11. The members of Moore are two individuals, both of whom are New Jersey residents.

12. Moore is a limited liability company and acts through its directors, officers, managers, employees, agents and subconsultants; and for their conduct (including acts and omissions), Moore is responsible.

13. At all times material hereto, Moore was and is a resident of the State of New Jesrey.

## JURISDICTION AND VENUE

14. This Court has diversity jurisdiction under 28 U.S.C. § 1332(a)(1). There is complete diversity between the Plaintiff, Righters Ferry, and each of the Defendants, Minno & Wasko and Moore, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

15. Venue is proper in this District because, as discussed more fully below, a substantial part of the events, acts or omissions giving rise to Righters Ferry's claims occurred within this District and the improvements to real property that are the subject of this action (the "Building") is situated within this District. *See* 28 U.S. Code § 1391(b)(2).

16. Venue is also proper in this District pursuant to a contractual agreement between Righter Ferry and Minno & Wasko, which provides that "[v]enue for any litigation related to this Agreement shall be exclusively in a Court or competent jurisdiction for the county where the Project is located or, if applicable, a Federal Court with jurisdiction over such county." (*See* Ex. A (discussed more fully below) at ¶ 22.)

## FACTS COMMON TO ALL COUNTS

17. This civil action concerns the Defendants' design of the building envelope and HVAC systems for the Building, certain errors and omissions within that design, and the resulting excessive humidity within the Building during the hot and humid summer season, with ensuing property damages and other damages sustained by Righters Ferry.

18. On May 2, 2016, Minno & Wasko contracted with Righters Ferry to provide architectural design, management of subconsultants, and construction administration (among other services) for the design and construction of the Building (the "Contract"). (*See* Ex. A, which is a true and correct copy of the Contract.)

– 3 –

19. Pertinent to Righters Ferry's claims, Minno & Wasko's scope of work specifically included, among other things, the following:

a. Provide the "Schematic Design" of the Building's "Preliminary Building plans," "Preliminary Code Analysis" and "Mechanical, Electrical, Plumbing and Fire Protection System Description." (Ex. A, at Addendum A, p. 3.)

b. Provide the "Design Development" of the Building's "Building Plans," Building Sections," Preliminary Wall Sections," Preliminary Details," "Preliminary Mechanical, Electrical and Plumbing Plans and Schedules," "Preliminary Specifications – Preliminary Materials," (*Id*.)

c. Provide the "Construction Documents," including the Building's "Building Plans," "Building Sections," "Wall Sections," "Details," "Roof plans," "MEP drawings," ("MEP drawings" include Mechanical, Electrical and Plumbing drawings for construction) and "Project Specifications." (*Id*., p. 4.)

d. Engage in "Construction Administration," including "administration as necessary to interpret the contract documents and review in general their property implementation and intention," as well as "site observation visits with report from the mechanical, electrical and plumbing engineers" and "[r]eview[s] of the shop drawings and processing/reviewing and coordination of submittals." (*Id*.)

e. "[V]isit the site at monthly intervals to become generally familiar with the progress and quality of the work." (*Id*., p. 5.)

(Collectively, work performed by the Defendants with respect to the HVAC system is referred to hereinafter as the "MEP Work," and work performed by Minno & Wasko with respective the Building's envelope system is referred to hereinafter as the "Building Envelope Work."[1])

---

[1] The Building Envelope Work includes, among other things, the design and evaluation of the Building's thermal envelope system, which is comprised of integrated building components that together separate the interior of the Building, which is conditioned for heating and cooling, from the outside ambient conditions (the "Building Envelope System").

– 4 –

20. Minno & Wasko was also "responsible to [Righters Ferry] for the acts and omissions for [Minno & Wasko's] employees, subconsultants and their agents and employees, and other persons performing portions of the Services under a contract[.]" (Ex. A., ¶ 6.3.)

21. The Contract required Minno & Wasko to perform all of the services "in a manner consistent with the level of care, diligence, quality and skill ordinarily exercised by members of [Minno & Wasko's] profession for projects of similar scope, size, quality and complexity" (the "Contractual Standard of Care"). (Ex. A, ¶ 5.)

22. The Contract also provided for each of Minno & Wasko's subconsultants to "be bound by the terms of this Agreement and shall assume toward [Minno & Wasko] all of the obligations and responsibilities that [Minno & Wasko] by the terms of this Agreement assumes toward [Righters Ferry]." (Ex. A., ¶ 6.1.)

23. In furtherance of its obligations under the Contract with regard to the MEP Work, Minno & Wasko sub-contracted with Moore as its subconsultant to design certain MEP Work including the heating, ventilation and air conditioning ("HVAC") system for the Building (the "HVAC System").

24. Minno & Wasko and Moore, through their respective directors, officers, managers, employees, agents and/or subconsultants, as part of the MEP Work, provided Righters Ferry with a design and specifications for the HVAC System (the "HVAC System Design").

25. Minno & Wasko, through their respective directors, officers, managers, employees, agents and/or subconsultants, as part of the Building Envelope Work, provided Righters Ferry with a design and specifications for the Building Envelope System (the "Building Envelope System Design").

26. In turn, Righters Ferry, who did not (and does not) employ any design professionals, relied upon Minno & Wasko and Moore to provide a satisfactory design for the Building Envelope System and HVAC System in compliance with all applicable building codes and in conformance with the applicable professional and contractual standards of care.

27. The HVAC System Design and Building Envelope System Design caused and continues to cause excessive humidity, moisture and condensation to exist within the completed Building, along with ensuing property damages and other damages sustained by Righters Ferry, as more fully explained below.

28. Construction of the Building began in approximately January 2017 and completed in approximately January 2020.

29. The HVAC System was constructed in accordance with the final HVAC System Design prepared by Minno & Wasko and Moore.

30. The Building Envelope System was constructed in accordance with the final Building Envelope System Design prepared by Minno & Wasko.

31. In approximately February 2020, the first tenants began residing within the Building.

32. Beginning in mid-July 2021, Righters Ferry discovered that excessive condensation had formed on certain HVAC System ducts located within the Building's interstitial spaces (the unconditioned spaces between the floors and ceiling, and roof and ceiling, throughout the Building).

33. This condensation dripped onto and within other Building components and caused property damage within the Building, including but not limited to drywall damage, other building component damage and mold growth.

34. Righters Ferry thereafter hired consultants, vendors and/or contractors who repaired and/or remediated the property damage caused by the excessive humidity and moisture, resulting in condensation forming upon the ducts and/or other building components.

35. Righters Ferry also thereafter engaged a mechanical engineer and other professional consultants to investigate, evaluate and assist Righters Ferry to remediate the HVAC System and reduce excessive humidity within the Building.

36. These professionals determined and advised Righters Ferry of the following, *inter alia*:

- The HVAC equipment/units specified for the Building's apartment residences and installed pursuant to the HVAC System Design do not provide sufficient dehumidification. The HVAC units are oversized and as such do not operate long enough in cooling mode to provide sufficient dehumidification as well as cooling. While the specified units are in use during the summer months, the cooling set point temperatures are quickly attained, and the units cycle off without providing continual or additional dehumidification after the set point temperature is reached. These are high efficiency units that cool the interior-bound air while not adequately removing moisture during the summer season. The HVAC System Design should not have included units that fail to adequately dehumidify exterior air during the hot and humid summer season. The HVAC System Design explicitly excluded allowances for dehumidification and controls as outlined in the contract.

- The HVAC System Design also called for the Building's residential apartments to be ventilated via excessive exhaust airflow, resulting in negative air pressure and the infiltration of exterior, hot and humid air during the summer season, contributing to high levels of interior humidity. The HVAC System Design should not have required apartments to have been excessively exhaust ventilated, *e.g.*, the unbalanced exhaust ventilation within a 2-bedroom/2-bathroom, approximately 1,100 sf unit results in exhaust ventilation of 60 cfm, when the International Residential Code and International Building Code minimums for this ventilation is approximately 30 cfm.

- The HVAC System Design called for the non-residential areas of the Building to be excessively ventilated with supply air, resulting in high levels of exterior moisture laden air being supplied to the common areas and intermittently occupied spaces (*e.g.*, conference rooms) that

are assumed to be at peak occupancy when they are mostly not or are empty. The HVAC System Design should have required ventilation supply air to only be provided to non-residential interior spaces that are occupied and at the building code minimum ventilation rate based on actual occupancy (*i.e.*, demand control ventilation – $CO_2$ based ventilation).

- Because of the flawed HVAC System Design, the Building is operating under a negative air pressure due to greater air exhaust flow compared to supply air flow. The negative air pressure results in the infiltration of hot and humid air during the summer season, leading to high levels of interior humidity. The HVAC System Design should have balanced ventilation, operating at a neutral pressure where the exhaust flows are matched by the supply flows.

- Inadequate design coordination resulted in insufficient space allocation for systems and services between trades. This lack of coordination affected both insulated and value-engineered non-insulated HVAC ductwork, creating thermal bridges that allowed heat transfer, leading to energy loss and condensation. These conditions have also made it impossible to insulate ductwork in place, necessitating extensive outages, demolition, redesign, and rerouting of services.

37.    Through the course of this litigation, Righters Ferry also learned, with respect to Minno & Wasko's Building Envelope System Design, the following, *inter alia*:

- Based on the height of the Building, it should be classified as a commercial building and, by code, subject to the requirements of International Energy Conservation Code ("IECC") Chapter 5, from which criteria for the Building Envelope System Design should have followed. Minno & Wasko included within the Building Envelope System Design requirements for both commercial and residential projects, creating confusion and ambiguity as to which chapter of the IECC code its Building Envelope System Design is intended to comply with.

- The Building Envelope System Design does not comply with IECC Chapter 5 because, *inter alia*:

    o   The exterior wall assembly design lacked continuous insulation, allowed for insulation gaps and related localized weaknesses in the thermal envelope, and allowed for thermal bridging.

    o   The roof ceiling assembly design lacked continuous insulation entirely above the roof deck.

- o The concrete floor ceiling assembly design (where the parking garage meets the first floor of the Building) lacked continuous insulation.

- Minno & Wasko failed to consider the impact of the aforementioned design details and deficiencies in the information input in the COMCheck software it utilized, and as a result that software (and Minno & Wasko) erroneously assessed the adequacy of the Building Envelope System Design.

38. Righters Ferry also learned through the course of this litigation that M&W and Moore also violated code (specifically, Section 603.12 of the International Mechanical Code) by permitting the supply air ductwork passing through the unconditioned interstitial spaces within the Building to be uninsulated.

39. Additionally, and consistent with the HVAC System Design, the interstitial spaces within the Building, directly below the rooftops and each of the residential floors, are not climate-controlled.

40. Accordingly, given these design defects, excessive humidity during the summer season, within these interstitial spaces, was or should have been reasonably foreseeable to the Defendants, as was the formation of condensation upon the exterior of metal ducts within these interstitial spaces, when during the summer season, cool, conditioned supply air moves through the ducts to the living spaces within the Building.

41. The above-described errors and omissions concerning the HVAC System Design and Building Envelope System Design are the primary, direct and proximate causes of the seasonal, excessive humidity condition within the Building and the damages sustained and to be sustained by Righters Ferry, including but not limited to property damage and the additional damages described in the paragraphs below.[2]

---

[2] The above-described errors and omissions are by way of example only. Righters Ferry's design experts, through their forthcoming reports, will set forth in detail the various and

42. As a result of the faulty HVAC System Design and Building Envelope System Design, Righters Ferry has spent in excess of $1 million to: (1) repair and remediate property damage caused by condensation, the dripping of condensation onto other building components and resulting mold growth; (2) re-design, replace, renovate and/or supplement the HVAC System to reduce overall humidity within the Building, (3) reduce negative air pressure; and (4) accommodate tenants who have had to endure remedial activities at the Building.  Righters Ferry has also lost rental income and sustained depreciated market value and reputational harm, as a result of the faulty HVAC System Design and Building Envelope System Design.

43. Righters Ferry anticipates additional replacement, renovation and/or supplemental work to the HVAC System, to account for that system's deficiencies and the Building Envelope System Design deficiencies, to further reduce humidity and excessive moisture and condensation within the Building and remediate negative air pressure, and Righters Ferry understands these future costs to potentially exceed an additional $3 million.

44. In September 2021, Righters Ferry notified both Minno & Wasko and Moore about the excessive humidity and resulting interior condensation and property damage.

45. Righters Ferry also invited Minno & Wasko and Moore to inspect the Building, including the HVAC System, and offer a response.

46. In October 2021, representatives of Minno & Wasko and Moore inspected the Building along with representatives of Righters Ferry.

---

specific design deficiencies, in breach of contract and the applicable standards of care, by each of the Defendants, as well as their related professional deficiencies in construction administration, value engineering and other aspects of their professional obligations, that together caused and continue to cause Righters Ferry the damages described throughout this Amended Complaint.

47. Minno & Wasko and Moore have failed to acknowledge their responsibility to Righters Ferry for the faulty HVAC System Design and Building Envelope System Design described herein and the resulting damages Righters Ferry has sustained and will sustain.

## COUNT I
## BREACH OF CONTRACT BY MINNO & WASKO

48. Righters Ferry incorporates the preceding paragraphs as if fully set forth herein.

49. The Contract is a binding and enforceable agreement between Righters Ferry and Minno & Wasko.

50. The Contract required Minno & Wasko to meet the Contractual Standard Care in the development and design of the HVAC System.

51. Minno & Wasko breached its contractual obligations by failing to exercise the requisite Contractual Standard of Care and, specifically, by failing to develop and design the HVAC System and Building Envelope System such that it would not result in excessive humidity, moisture, condensation and ensuing damages to the Building and Righters Ferry.

52. Minno & Wasko is also contractually responsible to Righters Ferry for the acts and/or omissions of its subconsultant, Moore, pertaining to the HVAC System Design (Ex. A., ¶ 6.3).

53. Righters Ferry has suffered and continues to suffer significant damages as a direct and proximate result of Minno & Wasko's breaches, errors and omissions, including, but not limited, to incurring costs, expenses and losses associated with: (1) property damage and remediating property damage, (2) reducing excessive humidity, moisture and condensation from within the Building, (3) reducing negative air pressure, (4) accommodating tenants impacted by the circumstances described herein, including but not limited to lease cancellations without penalty, temporary housing costs, contents relocation costs, and rent abatement, (5) diminution

of value including but not limited to reduced rental market value for apartments within the Building, and (6) reputational harm in the rental marketplace.

WHEREFORE, Righters Ferry demands that judgment be entered in its favor and against Minno & Wasko (jointly and severally with judgment against Moore) in an amount in excess of $75,000, together with interest, costs, and such further relief as the Court deems proper.

## COUNT II
## PROFESSIONAL NEGLIGENCE BY MINNO & WASKO

### (*Pleaded in the Alternative*)

54. Righters Ferry incorporates the preceding paragraphs as if fully set forth herein.

55. Righters Ferry pleads Count II in the alternative, in the event that Count I does not afford Righters Ferry a full and complete recovery of all damages against Minno & Wasko.

56. Minno & Wasko is a New Jersey professional corporation responsible for licensed professionals and, in particular, professional architects and engineers. Righters Ferry is asserting professional liability claims against Minno & Wasko.

57. Righters Ferry contracted with Minno & Wasko for its professional services to design, amongst other things, the HVAC System and Building Envelope System for the Building.

58. This Count is premised on the direct and primary responsibility of Minno & Wasko, and the licensed professionals for whom it has responsibility and/or is vicariously liable, as architects, engineers and/or designers of the HVAC System and Building Envelope System, to design, oversee, inspect, and assess the design and construction of these systems utilizing due care and in accordance with generally prevailing professional standards and codes applicable to the design and construction of similar HVAC systems and Building Envelope Systems, and to exercise and apply the skill and knowledge normally possessed by members of its profession or

trade in good standing in similar communities, as applicable to the Building and similar projects designed and constructed in Pennsylvania.

59. Minno & Wasko represented that it possessed exemplary specialized skill, and that it would apply that skill in the development, design and/or construction oversight of the HVAC System and Building Envelope System.

60. Minno & Wasko, through its professional employees, agents and/or subconsultants, failed to apply that skill in the development, design and/or construction oversight of the HVAC System and Building Envelope System, as evidenced by the errors and omissions concerning the HVAC System Design and Building Envelope System Design and the excessive humidity, moisture and condensation issues, all set forth more fully above.

61. That failure constitutes a breach of the professional duties incumbent upon Minno & Wasko's professional employees, agents and subconsultants (including but not limited to negligence *per se*), to apply the skill and knowledge normally possessed by members of the same profession or trade in good standing, in similar communities.

62. As a direct and proximate cause of the conduct for which Minno & Wasko is responsible, as alleged herein, Righters Ferry has incurred actual damages including, but not limited to, incurring costs, expenses and losses associated with: (1) property damage and remediating property damage, (2) reducing excessive humidity, moisture and condensation from within the Building, (3) reducing negative air pressure, (4) accommodating tenants impacted by the circumstances described herein, including but not limited to lease cancellations without penalty, temporary housing costs, contents relocation costs, and rent abatement, (5) diminution of value including but not limited to reduced rental market value for apartments within the Building, and (6) reputational harm in the rental marketplace.

WHEREFORE, Righters Ferry demands that judgment be entered in its favor and against Minno & Wasko (jointly and severally with judgment against Moore) in an amount in excess of $75,000, together with interest, costs, attorneys' fees, and such further relief as the Court deems proper.

COUNT III
**PROFESSIONAL NEGLIGENCE BY MOORE**

63. Righters Ferry incorporates the preceding paragraphs as if fully set forth herein.

64. Moore is a New Jersey limited liability company responsible for licensed professionals and, in particular, professional engineers. Righters Ferry is asserting a professional liability claim against Moore.

65. Minno & Wasko sub-contracted with Moore for its professional services to assist in the design of the HVAC System for the Building.

66. This Count is premised on the direct and primary responsibility of Moore, and the licensed professionals for whom it has responsibility and is vicariously liable, as engineers and designers of the HVAC System, to design, oversee, inspect, and assess the construction of the HVAC System utilizing due care and in accordance with generally prevailing professional standards and codes applicable to the design and construction of similar HVAC systems, and to exercise and apply the skill and knowledge normally possessed by members of its profession or trade in good standing in similar communities, as applicable to the Building and similar projects designed and constructed in Pennsylvania.

67. Moore represented that it possessed exemplary specialized skill, and that it would apply that skill in the development and design of the HVAC System.

68. Moore, through its professional employees, agents and/or subconsultants, failed to apply that skill in the development, design and/or construction oversight of the HVAC System,

as evidenced by the errors and omissions concerning the HVAC System Design and the excessive humidity issues, all set forth more fully above.

69. That failure constitutes a breach of the professional duties incumbent upon Moore's professional employees, agents and subconsultants (including but not limited to negligence *per se*), to apply the skill and knowledge normally possessed by members of its profession or trade in good standing in similar communities .

70. As a direct and proximate cause of the conduct for which Moore is responsible as alleged herein, Righters Ferry has incurred actual damages including, but not limited to, incurring costs, expenses and losses associated with: (1) property damage and remediating property damage, (2) reducing excessive humidity, moisture and condensation from within the Building, (3) reducing negative air pressure, (4) accommodating tenants impacted by the circumstances described herein, including but not limited to lease cancellations without penalty, temporary housing costs, contents relocation costs, and rent abatement, (5) diminution of value including but not limited to reduced rental market value for apartments within the Building, and (6) reputational harm in the rental marketplace.

WHEREFORE, Righters Ferry demands that judgment be entered in its favor and against Moore (jointly and severally with judgment against Minno & Wasko) in an amount in excess of $75,000, together with interest, costs, attorneys' fees, and such further relief as the Court deems proper.

## **JURY DEMAND**

Righters Ferry requests a trial by jury.

          Respectfully,

          */s/ Jeffrey D. Grossman*
          Jeffrey D. Grossman (Pa. Atty. No. 78537)
          Adriel Garcia (Pa. Atty. No. 316586)
          STRADLEY RONON STEVENS & YOUNG, LLP
          2005 Market Street, Suite 2600
          Philadelphia, PA  19103-7098
          T: (215) 564-8000
          F: (215) 564-8120
          E: jgrossman@stradley.com; agarcia@stradley.com

          *Attorneys for Plaintiff, 335 Righters Ferry Road, LP*

Dated:  December 23, 2024