## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| 335 RIGHTERS FERRY ROAD, LP | : | |
| *Plaintiff,* | : | Case No. 2:23-CV-1963 |
| | : | |
| v. | : | |
| | : | |
| MINNO & WASKO ARCHITECTS | : | |
| AND PLANNERS, PC and MOORE | : | |
| CONSULTING ENGINEERS, LLC | : | |
| *Defendants,* | : | |
| | : | |
| v. | : | |
| | : | |
| HARKINS BUILDERS, INC., et al | : | **JURY TRIAL DEMANDED** |
| *Defendants/Third Party* | : | |
| *Plaintiff,* | : | |
| v. | : | |
| | : | |
| LEGACY SERVICES USA, LLC et al | : | |
| *Third Party Defendants* | : | |
| *[Correctly Fourth Party Defendants]* | : | |
| *and Fifth Party Plaintiffs* | : | |
| | : | |
| v. | : | |
| | : | |
| LOCOSTA CONSTRUCTION, LLC; | : | |
| TREBOR ONE INC.; KONSTANTIN | : | |
| TYASCHKO D/B/A GPHI HOME | : | |
| REMODELING; CHIMBO | : | |
| CONSTRUCTION, LLC; L AND I | : | |
| CONSTRUCTION, LLC; DML | : | |
| ENTERPRISES INC.; GOLDSTONE | : | |
| GENERAL CONTRACTORS | : | |
| CORP.;STORM MASTER CO INC. D/B/A | : | |
| STORM MASTER SOUTH; UMAR | : | |
| CONSTRUCTION LLC; ERNIE BENDER | : | |
| ENTERPRISES INC.; PERFECT | : | |
| EXTERIORS, LLC; FIVE STAR | : | |
| GUTTERS, LLC; GREEN V STAR INC.; | : | |
| ALTERNATIVE GUTTERS, LLC; TP | : | |
| CONSTRUCTION AND ROOFING INC.; | : | |
| EMKE CONTRACTORS, LLC; and | : | |
| EXEMPLARY CONSTRUCTION, LLC; | : | |
| *Fifth Party Defendants* | : | |

**THIRD PARTY [CORRECTLY FOURTH PARTY] DEFENDANT AND  FIFTH PARTY PLAINTIFF LEGACY SERVICE USA LLC i/d/a "LEGACY SERVICES USA, LLC" FIFTH PARTY COMPLAINT**

Third Party Defendant (correctly Fourth Party Defendant) and Fifth Party Plaintiff, Legacy Service USA LLC i/d/a "Legacy Services USA, LLC" (hereinafter "Legacy") by and through its undersigned counsel, Thomas, Thomas & Hafer, LLP, hereby files this Fifth Party Complaint and avers as follows:

## NATURE OF THE ACTION

1.      This matter was initiated by original Plaintiff, 335 Righters Ferry Road, LP ("Plaintiff"), a single purpose entity that developed and owns the 210-unit apartment complex at 335 Righter's Ferry Road, Bala Cynwyd, Pennsylvania (the "Project" or "Building").

2.      Plaintiff filed a Civil Action Complaint in May 2023, asserting claims against original Defendants Minno and Wasko Architects and Planners, PC ("M&W") and Moore Consulting Engineers, LLC ("Moore"), alleging generally that those design professionals failed to properly design the Project's HVAC system, resulting in excessive interior humidity with ensuing property damages. Plaintiff filed its Amended Complaint against M&W and Moore on January 14, 2024. A true and correct copy of Plaintiff's Amended Complaint is attached hereto as **Exhibit "A".**

3.      Third-Party Plaintiff, M&W filed a Third-Party Complaint against Third Party Defendant Harkins Builders, Inc. ("Harkins"), the Project's General Contractor, for alleged deficiencies in the construction of the building envelope and for alleged misrepresentations to the Plaintiff during the value engineering process for the Project's HVAC system which "contradicted,

reversed, overruled, and/or bypassed Moore and M&W." A true and correct copy of M&W's Third-Party Complaint (without internal exhibits – see ECF Control No. 106) is attached hereto as **Exhibit "B"**, at ¶ 38.

4.     Thereafter, Third Party Defendant and Fourth Party Plaintiff Harkins filed an Amended "Third Party Complaint" (correctly "Fourth Party Complaint") against various Fourth Party Defendants, including Legacy. A true and correct copy of the Harkins' Amended Third Party [Correctly Fourth Party] Complaint (without internal exhibits – see ECF Control No. 133) is attached hereto as **Exhibit "C".**

5.     Harkins generally alleges that, with respect to the installation and/or construction of Project's HVAC system and building envelope, any work material to the deficiencies alleged by M&W was performed by the [Fourth Party Defendants, including Legacy]. See Exhibit C at Paragraph 5.

6.     Fourth Party Plaintiff Legacy denies the allegations against it by Harkins as set forth within the Harkins Amended Third Party [correctly Fourth Party] Complaint. However, to the extent the allegations asserted by Harkins with respect to the installation and/or construction of the Project's HVAC system and building envelope, including roofing and/or siding, are proven true, then it is alleged by Legacy that any such work material to the deficiencies alleged by Plaintiffs and/or Third Party Plaintiffs were performed by the named Fifth Party Defendants herein.

## THE PARTIES

7.     Fourth Party Defendant and Fifth Party Plaintiff, Legacy Services USA, LLC (referred herein as "Legacy"), is a Pennsylvania limited liability company with a principal place of business located at 95 James Way, Suite 100, Southampton, PA 18966.

8.     Fifth Party Defendant Locosta Construction, LLC ("Locosta"), is a Pennsylvania limited liability company with a principal place of business located at 6902 Epiphany Place, Philadelphia, Pennsylvania 19128.

9.     Fifth Party Defendant Trebor One Inc. ("Trebor One"), is a Pennsylvania corporation with a principal place of business located at 1601 Colonial Drive, Feasterville-Trevose, PA 19053.

10.     Fifth Party Defendant Konstantin Tyaschko doing business as GPHI Home Remodeling ("GPHI"), is a Pennsylvania sole proprietorship with a principal place of business located at 359 Avon Street, Philadelphia PA 19116.

11.     Fifth Party Defendant Chimbo Construction, LLC ("Chimbo"), is a New Jersey limited liability company with a principal place of business located at 150 Ball Street, 1F, Irvington, NJ 07111.

12.     Fifth Party Defendant L and I Construction, LLC ("L&I"), is a Pennsylvania limited liability company with a principal place of business located at 330 Jacksonville Road, Apt. 2-215, Warminster, PA 18974.

13.     Fifth Party Defendant DML Enterprises Inc. ("DML") is a Pennsylvania Corporation with a principal place of business located at 11825 Academy Road, Suite 25B, Philadelphia, PA 19154.

14.     Fifth Party Defendant Goldstone General Contractors Corp. ("Goldstone"), is a Pennsylvania corporation with a principal place of business located at 6915 Castor Avenue, 2nd Floor, Philadelphia, PA 19149.

15.     Fifth Party Defendants Storm Master Co Inc. d/b/a Storm Master South ("Storm Master") is a New Jersey Corporation with a registered agent for service located at 18 Cherokee Road, East Brunswick, NJ 08816.

16.     Fifth Party Defendant Umar Construction LLC ("Umar"), is a New Jersey limited liability company with a principal place of business located at 331 Nicholson Road, Mount Ephraim, NJ 08059.

17.     Fifth Party Defendant Ernie Bender Enterprises Inc. ("Bender") is a New Jersey limited liability company with a principal place of business located at 103 East Wild Avenue, Villas, NJ 08251.

18.     Fifth Party Defendant Perfect Exteriors, LLC ("Perfect Exteriors") is a Pennsylvania limited liability company with a principal place of business located at 41 Burdsal Avenue, Richboro, PA 18954.

19.     Fifth Party Defendant Five Star Gutters, LLC ("Five Star"), is a New Jersey limited liability company with a principal place of business located at 287 Park Avenue, Newark, NJ 07107.

20.     Fifth Party Defendant Green V Star Inc. ("Green") is a Pennsylvania limited liability company with a principal place of business located at 8537 Tolbut Street, Philadelphia, PA 19152.

21.     Fifth Party Defendant Alternative Gutters, LLC ("Alternative Gutters") is a New Jersey limited liability company with a principal place of business located at 512 Main Street, Little Falls, NJ 07424.

22.     Fifth Party Defendant TP Construction and Roofing Inc. ("TPC") is a Pennsylvania corporation with a principal place of business located at 1751 Welsh Road, Apartment A7, Philadelphia, PA 19115.

23.     Fifth Party Defendant EMKE Contractors, LLC ("EMKE") is a New Jersey limited liability company with a principal place of business located at 8 Allegheny Avenue, Lawrence Township NJ 08648.

24.     Fifth Party Defendant Exemplary Construction, LLC ("Exemplary") is a Pennsylvania limited liability company with a principal place of business located at 6190 Craig Avenue, Bensalem, PA 19020

## JURISDICTION AND VENUE

25.     This Court has original Jurisdiction under 28 U.S.C. § 1332(a).

26.     This Fifth Party Complaint is filed pursuant to Federal Rule of Civil Procedure 14(a).

27.     The Court has personal jurisdiction over the Fifth Party Defendants because the claims arose out of acts or omissions that occurred in Pennsylvania.

28.     Venue is proper in this Court because a substantial part of the claims arise out of acts or omissions that occurred within this District and the improvements to real property, which is the subject of Plaintiff's underlying action, is situated within this district.

## LOCOSTA

29.     Locosta, by and through its agents, performed work, including but not limited to, the installation of a cement siding system, including Nichiha siding; application of aluminum trim; drip capping; flashing; and otherwise was responsible for all aspects of the installation of the cement siding system at the Project.

30.     Without admitting any factual averments or conceding any legal conclusions contained within the Harkins Amended Third Party Complaint, Legacy incorporates all well-plead averments of Harkins Amended Third Party Complaint by reference, specifically those allegations regarding Legacy's obligations with respect to the "furnishing and installation of the Building's roofing and siding systems." See Exhibit C at Paragraphs 78 – 92.

31.     Legacy and Locosta entered into a Master Subcontract Agreement, which governed their relationship and which they agreed would govern the work performed at the Project. A true and correct copy of the Master Subcontract Agreement is attached hereto as **Exhibit "D."** The complete terms of the Master Subcontract are incorporated by reference as if set forth more fully herein.

32.     Pursuant to the Master Subcontract Agreement, Locosta was responsible for completing all aspects of its work, including the installation of the siding system at the Project.

33.     Specifically, Locosta agreed it:

…shall be solely responsible for all Work, including but not limited to the techniques, sequences, procedures, means, methods and coordination of all Work. Subcontractor shall supervise and direct all Work and give it all the attention necessary for proper supervision and direction. Subcontractor shall perform all Work in a thorough and workmanlike manner according to the highest standards of the appliable trades and to the reasonable satisfaction of Legacy…Subcontractor shall bear all costs involved in the repair or replacement of such work and in the repair or replacement of any other Work necessarily damaged by such repair or replacement….At all times, Subcontractor shall have exclusive and total responsibility for the quality and timeliness of its Work and nothing in this Section shall relieve Subcontractor of any liability or responsibility under law or otherwise.

See Exhibit D at Section 3.2.

34.     Moreover, as part of Locosta's contractual obligations to Legacy in connection with the Project, Locosta agreed to defend, indemnify and hold harmless Legacy from claims brought against Legacy arising from or relating to Locosta's work. See Exhibit D at Section 8.

35.     Additionally, as part of Locosta's contractual obligations to Legacy in connection with the Project, Locosta agreed to procure and maintain insurance naming Legacy as an Additional Insured. See Exhibit D at Section 9.

36.     Locosta has not yet agreed to contractually defend, indemnify or hold harmless Legacy in connection with the claims asserted by Harkins via Harkins' Amended Third Party Complaint.

37.     Locosta's insurer has not yet agreed to extend coverage to Legacy as an Additional Insured with respect to the claims asserted by Harkins via Harkins' Amended Third Party Complaint.

38.     Any refusal by Locosta to defend, indemnify and hold harmless Legacy in connection with this matter would constitute a Breach of the Master Subcontractor Agreement.

39.     Any refusal by Locosta's insurer to extend coverage to Legacy as an Additional Insured would constitute a breach by Locosta of the Master Subcontractor Agreement.

40.     As a result of any such breach by Locosta of the terms of the Master Subcontract Agreement, Legacy and its insurers have sustained damages and will continue to sustain damages, including the costs and attorneys' fees expended to defend this lawsuit.

41.     Without admitting any of the allegations of Harkins' Third Party Complaint, Legacy presently avers that if the injuries and damages asserted in the Third Party Complaint are proven to be true, in whole or in part, then said injuries and damages were caused by the acts and/or omissions of Locosta in the performance of the work.

42.     Furthermore, without admitting any of the allegations of Harkins' Third Party Complaint, Legacy presently avers that if the injuries and damages asserted in the Third Party Complaint are proven to be true, in whole or in part, then Locosta will be contractually required to

defend, indemnify and hold Legacy harmless against Harkins' claims, pursuant to the terms of the Master Subcontract Agreement.

43.    Without admitting any of the allegations of Harkins' Third Party Complaint, Legacy presently avers that Locosta is contractually obligated to ensure that its insurer extend coverage to Legacy as an Additional insured pursuant to the terms of the Master Subcontract Agreement.

44.    Without admitting any of the allegations of Harkins' Third Party Complaint, Legacy presently avers that if the injuries and damages asserted in the Third Party Complaint are proven to be true and Legacy is found liable, in whole or in part, then Locosta will be liable over to Legacy for contractual and/or common law indemnification and contribution.

## **TREBOR ONE**

45.    Trebor One, by and through its agents, performed work at the Project, including but not limited to, participating in the punch work associated with the installation of a cement siding system, including Nichiha siding; application of aluminum trim; drip capping; flashing; installation of concrete pavers; above-grade waterproofing, and otherwise was responsible for the siding punch list following the installation of the cement siding system at the Project as well as repairs to and punch list items in connection with the roofing systems at the building.

46.    Without admitting any factual averments or conceding any legal conclusions contained within the Harkins Amended Third Party Complaint, Legacy incorporates all well-plead averments of Harkins Amended Third Party Complaint by reference, specifically those allegations regarding Legacy's obligations with respect to the "furnishing and installation of the Building's roofing and siding systems." See Exhibit C at Paragraphs 78 – 92.

9

47.    Legacy and Trebor One entered into a Master Subcontract Agreement, which governed their relationship and which they agreed would govern the work performed at the Project. A true and correct copy of the Master Subcontract Agreement is attached hereto as **Exhibit "E."** The complete terms of the Master Subcontract are incorporated by reference as if set forth more fully herein.

48.    Pursuant to the Master Subcontract Agreement, Trebor One was responsible for completing all aspects of its work at the Project, including but not limited to furnishing, installing and/or repairing the Building's roofing and siding systems.

49.    Specifically, Trebor One agreed it:

…shall be solely responsible for all Work, including but not limited to the techniques, sequences, procedures, means, methods and coordination of all Work. Subcontractor shall supervise and direct all Work and give it all the attention necessary for proper supervision and direction. Subcontractor shall perform all Work in a thorough and workmanlike manner according to the highest standards of the appliable trades and to the reasonable satisfaction of Legacy…Subcontractor shall bear all costs involved in the repair or replacement of such work and in the repair or replacement of any other Work necessarily damaged by such repair or replacement….At all times, Subcontractor shall have exclusive and total responsibility for the quality and timeliness of its Work and nothing in this Section shall relieve Subcontractor of any liability or responsibility under law or otherwise.

See Exhibit E at Section 3.2.

50.    Moreover, as part of Trebor One's contractual obligations to Legacy in connection with the Project, Trebor One agreed to defend, indemnify and hold harmless Legacy from claims brought against Legacy arising from or relating to Trebor One's work. See Exhibit E at Section 8.

51.    Additionally, as part of Trebor One's contractual obligations to Legacy in connection with the Project, Trebor One agreed to procure and maintain insurance naming Legacy as an Additional Insured. See Exhibit E at Section 9.

52.     Trebor One has not yet agreed to contractually defend, indemnify or hold harmless Legacy in connection with the claims asserted by Harkins via Harkins' Amended Third Party Complaint.

53.     Trebor One's insurer has not yet agreed to extend coverage to Legacy as an Additional Insured with respect to the claims asserted by Harkins via Harkins' Amended Third Party Complaint.

54.     Any refusal by Trebor One to defend, indemnify and hold harmless Legacy in connection with this matter would constitute a Breach of the Master Subcontractor Agreement.

55.     Any refusal by Trebor One's insurer to extend coverage to Legacy as an Additional Insured would constitute a breach by Trebor One of the Master Subcontractor Agreement.

56.     As a result of any such breach by Trebor One of the terms of the Master Subcontract Agreement, Legacy and its insurers have sustained damages and will continue to sustain damages, including the costs and attorneys' fees expended to defend this lawsuit.

57.     Without admitting any of the allegations of Harkins' Third Party Complaint, Legacy presently avers that if the injuries and damages asserted in the Third Party Complaint are proven to be true, in whole or in part, then said injuries and damages were caused by the acts and/or omissions of Trebor One in the performance of its Work.

58.     Furthermore, without admitting any of the allegations of Harkins' Third Party Complaint, Legacy presently avers that if the injuries and damages asserted in the Third Party Complaint are proven to be true, in whole or in part, then Trebor One will be contractually required to defend, indemnify and hold Legacy harmless against Harkins' claims, pursuant to the terms of the Master Subcontract Agreement.

59.    Without admitting any of the allegations of Harkins' Third Party Complaint, Legacy presently avers that Trebor One is contractually obligated to ensure that its insurer extend coverage to Legacy as an Additional insured pursuant to the terms of the Master Subcontract Agreement.

60.    Without admitting any of the allegations of Harkins' Third Party Complaint, Legacy presently avers that if the injuries and damages asserted in the Third Party Complaint are proven to be true and Legacy is found liable, in whole or in part, then Trebor One will be liable over to Legacy for contractual and/or common law indemnification and contribution.

## **GPHI**

61.    GPHI, by and through its agents, performed work, including but not limited to, the certain punch list repairs to a cement siding system, including Nichiha siding; and otherwise was responsible for certain aspects of the installation and/or repair of the cement siding system at the Project.

62.    Without admitting any factual averments or conceding any legal conclusions contained within the Harkins Amended Third Party Complaint, Legacy incorporates all well-plead averments of Harkins Amended Third Party Complaint by reference, specifically those allegations regarding Legacy's obligations with respect to the "furnishing and installation of the Building's roofing and siding systems." See Exhibit C at Paragraphs 78 – 92.

63.    Legacy and GPHI entered into a Master Subcontract Agreement, which governed their relationship and which they agreed would govern the work performed at the Project. A true and correct copy of the Master Subcontract Agreement is attached hereto as **Exhibit "F."** The complete terms of the Master Subcontract are incorporated by reference as if set forth more fully herein.

64.    Pursuant to the Master Subcontract Agreement, GPHI was responsible for completing all aspects of its work, including the punch list repairs of the siding system at the Project.

65.    Specifically, GPHI agreed it:

…shall be solely responsible for all Work, including but not limited to the techniques, sequences, procedures, means, methods and coordination of all Work. Subcontractor shall supervise and direct all Work and give it all the attention necessary for proper supervision and direction. Subcontractor shall perform all Work in a thorough and workmanlike manner according to the highest standards of the appliable trades and to the reasonable satisfaction of Legacy…Subcontractor shall bear all costs involved in the repair or replacement of such work and in the repair or replacement of any other Work necessarily damaged by such repair or replacement….At all times, Subcontractor shall have exclusive and total responsibility for the quality and timeliness of its Work and nothing in this Section shall relieve Subcontractor of any liability or responsibility under law or otherwise.

See Exhibit F at Section 3.2.

66.    Moreover, as part of GPHI's contractual obligations to Legacy in connection with the Project, GPHI agreed to defend, indemnify and hold harmless Legacy from claims brought against Legacy arising from or relating to GPHI's work. See Exhibit F at Section 8.

67.    Additionally, as part of GPHI's contractual obligations to Legacy in connection with the Project, GPHI agreed to procure and maintain insurance naming Legacy as an Additional Insured. See Exhibit F at Section 9.

68.    GPHI has not yet agreed to contractually defend, indemnify or hold harmless Legacy in connection with the claims asserted by Harkins via Harkins' Amended Third Party Complaint.

69.    GPHI's insurer has not yet agreed to extend coverage to Legacy as an Additional Insured with respect to the claims asserted by Harkins via Harkins' Amended Third Party Complaint.

70.    Any refusal by GPHI to defend, indemnify and hold harmless Legacy in connection with this matter would constitute a Breach of the Master Subcontractor Agreement.

71.    Any refusal by GPHI's insurer to extend coverage to Legacy as an Additional Insured would constitute a breach by GPHI of the Master Subcontractor Agreement.

72.    As a result of any such breach by GPHI of the terms of the Master Subcontract Agreement, Legacy and its insurers have sustained damages and will continue to sustain damages, including the costs and attorneys' fees expended to defend this lawsuit.

73.    Without admitting any of the allegations of Harkins' Third Party Complaint, Legacy presently avers that if the injuries and damages asserted in the Third Party Complaint are proven to be true, in whole or in part, then said injuries and damages were caused by the acts and/or omissions of GPHI in the performance of the work.

74.    Furthermore, without admitting any of the allegations of Harkins' Third Party Complaint, Legacy presently avers that if the injuries and damages asserted in the Third Party Complaint are proven to be true, in whole or in part, then GPHI will be contractually required to defend, indemnify and hold Legacy harmless against Harkins' claims, pursuant to the terms of the Master Subcontract Agreement.

75.    Without admitting any of the allegations of Harkins' Third Party Complaint, Legacy presently avers that GPHI is contractually obligated to ensure that its insurer extend coverage to Legacy as an Additional insured pursuant to the terms of the Master Subcontract Agreement.

76.    Without admitting any of the allegations of Harkins' Third Party Complaint, Legacy presently avers that if the injuries and damages asserted in the Third Party Complaint are

proven to be true and Legacy is found liable, in whole or in part, then GPHI will be liable over to Legacy for contractual and/or common law indemnification and contribution.

## CHIMBO

77.    Chimbo, by and through its agents, performed work, including but not limited to, the certain punch list repairs to a cement siding system, including Nichiha siding; and otherwise was responsible for various aspects of the installation and/or repair of the cement siding system at the Project.

78.    Without admitting any factual averments or conceding any legal conclusions contained within the Harkins Amended Third Party Complaint, Legacy incorporates all well-plead averments of Harkins Amended Third Party Complaint by reference, specifically those allegations regarding Legacy's obligations with respect to the "furnishing and installation of the Building's roofing and siding systems." See Exhibit C at Paragraphs 78 – 92.

79.    Legacy and Chimbo entered into a Master Subcontract Agreement, which governed their relationship and which they agreed would govern the work performed at the Project. A true and correct copy of the Master Subcontract Agreement is attached hereto as **Exhibit "G."** The complete terms of the Master Subcontract are incorporated by reference as if set forth more fully herein.

80.    Pursuant to the Master Subcontract Agreement, Chimbo was responsible for completing all aspects of its work, including the punch list repairs of the siding system at the Project.

81.    Specifically, Chimbo agreed it:

…shall be solely responsible for all Work, including but not limited to the techniques, sequences, procedures, means, methods and coordination of all Work. Subcontractor shall supervise and direct all Work and give it all the attention necessary for proper supervision and direction. Subcontractor shall perform all

Work in a thorough and workmanlike manner according to the highest standards of the appliable trades and to the reasonable satisfaction of Legacy…Subcontractor shall bear all costs involved in the repair or replacement of such work and in the repair or replacement of any other Work necessarily damaged by such repair or replacement….At all times, Subcontractor shall have exclusive and total responsibility for the quality and timeliness of its Work and nothing in this Section shall relieve Subcontractor of any liability or responsibility under law or otherwise.

See Exhibit G at Section 3.2.

82.    Moreover, as part of Chimbo's contractual obligations to Legacy in connection with the Project, Chimbo agreed to defend, indemnify and hold harmless Legacy from claims brought against Legacy arising from or relating to Chimbo's work. See Exhibit G at Section 8.

83.    Additionally, as part of Chimbo's contractual obligations to Legacy in connection with the Project, Chimbo agreed to procure and maintain insurance naming Legacy as an Additional Insured. See Exhibit G at Section 9.

84.    Chimbo has not yet agreed to contractually defend, indemnify or hold harmless Legacy in connection with the claims asserted by Harkins via Harkins' Amended Third Party Complaint.

85.    Chimbo's insurer has not yet agreed to extend coverage to Legacy as an Additional Insured with respect to the claims asserted by Harkins via Harkins' Amended Third Party Complaint.

86.    Any refusal by Chimbo to defend, indemnify and hold harmless Legacy in connection with this matter would constitute a Breach of the Master Subcontractor Agreement.

87.    Any refusal by Chimbo's insurer to extend coverage to Legacy as an Additional Insured would constitute a breach by Chimbo of the Master Subcontractor Agreement.

88.     As a result of any such breach by Chimbo of the terms of the Master Subcontract Agreement, Legacy and its insurers have sustained damages and will continue to sustain damages, including the costs and attorneys' fees expended to defend this lawsuit.

89.     Without admitting any of the allegations of Harkins' Third Party Complaint, Legacy presently avers that if the injuries and damages asserted in the Third Party Complaint are proven to be true, in whole or in part, then said injuries and damages were caused by the acts and/or omissions of Chimbo in the performance of the work.

90.     Furthermore, without admitting any of the allegations of Harkins' Third Party Complaint, Legacy presently avers that if the injuries and damages asserted in the Third Party Complaint are proven to be true, in whole or in part, then Chimbo will be contractually required to defend, indemnify and hold Legacy harmless against Harkins' claims, pursuant to the terms of the Master Subcontract Agreement.

91.     Without admitting any of the allegations of Harkins' Third Party Complaint, Legacy presently avers that Chimbo is contractually obligated to ensure that its insurer extend coverage to Legacy as an Additional insured pursuant to the terms of the Master Subcontract Agreement.

92.     Without admitting any of the allegations of Harkins' Third Party Complaint, Legacy presently avers that if the injuries and damages asserted in the Third Party Complaint are proven to be true and Legacy is found liable, in whole or in part, then Chimbo will be liable over to Legacy for contractual and/or common law indemnification and contribution.

### **L&I**

93.     L&I, by and through its agents, performed work, including but not limited to, installation of non-ballasted TPO roofing systems; ballasted TPO roofing systems; coping; and

otherwise was responsible for various aspects of the installation and/or repair of the roofing systems at the Project.

94.     Without admitting any factual averments or conceding any legal conclusions contained within the Harkins Amended Third Party Complaint, Legacy incorporates all well-plead averments of Harkins Amended Third Party Complaint by reference, specifically those allegations regarding Legacy's obligations with respect to the "furnishing and installation of the Building's roofing and siding systems." See Exhibit C at Paragraphs 78 – 92.

95.     Legacy and L&I entered into a Master Subcontract Agreement, which governed their relationship and which they agreed would govern the work performed at the Project. A true and correct copy of the Master Subcontract Agreement, is attached hereto as **Exhibit "H."** The complete terms of the Master Subcontract are incorporated by reference as if set forth more fully herein.

96.     Pursuant to the Master Subcontract Agreement, L&I was responsible for completing all aspects of its work, including but not limited to installation of non-ballasted TPO roofing systems; ballasted TPO roofing systems; and coping at the Project, as well as additional work associated with the siding systems.

97.     Specifically, L&I agreed it:

…shall be solely responsible for all Work, including but not limited to the techniques, sequences, procedures, means, methods and coordination of all Work. Subcontractor shall supervise and direct all Work and give it all the attention necessary for proper supervision and direction. Subcontractor shall perform all Work in a thorough and workmanlike manner according to the highest standards of the appliable trades and to the reasonable satisfaction of Legacy…Subcontractor shall bear all costs involved in the repair or replacement of such work and in the repair or replacement of any other Work necessarily damaged by such repair or replacement….At all times, Subcontractor shall have exclusive and total responsibility for the quality and timeliness of its Work and nothing in this Section shall relieve Subcontractor of any liability or responsibility under law or otherwise.

See Exhibit H at Section 3.2.

98.    Moreover, as part of L&I's contractual obligations to Legacy in connection with the Project, L&I agreed to defend, indemnify and hold harmless Legacy from claims brought against Legacy arising from or relating to L&I's work at the Building. See Exhibit H at Section 8.

99.    Additionally, as part of L&I's contractual obligations to Legacy in connection with the Project, L&I agreed to procure and maintain insurance naming Legacy as an Additional Insured. See Exhibit H at Section 9.

100.    L&I has not yet agreed to contractually defend, indemnify or hold harmless Legacy in connection with the claims asserted by Harkins via Harkins' Amended Third Party Complaint.

101.    L&I's insurer has not yet agreed to extend coverage to Legacy as an Additional Insured with respect to the claims asserted by Harkins via Harkins' Amended Third Party Complaint.

102.    Any refusal by L&I to defend, indemnify and hold harmless Legacy in connection with this matter would constitute a Breach of the Master Subcontractor Agreement.

103.    Any refusal by L&I's insurer to extend coverage to Legacy as an Additional Insured would constitute a breach by L&I of the Master Subcontractor Agreement.

104.    As a result of any such breach by L&I of the terms of the Master Subcontract Agreement, Legacy and its insurers have sustained damages and will continue to sustain damages, including the costs and attorneys' fees expended to defend this lawsuit.

105.    Without admitting any of the allegations of Harkins' Third Party Complaint, Legacy presently avers that if the injuries and damages asserted in the Third Party Complaint are proven to be true, in whole or in part, then said injuries and damages were caused by the acts and/or omissions of L&I in the performance of the Work.

106.    Furthermore, without admitting any of the allegations of Harkins' Third Party Complaint, Legacy presently avers that if the injuries and damages asserted in the Third Party Complaint are proven to be true, in whole or in part, then L&I will be contractually required to defend, indemnify and hold Legacy harmless against Harkins' claims, pursuant to the terms of the Master Subcontract Agreement.

107.    Without admitting any of the allegations of Harkins' Third Party Complaint, Legacy presently avers that L&I is contractually obligated to ensure that its insurer extend coverage to Legacy as an Additional insured pursuant to the terms of the Master Subcontract Agreement.

108.    Without admitting any of the allegations of Harkins' Third Party Complaint, Legacy presently avers that if the injuries and damages asserted in the Third Party Complaint are proven to be true and Legacy is found liable, in whole or in part, then L&I will be liable over to Legacy for contractual and/or common law indemnification and contribution.

**DML**

109.    DML, by and through its agents, performed work, including but not limited to, installation of non-ballasted TPO roofing systems; ballasted TPO roofing systems; and otherwise was responsible for certain aspects of the installation and/or repair of the roofing systems at the Project.

110.    Without admitting any factual averments or conceding any legal conclusions contained within the Harkins Amended Third Party Complaint, Legacy incorporates all well-plead averments of Harkins Amended Third Party Complaint by reference, specifically those allegations regarding Legacy's obligations with respect to the "furnishing and installation of the Building's roofing and siding systems." See Exhibit C at Paragraphs 78 – 92.

111.    Legacy and DML entered into a Master Subcontract Agreement, which governed their relationship and which they agreed would govern the work performed at the Project. A true and correct copy of the Master Subcontract Agreement is attached hereto as **Exhibit "I."** The complete terms of the Master Subcontract are incorporated by reference as if set forth more fully herein.

112.    Pursuant to the Master Subcontract Agreement, DML was responsible for completing all aspects of its work, including but not limited to installation of non-ballasted TPO roofing systems; ballasted TPO roofing systems; and coping at the Project.

113.    Specifically, DML agreed it:

…shall be solely responsible for all Work, including but not limited to the techniques, sequences, procedures, means, methods and coordination of all Work. Subcontractor shall supervise and direct all Work and give it all the attention necessary for proper supervision and direction. Subcontractor shall perform all Work in a thorough and workmanlike manner according to the highest standards of the appliable trades and to the reasonable satisfaction of Legacy…Subcontractor shall bear all costs involved in the repair or replacement of such work and in the repair or replacement of any other Work necessarily damaged by such repair or replacement….At all times, Subcontractor shall have exclusive and total responsibility for the quality and timeliness of its Work and nothing in this Section shall relieve Subcontractor of any liability or responsibility under law or otherwise.

See Exhibit I at Section 3.2.

114.    Moreover, as part of DML's contractual obligations to Legacy in connection with the Project, DML agreed to defend, indemnify and hold harmless Legacy from claims brought against Legacy arising from or relating to DML's work. See Exhibit I at Section 8.

115.    Additionally, as part of DML's contractual obligations to Legacy in connection with the Project, DML agreed to procure and maintain insurance naming Legacy as an Additional Insured. See Exhibit I at Section 9.

116.    DML has not yet agreed to contractually defend, indemnify or hold harmless Legacy in connection with the claims asserted by Harkins via Harkins' Amended Third Party Complaint.

117.    DML's insurer has not yet agreed to extend coverage to Legacy as an Additional Insured with respect to the claims asserted by Harkins via Harkins' Amended Third Party Complaint.

118.    Any refusal by DML to defend, indemnify and hold harmless Legacy in connection with this matter would constitute a Breach of the Master Subcontractor Agreement.

119.    Any refusal by DML's insurer to extend coverage to Legacy as an Additional Insured would constitute a breach by DML of the Master Subcontractor Agreement.

120.    As a result of any such breach by DML of the terms of the Master Subcontract Agreement, Legacy and its insurers have sustained damages and will continue to sustain damages, including the costs and attorneys' fees expended to defend this lawsuit.

121.    Without admitting any of the allegations of Harkins' Third Party Complaint, Legacy presently avers that if the injuries and damages asserted in the Third Party Complaint are proven to be true, in whole or in part, then said injuries and damages were caused by the acts and/or omissions of DML in the performance of the Work.

122.    Furthermore, without admitting any of the allegations of Harkins' Third Party Complaint, Legacy presently avers that if the injuries and damages asserted in the Third Party Complaint are proven to be true, in whole or in part, then DML will be contractually required to defend, indemnify and hold Legacy harmless against Harkins' claims, pursuant to the terms of the Master Subcontract Agreement.

123.    Without admitting any of the allegations of Harkins' Third Party Complaint, Legacy presently avers that DML is contractually obligated to ensure that its insurer extend coverage to Legacy as an Additional insured pursuant to the terms of the Master Subcontract Agreement.

124.    Without admitting any of the allegations of Harkins' Third Party Complaint, Legacy presently avers that if the injuries and damages asserted in the Third Party Complaint are proven to be true and Legacy is found liable, in whole or in part, then DML will be liable over to Legacy for contractual and/or common law indemnification and contribution.

## **GOLDSTONE**

125.    Goldstone, by and through its agents, performed work, including but not limited to, installation of non-ballasted TPO roofing systems; ballasted TPO roofing systems; and otherwise was responsible for certain aspects of the installation and/or repair of the roofing systems at the Project.

126.    Without admitting any factual averments or conceding any legal conclusions contained within the Harkins Amended Third Party Complaint, Legacy incorporates all well-plead averments of Harkins Amended Third Party Complaint by reference, specifically those allegations regarding Legacy's obligations with respect to the "furnishing and installation of the Building's roofing and siding systems." See Exhibit C at Paragraphs 78 – 92.

127.    Legacy and Goldstone entered into a Master Subcontract Agreement, which governed their relationship and which they agreed would govern the work performed at the Project. A true and correct copy of the Master Subcontract Agreement is attached hereto as **Exhibit "J."** The complete terms of the Master Subcontract are incorporated by reference as if set forth more fully herein.

128.    Pursuant to the Master Subcontract Agreement, Goldstone was responsible for completing all aspects of its work, including but not limited to installation of non-ballasted TPO roofing systems; ballasted TPO roofing systems; and coping at the Project.

129.    Specifically, Goldstone agreed it:

…shall be solely responsible for all Work, including but not limited to the techniques, sequences, procedures, means, methods and coordination of all Work. Subcontractor shall supervise and direct all Work and give it all the attention necessary for proper supervision and direction. Subcontractor shall perform all Work in a thorough and workmanlike manner according to the highest standards of the appliable trades and to the reasonable satisfaction of Legacy…Subcontractor shall bear all costs involved in the repair or replacement of such work and in the repair or replacement of any other Work necessarily damaged by such repair or replacement….At all times, Subcontractor shall have exclusive and total responsibility for the quality and timeliness of its Work and nothing in this Section shall relieve Subcontractor of any liability or responsibility under law or otherwise.

See Exhibit J at Section 3.2.

130.    Moreover, as part of Goldstone's contractual obligations to Legacy in connection with the Project, Goldstone agreed to defend, indemnify and hold harmless Legacy from claims brought against Legacy arising from or relating to Goldstone's work. See Exhibit J at Section 8.

131.    Additionally, as part of Goldstone's contractual obligations to Legacy in connection with the Project, Goldstone agreed to procure and maintain insurance naming Legacy as an Additional Insured. See Exhibit J at Section 9.

132.    Goldstone has not yet agreed to contractually defend, indemnify or hold harmless Legacy in connection with the claims asserted by Harkins via Harkins' Amended Third Party Complaint.

133.    Goldstone's insurer has not yet agreed to extend coverage to Legacy as an Additional Insured with respect to the claims asserted by Harkins via Harkins' Amended Third Party Complaint.

134.    Any refusal by Goldstone to defend, indemnify and hold harmless Legacy in connection with this matter would constitute a Breach of the Master Subcontractor Agreement.

135.    Any refusal by Goldstone's insurer to extend coverage to Legacy as an Additional Insured would constitute a breach by Goldstone of the Master Subcontractor Agreement.

136.    As a result of any such breach by Goldstone of the terms of the Master Subcontract Agreement, Legacy and its insurers have sustained damages and will continue to sustain damages, including the costs and attorneys' fees expended to defend this lawsuit.

137.    Without admitting any of the allegations of Harkins' Third Party Complaint, Legacy presently avers that if the injuries and damages asserted in the Third Party Complaint are proven to be true, in whole or in part, then said injuries and damages were caused by the acts and/or omissions of Goldstone in the performance of the Work.

138.    Furthermore, without admitting any of the allegations of Harkins' Third Party Complaint, Legacy presently avers that if the injuries and damages asserted in the Third Party Complaint are proven to be true, in whole or in part, then Goldstone will be contractually required to defend, indemnify and hold Legacy harmless against Harkins' claims, pursuant to the terms of the Master Subcontract Agreement.

139.    Without admitting any of the allegations of Harkins' Third Party Complaint, Legacy presently avers that Goldstone is contractually obligated to ensure that its insurer extend coverage to Legacy as an Additional insured pursuant to the terms of the Master Subcontract Agreement.

140.    Without admitting any of the allegations of Harkins' Third Party Complaint, Legacy presently avers that if the injuries and damages asserted in the Third Party Complaint are

proven to be true and Legacy is found liable, in whole or in part, then Goldstone will be liable over to Legacy for contractual and/or common law indemnification and contribution.

**UMAR**

141.    Umar, by and through its agents, performed work, including but not limited to, repair to flat roofs and otherwise was responsible for certain aspects of the installation and/or repair of the roofing systems at the Project.

142.    Without admitting any factual averments or conceding any legal conclusions contained within the Harkins Amended Third Party Complaint, Legacy incorporates all well-plead averments of Harkins Amended Third Party Complaint by reference, specifically those allegations regarding Legacy's obligations with respect to the "furnishing and installation of the Building's roofing and siding systems." <u>See</u> Exhibit C at Paragraphs 78 – 92.

143.    Legacy and Umar entered into a Master Subcontract Agreement, which governed their relationship and which they agreed would govern the work performed at the Project. A true and correct copy of the Master Subcontract Agreement is attached hereto as **Exhibit "K."** The complete terms of the Master Subcontract are incorporated by reference as if set forth more fully herein.

144.    Pursuant to the Master Subcontract Agreement, Umar was responsible for completing all aspects of its work, including but not limited to repair of flat roofs at the Project.

145.    Specifically, Umar agreed it:

…shall be solely responsible for all Work, including but not limited to the techniques, sequences, procedures, means, methods and coordination of all Work. Subcontractor shall supervise and direct all Work and give it all the attention necessary for proper supervision and direction. Subcontractor shall perform all Work in a thorough and workmanlike manner according to the highest standards of the appliable trades and to the reasonable satisfaction of Legacy…Subcontractor shall bear all costs involved in the repair or replacement of such work and in the repair or replacement of any other Work necessarily damaged by such repair or

replacement....At all times, Subcontractor shall have exclusive and total responsibility for the quality and timeliness of its Work and nothing in this Section shall relieve Subcontractor of any liability or responsibility under law or otherwise.

See Exhibit K at Section 3.2.

146.    Moreover, as part of Umar's contractual obligations to Legacy in connection with the Project, Umar agreed to defend, indemnify and hold harmless Legacy from claims brought against Legacy arising from or relating to Umar's work. See Exhibit K at Section 8.

147.    Additionally, as part of Umar's contractual obligations to Legacy in connection with the Project, Umar agreed to procure and maintain insurance naming Legacy as an Additional Insured. See Exhibit K at Section 9.

148.    Umar has not yet agreed to contractually defend, indemnify or hold harmless Legacy in connection with the claims asserted by Harkins via Harkins' Amended Third Party Complaint.

149.    Umar's insurer has not yet agreed to extend coverage to Legacy as an Additional Insured with respect to the claims asserted by Harkins via Harkins' Amended Third Party Complaint.

150.    Any refusal by Umar to defend, indemnify and hold harmless Legacy in connection with this matter would constitute a Breach of the Master Subcontractor Agreement.

151.    Any refusal by Umar's insurer to extend coverage to Legacy as an Additional Insured would constitute a breach by Umar of the Master Subcontractor Agreement.

152.    As a result of any such breach by Umar of the terms of the Master Subcontract Agreement, Legacy and its insurers have sustained damages and will continue to sustain damages, including the costs and attorneys' fees expended to defend this lawsuit.

153.    Without admitting any of the allegations of Harkins' Third Party Complaint, Legacy presently avers that if the injuries and damages asserted in the Third Party Complaint are proven to be true, in whole or in part, then said injuries and damages were caused by the acts and/or omissions of Umar in the performance of the Work.

154.    Furthermore, without admitting any of the allegations of Harkins' Third Party Complaint, Legacy presently avers that if the injuries and damages asserted in the Third Party Complaint are proven to be true, in whole or in part, then Umar will be contractually required to defend, indemnify and hold Legacy harmless against Harkins' claims, pursuant to the terms of the Master Subcontract Agreement.

155.    Without admitting any of the allegations of Harkins' Third Party Complaint, Legacy presently avers that Umar is contractually obligated to ensure that its insurer extend coverage to Legacy as an Additional insured pursuant to the terms of the Master Subcontract Agreement.

156.    Without admitting any of the allegations of Harkins' Third Party Complaint, Legacy presently avers that if the injuries and damages asserted in the Third Party Complaint are proven to be true and Legacy is found liable, in whole or in part, then Umar will be liable over to Legacy for contractual and/or common law indemnification and contribution.

## **BENDER**

157.    Bender, by and through its agents, performed work, including but not limited to, above-grade waterproofing of the Building roofing systems; and otherwise was responsible for certain aspects of the installation and/or repair of the roofing systems at the Project.

158.    Without admitting any factual averments or conceding any legal conclusions contained within the Harkins Amended Third Party Complaint, Legacy incorporates all well-plead

averments of Harkins Amended Third Party Complaint by reference, specifically those allegations regarding Legacy's obligations with respect to the "furnishing and installation of the Building's roofing and siding systems." See Exhibit C at Paragraphs 78 – 92.

159.    Legacy and Bender entered into a Master Subcontract Agreement, which governed their relationship and which they agreed would govern the work performed at the Project. A true and correct copy of the Master Subcontract Agreement is attached hereto as **Exhibit "L."** The complete terms of the Master Subcontract are incorporated by reference as if set forth more fully herein.

160.    Pursuant to the Master Subcontract Agreement, Bender was responsible for completing all aspects of its work, including but not limited to installation of non-ballasted TPO roofing systems; ballasted TPO roofing systems; and coping at the Project.

161.    Specifically, Bender agreed it:

…shall be solely responsible for all Work, including but not limited to the techniques, sequences, procedures, means, methods and coordination of all Work. Subcontractor shall supervise and direct all Work and give it all the attention necessary for proper supervision and direction. Subcontractor shall perform all Work in a thorough and workmanlike manner according to the highest standards of the appliable trades and to the reasonable satisfaction of Legacy…Subcontractor shall bear all costs involved in the repair or replacement of such work and in the repair or replacement of any other Work necessarily damaged by such repair or replacement….At all times, Subcontractor shall have exclusive and total responsibility for the quality and timeliness of its Work and nothing in this Section shall relieve Subcontractor of any liability or responsibility under law or otherwise.

See Exhibit L at Section 3.2.

162.    Moreover, as part of Bender's contractual obligations to Legacy in connection with the Project, Bender agreed to defend, indemnify and hold harmless Legacy from claims brought against Legacy arising from or relating to Bender's work. See Exhibit L at Section 8.

163.    Additionally, as part of Bender's contractual obligations to Legacy in connection with the Project, Bender agreed to procure and maintain insurance naming Legacy as an Additional Insured. See Exhibit L at Section 9.

164.    Bender has not yet agreed to contractually defend, indemnify or hold harmless Legacy in connection with the claims asserted by Harkins via Harkins' Amended Third Party Complaint.

165.    Bender's insurer has not yet agreed to extend coverage to Legacy as an Additional Insured with respect to the claims asserted by Harkins via Harkins' Amended Third Party Complaint.

166.    Any refusal by Bender to defend, indemnify and hold harmless Legacy in connection with this matter would constitute a Breach of the Master Subcontractor Agreement.

167.    Any refusal by Bender's insurer to extend coverage to Legacy as an Additional Insured would constitute a breach by Bender of the Master Subcontractor Agreement.

168.    As a result of any such breach by Bender of the terms of the Master Subcontract Agreement, Legacy and its insurers have sustained damages and will continue to sustain damages, including the costs and attorneys' fees expended to defend this lawsuit.

169.    Without admitting any of the allegations of Harkins' Third Party Complaint, Legacy presently avers that if the injuries and damages asserted in the Third Party Complaint are proven to be true, in whole or in part, then said injuries and damages were caused by the acts and/or omissions of Bender in the performance of the Work.

170.    Furthermore, without admitting any of the allegations of Harkins' Third Party Complaint, Legacy presently avers that if the injuries and damages asserted in the Third Party Complaint are proven to be true, in whole or in part, then Bender will be contractually required to

defend, indemnify and hold Legacy harmless against Harkins' claims, pursuant to the terms of the Master Subcontract Agreement.

171.    Without admitting any of the allegations of Harkins' Third Party Complaint, Legacy presently avers that Bender is contractually obligated to ensure that its insurer extend coverage to Legacy as an Additional insured pursuant to the terms of the Master Subcontract Agreement.

172.    Without admitting any of the allegations of Harkins' Third Party Complaint, Legacy presently avers that if the injuries and damages asserted in the Third Party Complaint are proven to be true and Legacy is found liable, in whole or in part, then Bender will be liable over to Legacy for contractual and/or common law indemnification and contribution.

## PERFECT EXTERIORS

173.    Perfect Exteriors, by and through its agents, performed work, including but not limited to installation and repair of scupper boxes and conductor boxes; readjusting coping; and otherwise was responsible for various aspects of the installation and/or repair of the roofing and siding systems at the Project.

174.    Without admitting any factual averments or conceding any legal conclusions contained within the Harkins Amended Third Party Complaint, Legacy incorporates all well-plead averments of Harkins Amended Third Party Complaint by reference, specifically those allegations regarding Legacy's obligations with respect to the "furnishing and installation of the Building's roofing and siding systems." See Exhibit C at Paragraphs 78 – 92.

175.    Legacy and Perfect Exteriors entered into a Master Subcontract Agreement, which governed their relationship and which they agreed would govern the work performed at the Project. A true and correct copy of the Master Subcontract Agreement is attached hereto as **Exhibit "M."**

The complete terms of the Master Subcontract are incorporated by reference as if set forth more fully herein.

176.    Pursuant to the Master Subcontract Agreement, Perfect Exteriors was responsible for completing all aspects of its work, including but not limited to installation and repair of scupper boxes and conductor boxes; readjusting coping; and various aspects of the installation and/or repair of the roofing and siding systems at the Project.

177.    Specifically, Perfect Exteriors agreed it:

…shall be solely responsible for all Work, including but not limited to the techniques, sequences, procedures, means, methods and coordination of all Work. Subcontractor shall supervise and direct all Work and give it all the attention necessary for proper supervision and direction. Subcontractor shall perform all Work in a thorough and workmanlike manner according to the highest standards of the appliable trades and to the reasonable satisfaction of Legacy…Subcontractor shall bear all costs involved in the repair or replacement of such work and in the repair or replacement of any other Work necessarily damaged by such repair or replacement….At all times, Subcontractor shall have exclusive and total responsibility for the quality and timeliness of its Work and nothing in this Section shall relieve Subcontractor of any liability or responsibility under law or otherwise.

See Exhibit M at Section 3.2.

178.    Moreover, as part of Perfect Exteriors' contractual obligations to Legacy in connection with the Project, Perfect Exteriors agreed to defend, indemnify and hold harmless Legacy from claims brought against Legacy arising from or relating to Perfect Exteriors' work. See Exhibit M at Section 8.

179.    Additionally, as part of Perfect Exteriors' contractual obligations to Legacy in connection with the Project, Perfect Exteriors agreed to procure and maintain insurance naming Legacy as an Additional Insured. See Exhibit M at Section 9.

180.    Perfect Exteriors has not yet agreed to contractually defend, indemnify or hold harmless Legacy in connection with the claims asserted by Harkins via Harkins' Amended Third Party Complaint.

181.    Perfect Exteriors' insurer has not yet agreed to extend coverage to Legacy as an Additional Insured with respect to the claims asserted by Harkins via Harkins' Amended Third Party Complaint.

182.    Any refusal by Perfect Exteriors to defend, indemnify and hold harmless Legacy in connection with this matter would constitute a Breach of the Master Subcontractor Agreement.

183.    Any refusal by Perfect Exteriors' insurer to extend coverage to Legacy as an Additional Insured would constitute a breach by Perfect Exteriors of the Master Subcontractor Agreement.

184.    As a result of any such breach by Perfect Exteriors of the terms of the Master Subcontract Agreement, Legacy and its insurers have sustained damages and will continue to sustain damages, including the costs and attorneys' fees expended to defend this lawsuit.

185.    Without admitting any of the allegations of Harkins' Third Party Complaint, Legacy presently avers that if the injuries and damages asserted in the Third Party Complaint are proven to be true, in whole or in part, then said injuries and damages were caused by the acts and/or omissions of Perfect Exteriors in the performance of the Work.

186.    Furthermore, without admitting any of the allegations of Harkins' Third Party Complaint, Legacy presently avers that if the injuries and damages asserted in the Third Party Complaint are proven to be true, in whole or in part, then Perfect Exteriors will be contractually required to defend, indemnify and hold Legacy harmless against Harkins' claims, pursuant to the terms of the Master Subcontract Agreement.

187.    Without admitting any of the allegations of Harkins' Third Party Complaint, Legacy presently avers that Perfect Exteriors is contractually obligated to ensure that its insurer extend coverage to Legacy as an Additional insured pursuant to the terms of the Master Subcontract Agreement.

188.    Without admitting any of the allegations of Harkins' Third Party Complaint, Legacy presently avers that if the injuries and damages asserted in the Third Party Complaint are proven to be true and Legacy is found liable, in whole or in part, then Perfect Exteriors will be liable over to Legacy for contractual and/or common law indemnification and contribution.

## FIVE STAR

189.    Five Star, by and through its agents, performed work, including but not limited to, installation and repair of downspouts at the Project; and otherwise was responsible for various aspects of the installation and/or repair of the roofing and siding systems at the Project.

190.    Without admitting any factual averments or conceding any legal conclusions contained within the Harkins Amended Third Party Complaint, Legacy incorporates all well-plead averments of Harkins Amended Third Party Complaint by reference, specifically those allegations regarding Legacy's obligations with respect to the "furnishing and installation of the Building's roofing and siding systems." See Exhibit C at Paragraphs 78 – 92.

191.    Legacy and Five Star entered into a Master Subcontract Agreement, which governed their relationship and which they agreed would govern the work performed at the Project. A true and correct copy of the Master Subcontract Agreement is attached hereto as **Exhibit "N."** The complete terms of the Master Subcontract are incorporated by reference as if set forth more fully herein.

192.    Pursuant to the Master Subcontract Agreement, Five Star was responsible for completing all aspects of its work, including but not limited to installation and repair of downspouts; and various aspects of the installation and/or repair of the roofing and siding systems at the Project.

193.    Specifically, Five Star agreed it:

…shall be solely responsible for all Work, including but not limited to the techniques, sequences, procedures, means, methods and coordination of all Work. Subcontractor shall supervise and direct all Work and give it all the attention necessary for proper supervision and direction. Subcontractor shall perform all Work in a thorough and workmanlike manner according to the highest standards of the appliable trades and to the reasonable satisfaction of Legacy…Subcontractor shall bear all costs involved in the repair or replacement of such work and in the repair or replacement of any other Work necessarily damaged by such repair or replacement….At all times, Subcontractor shall have exclusive and total responsibility for the quality and timeliness of its Work and nothing in this Section shall relieve Subcontractor of any liability or responsibility under law or otherwise.

See Exhibit N at Section 3.2.

194.    Moreover, as part of Five Star's contractual obligations to Legacy in connection with the Project, Five Star agreed to defend, indemnify and hold harmless Legacy from claims brought against Legacy arising from or relating to Five Star's work. See Exhibit N at Section 8.

195.    Additionally, as part of Five Star's contractual obligations to Legacy in connection with the Project, Five Star agreed to procure and maintain insurance naming Legacy as an Additional Insured. See Exhibit N at Section 9.

196.    Five Star has not yet agreed to contractually defend, indemnify or hold harmless Legacy in connection with the claims asserted by Harkins via Harkins' Amended Third Party Complaint.

197.    Five Star's insurer has not yet agreed to extend coverage to Legacy as an Additional Insured with respect to the claims asserted by Harkins via Harkins' Amended Third Party Complaint.

198.    Any refusal by Five Star to defend, indemnify and hold harmless Legacy in connection with this matter would constitute a Breach of the Master Subcontractor Agreement.

199.    Any refusal by Five Star's insurer to extend coverage to Legacy as an Additional Insured would constitute a breach by Five Star of the Master Subcontractor Agreement.

200.    As a result of any such breach by Five Star of the terms of the Master Subcontract Agreement, Legacy and its insurers have sustained damages and will continue to sustain damages, including the costs and attorneys' fees expended to defend this lawsuit.

201.    Without admitting any of the allegations of Harkins' Third Party Complaint, Legacy presently avers that if the injuries and damages asserted in the Third Party Complaint are proven to be true, in whole or in part, then said injuries and damages were caused by the acts and/or omissions of Five Star in the performance of the Work.

202.    Furthermore, without admitting any of the allegations of Harkins' Third Party Complaint, Legacy presently avers that if the injuries and damages asserted in the Third Party Complaint are proven to be true, in whole or in part, then Five Star will be contractually required to defend, indemnify and hold Legacy harmless against Harkins' claims, pursuant to the terms of the Master Subcontract Agreement.

203.    Without admitting any of the allegations of Harkins' Third Party Complaint, Legacy presently avers that Five Star is contractually obligated to ensure that its insurer extend coverage to Legacy as an Additional insured pursuant to the terms of the Master Subcontract Agreement.

204.    Without admitting any of the allegations of Harkins' Third Party Complaint, Legacy presently avers that if the injuries and damages asserted in the Third Party Complaint are proven to be true and Legacy is found liable, in whole or in part, then Five Star will be liable over to Legacy for contractual and/or common law indemnification and contribution.

## **GREEN**

205.    Green, by and through its agents, performed work, including but not limited to, service work and roof repairs at the Project; and otherwise was responsible for various aspects of the installation and/or repair of the roofing and siding systems at the Project.

206.    Without admitting any factual averments or conceding any legal conclusions contained within the Harkins Amended Third Party Complaint, Legacy incorporates all well-plead averments of Harkins Amended Third Party Complaint by reference, specifically those allegations regarding Legacy's obligations with respect to the "furnishing and installation of the Building's roofing and siding systems." See Exhibit C at Paragraphs 78 – 92.

207.    Legacy and Green entered into a Master Subcontract Agreement, which governed their relationship and which they agreed would govern the work performed at the Project. A true and correct copy of the Master Subcontract Agreement is attached hereto as **Exhibit "O."** The complete terms of the Master Subcontract are incorporated by reference as if set forth more fully herein.

208.    Pursuant to the Master Subcontract Agreement, Green was responsible for completing all aspects of its work, service work and roof repairs; and various aspects of the installation and/or repair of the roofing and siding systems at the Project.

209.    Specifically, Green agreed it:

…shall be solely responsible for all Work, including but not limited to the techniques, sequences, procedures, means, methods and coordination of all Work.

> Subcontractor shall supervise and direct all Work and give it all the attention necessary for proper supervision and direction. Subcontractor shall perform all Work in a thorough and workmanlike manner according to the highest standards of the appliable trades and to the reasonable satisfaction of Legacy…Subcontractor shall bear all costs involved in the repair or replacement of such work and in the repair or replacement of any other Work necessarily damaged by such repair or replacement….At all times, Subcontractor shall have exclusive and total responsibility for the quality and timeliness of its Work and nothing in this Section shall relieve Subcontractor of any liability or responsibility under law or otherwise.

See Exhibit O at Section 3.2.

210.    Moreover, as part of Green's contractual obligations to Legacy in connection with the Project, Green agreed to defend, indemnify and hold harmless Legacy from claims brought against Legacy arising from or relating to Green's work. See Exhibit O at Section 8.

211.    Additionally, as part of Green's contractual obligations to Legacy in connection with the Project, Green agreed to procure and maintain insurance naming Legacy as an Additional Insured. See Exhibit O at Section 9.

212.    Green has not yet agreed to contractually defend, indemnify or hold harmless Legacy in connection with the claims asserted by Harkins via Harkins' Amended Third Party Complaint.

213.    Green's insurer has not yet agreed to extend coverage to Legacy as an Additional Insured with respect to the claims asserted by Harkins via Harkins' Amended Third Party Complaint.

214.    Any refusal by Green to defend, indemnify and hold harmless Legacy in connection with this matter would constitute a Breach of the Master Subcontractor Agreement.

215.    Any refusal by Green's insurer to extend coverage to Legacy as an Additional Insured would constitute a breach by Green of the Master Subcontractor Agreement.

216.    As a result of any such breach by Green of the terms of the Master Subcontract Agreement, Legacy and its insurers have sustained damages and will continue to sustain damages, including the costs and attorneys' fees expended to defend this lawsuit.

217.    Without admitting any of the allegations of Harkins' Third Party Complaint, Legacy presently avers that if the injuries and damages asserted in the Third Party Complaint are proven to be true, in whole or in part, then said injuries and damages were caused by the acts and/or omissions of Green in the performance of the Work.

218.    Furthermore, without admitting any of the allegations of Harkins' Third Party Complaint, Legacy presently avers that if the injuries and damages asserted in the Third Party Complaint are proven to be true, in whole or in part, then Green will be contractually required to defend, indemnify and hold Legacy harmless against Harkins' claims, pursuant to the terms of the Master Subcontract Agreement.

219.    Without admitting any of the allegations of Harkins' Third Party Complaint, Legacy presently avers that Green is contractually obligated to ensure that its insurer extend coverage to Legacy as an Additional insured pursuant to the terms of the Master Subcontract Agreement.

220.    Without admitting any of the allegations of Harkins' Third Party Complaint, Legacy presently avers that if the injuries and damages asserted in the Third Party Complaint are proven to be true and Legacy is found liable, in whole or in part, then Green will be liable over to Legacy for contractual and/or common law indemnification and contribution.

## ALTERNTATIVE GUTTERS

221.    Alternative Gutters, by and through its agents, performed work, including but not limited to, installation and/or repair of gutters and downspouts at the Project; and otherwise was

responsible for various aspects of the installation and/or repair of the roofing and siding systems at the Project.

222.    Without admitting any factual averments or conceding any legal conclusions contained within the Harkins Amended Third Party Complaint, Legacy incorporates all well-plead averments of Harkins Amended Third Party Complaint by reference, specifically those allegations regarding Legacy's obligations with respect to the "furnishing and installation of the Building's roofing and siding systems." See Exhibit C at Paragraphs 78 – 92.

223.    Legacy and Alternative Gutters entered into a Master Subcontract Agreement, which governed their relationship and which they agreed would govern the work performed at the Project. A true and correct copy of the Master Subcontract Agreement is attached hereto as **Exhibit "P."** The complete terms of the Master Subcontract are incorporated by reference as if set forth more fully herein.

224.    Pursuant to the Master Subcontract Agreement, Alternative Gutters was responsible for completing all aspects of its work, including but not limited to installation and/or repair of gutters and downspouts at the Project; and various aspects of the installation and/or repair of the roofing and siding systems at the Project.

225.    Specifically, Alternative Gutters agreed it:

…shall be solely responsible for all Work, including but not limited to the techniques, sequences, procedures, means, methods and coordination of all Work. Subcontractor shall supervise and direct all Work and give it all the attention necessary for proper supervision and direction. Subcontractor shall perform all Work in a thorough and workmanlike manner according to the highest standards of the appliable trades and to the reasonable satisfaction of Legacy…Subcontractor shall bear all costs involved in the repair or replacement of such work and in the repair or replacement of any other Work necessarily damaged by such repair or replacement….At all times, Subcontractor shall have exclusive and total responsibility for the quality and timeliness of its Work and nothing in this Section shall relieve Subcontractor of any liability or responsibility under law or otherwise.

See Exhibit P at Section 3.2.

226.    Moreover, as part of Alternative Gutters' contractual obligations to Legacy in connection with the Project, Alternative Gutters agreed to defend, indemnify and hold harmless Legacy from claims brought against Legacy arising from or relating to Alternative Gutters' work. See Exhibit P at Section 8.

227.    Additionally, as part of Alternative Gutters' contractual obligations to Legacy in connection with the Project, Alternative Gutters agreed to procure and maintain insurance naming Legacy as an Additional Insured. See Exhibit P at Section 9.

228.    Alternative Gutters has not yet agreed to contractually defend, indemnify or hold harmless Legacy in connection with the claims asserted by Harkins via Harkins' Amended Third Party Complaint.

229.    Alternative Gutters' insurer has not yet agreed to extend coverage to Legacy as an Additional Insured with respect to the claims asserted by Harkins via Harkins' Amended Third Party Complaint.

230.    Any refusal by Alternative Gutters to defend, indemnify and hold harmless Legacy in connection with this matter would constitute a Breach of the Master Subcontractor Agreement.

231.    Any refusal by Alternative Gutters' insurer to extend coverage to Legacy as an Additional Insured would constitute a breach by Alternative Gutters of the Master Subcontractor Agreement.

232.    As a result of any such breach by Alternative Gutters of the terms of the Master Subcontract Agreement, Legacy and its insurers have sustained damages and will continue to sustain damages, including the costs and attorneys' fees expended to defend this lawsuit.

233.    Without admitting any of the allegations of Harkins' Third Party Complaint, Legacy presently avers that if the injuries and damages asserted in the Third Party Complaint are proven to be true, in whole or in part, then said injuries and damages were caused by the acts and/or omissions of Alternative Gutters in the performance of the Work.

234.    Furthermore, without admitting any of the allegations of Harkins' Third Party Complaint, Legacy presently avers that if the injuries and damages asserted in the Third Party Complaint are proven to be true, in whole or in part, then Alternative Gutters will be contractually required to defend, indemnify and hold Legacy harmless against Harkins' claims, pursuant to the terms of the Master Subcontract Agreement.

235.    Without admitting any of the allegations of Harkins' Third Party Complaint, Legacy presently avers that Alternative Gutters is contractually obligated to ensure that its insurer extend coverage to Legacy as an Additional insured pursuant to the terms of the Master Subcontract Agreement.

236.    Without admitting any of the allegations of Harkins' Third Party Complaint, Legacy presently avers that if the injuries and damages asserted in the Third Party Complaint are proven to be true and Legacy is found liable, in whole or in part, then Alternative Gutters will be liable over to Legacy for contractual and/or common law indemnification and contribution.

## **TPC**

237.    TPC, by and through its agents, performed work, including but not limited to, repair of scupper boxes which were later installed at the Project.

238.    Without admitting any factual averments or conceding any legal conclusions contained within the Harkins Amended Third Party Complaint, Legacy incorporates all well-plead averments of Harkins Amended Third Party Complaint by reference, specifically those allegations

regarding Legacy's obligations with respect to the "furnishing and installation of the Building's roofing and siding systems." See Exhibit C at Paragraphs 78 – 92.

239.    Legacy and TPC entered into a Master Subcontract Agreement, which governed their relationship and which they agreed would govern the work performed in connection with the Project. A true and correct copy of the Master Subcontract Agreement is attached hereto as **Exhibit "Q."** The complete terms of the Master Subcontract are incorporated by reference as if set forth more fully herein.

240.    Pursuant to the Master Subcontract Agreement, TPC was responsible for completing all aspects of its work, including but not limited to repair of scupper boxes later installed at the Project.

241.    Specifically, TPC agreed it:

…shall be solely responsible for all Work, including but not limited to the techniques, sequences, procedures, means, methods and coordination of all Work. Subcontractor shall supervise and direct all Work and give it all the attention necessary for proper supervision and direction. Subcontractor shall perform all Work in a thorough and workmanlike manner according to the highest standards of the appliable trades and to the reasonable satisfaction of Legacy…Subcontractor shall bear all costs involved in the repair or replacement of such work and in the repair or replacement of any other Work necessarily damaged by such repair or replacement….At all times, Subcontractor shall have exclusive and total responsibility for the quality and timeliness of its Work and nothing in this Section shall relieve Subcontractor of any liability or responsibility under law or otherwise.

See Exhibit Q at Section 3.2.

242.    Moreover, as part of TPC's contractual obligations to Legacy in connection with the Project, TPC agreed to defend, indemnify and hold harmless Legacy from claims brought against Legacy arising from or relating to TPC's work. See Exhibit Q at Section 8.

243.    Additionally, as part of TPC's contractual obligations to Legacy in connection with the Project, TPC agreed to procure and maintain insurance naming Legacy as an Additional Insured. See Exhibit Q at Section 9.

244.    TPC has not yet agreed to contractually defend, indemnify or hold harmless Legacy in connection with the claims asserted by Harkins via Harkins' Amended Third Party Complaint.

245.    TPC's insurer has not yet agreed to extend coverage to Legacy as an Additional Insured with respect to the claims asserted by Harkins via Harkins' Amended Third Party Complaint.

246.    Any refusal by TPC to defend, indemnify and hold harmless Legacy in connection with this matter would constitute a Breach of the Master Subcontractor Agreement.

247.    Any refusal by TPC's insurer to extend coverage to Legacy as an Additional Insured would constitute a breach by TPC of the Master Subcontractor Agreement.

248.    As a result of any such breach by TPC of the terms of the Master Subcontract Agreement, Legacy and its insurers have sustained damages and will continue to sustain damages, including the costs and attorneys' fees expended to defend this lawsuit.

249.    Without admitting any of the allegations of Harkins' Third Party Complaint, Legacy presently avers that if the injuries and damages asserted in the Third Party Complaint are proven to be true, in whole or in part, then said injuries and damages were caused by the acts and/or omissions of TPC in the performance of the Work.

250.    Furthermore, without admitting any of the allegations of Harkins' Third Party Complaint, Legacy presently avers that if the injuries and damages asserted in the Third Party Complaint are proven to be true, in whole or in part, then TPC will be contractually required to

defend, indemnify and hold Legacy harmless against Harkins' claims, pursuant to the terms of the Master Subcontract Agreement.

251.    Without admitting any of the allegations of Harkins' Third Party Complaint, Legacy presently avers that TPC is contractually obligated to ensure that its insurer extend coverage to Legacy as an Additional insured pursuant to the terms of the Master Subcontract Agreement.

252.    Without admitting any of the allegations of Harkins' Third Party Complaint, Legacy presently avers that if the injuries and damages asserted in the Third Party Complaint are proven to be true and Legacy is found liable, in whole or in part, then TPC will be liable over to Legacy for contractual and/or common law indemnification and contribution.

## STORM MASTER

253.    Storm Master, by and through its agents, performed work, including but not limited to fabrication, installation and/or repair of supper boxes and downspouts at the Project; and otherwise was responsible for various aspects of the installation and/or repair of the roofing and siding systems at the Project.

254.    Without admitting any factual averments or conceding any legal conclusions contained within the Harkins Amended Third Party Complaint, Legacy incorporates all well-plead averments of Harkins Amended Third Party Complaint by reference, specifically those allegations regarding Legacy's obligations with respect to the "furnishing and installation of the Building's roofing and siding systems." See Exhibit C at Paragraphs 78 – 92.

255.    Storm Master was responsible for completing all aspects of its work, including but not limited to installation and/or repair of gutters and downspouts at the Project; and various aspects of the installation and/or repair of the roofing and siding systems at the Project, in in a

thorough and workmanlike manner according to the highest standards of the appliable trades and to the reasonable satisfaction of Legacy.

256.    Storm Master retained exclusive and total responsibility for the quality and timeliness of its Work at the Project, including but not limited to installation and/or repair of supper boxes and downspouts at the Project

257.    Additionally, as part of Storm Master's contractual obligations to Legacy in connection with the Project, Storm Master agreed to procure and maintain insurance naming Legacy as an Additional Insured.

258.    Storm Master's insurer has not yet agreed to extend coverage to Legacy as an Additional Insured with respect to the claims asserted by Harkins via Harkins' Amended Third Party Complaint.

259.    Any refusal by Storm Master's insurer to extend coverage to Legacy as an Additional Insured would constitute a breach by Storm Master of the agreed-upon terms for Storm Master's work at the Project, whether oral or written.

260.    As a result of any such breach by Storm Master, Legacy and its insurers have sustained damages and will continue to sustain damages, including the costs and attorneys' fees expended to defend this lawsuit.

261.    Without admitting any of the allegations of Harkins' Third Party Complaint, Legacy presently avers that if the injuries and damages asserted in the Third Party Complaint are proven to be true, in whole or in part, then said injuries and damages were caused by the acts and/or omissions of Storm Master in the performance of it Work at the project as outlined herein.

262.    Furthermore, without admitting any of the allegations of Harkins' Third Party Complaint, Legacy presently avers that if the injuries and damages asserted in the Third Party

Complaint are proven to be true, in whole or in part, then Storm Master is required to defend, indemnify and hold Legacy harmless against Harkins' claims.

263.    Without admitting any of the allegations of Harkins' Third Party Complaint, Legacy presently avers that Storm Master is obligated to ensure that its insurer extend coverage to Legacy as an Additional insured.

264.    Without admitting any of the allegations of Harkins' Third Party Complaint, Legacy presently avers that if the injuries and damages asserted in the Third Party Complaint are proven to be true and Legacy is found liable, in whole or in part, then Storm Master will be liable over to Legacy for contractual and/or common law indemnification and contribution.

## EMKE

265.    EMKE, by and through its agents, performed work, including but not limited to, roof repair at the Project; and otherwise was responsible for various aspects of the installation and/or repair of the roofing and siding systems at the Project.

266.    Without admitting any factual averments or conceding any legal conclusions contained within the Harkins Amended Third Party Complaint, Legacy incorporates all well-plead averments of Harkins Amended Third Party Complaint by reference, specifically those allegations regarding Legacy's obligations with respect to the "furnishing and installation of the Building's roofing and siding systems." See Exhibit C at Paragraphs 78 – 92.

267.    Legacy and EMKE entered into a Master Subcontract Agreement, which governed their relationship and which they agreed would govern the work performed at the Project. A true and correct copy of the Master Subcontract Agreement is attached hereto as **Exhibit "R."** The complete terms of the Master Subcontract are incorporated by reference as if set forth more fully herein.

268.    Pursuant to the Master Subcontract Agreement, EMKE was responsible for completing all aspects of its work, including but not limited to installation and/or repair roofs at the Project; and various aspects of the installation and/or repair of the roofing and siding systems at the Project.

269.    Specifically, EMKE agreed it:

…shall be solely responsible for all Work, including but not limited to the techniques, sequences, procedures, means, methods and coordination of all Work. Subcontractor shall supervise and direct all Work and give it all the attention necessary for proper supervision and direction. Subcontractor shall perform all Work in a thorough and workmanlike manner according to the highest standards of the appliable trades and to the reasonable satisfaction of Legacy…Subcontractor shall bear all costs involved in the repair or replacement of such work and in the repair or replacement of any other Work necessarily damaged by such repair or replacement….At all times, Subcontractor shall have exclusive and total responsibility for the quality and timeliness of its Work and nothing in this Section shall relieve Subcontractor of any liability or responsibility under law or otherwise.

See Exhibit R at Section 3.2.

270.    Moreover, as part of EMKE's contractual obligations to Legacy in connection with the Project, EMKE agreed to defend, indemnify and hold harmless Legacy from claims brought against Legacy arising from or relating to EMKE's work. See Exhibit R at Section 8.

271.    Additionally, as part of EMKE's contractual obligations to Legacy in connection with the Project, EMKE agreed to procure and maintain insurance naming Legacy as an Additional Insured. See Exhibit R at Section 9.

272.    EMKE has not yet agreed to contractually defend, indemnify or hold harmless Legacy in connection with the claims asserted by Harkins via Harkins' Amended Third Party Complaint.

273.    EMKE's insurer has not yet agreed to extend coverage to Legacy as an Additional Insured with respect to the claims asserted by Harkins via Harkins' Amended Third Party Complaint.

274.    Any refusal by EMKE to defend, indemnify and hold harmless Legacy in connection with this matter would constitute a Breach of the Master Subcontractor Agreement.

275.    Any refusal by EMKE's insurer to extend coverage to Legacy as an Additional Insured would constitute a breach by EMKE of the Master Subcontractor Agreement.

276.    As a result of any such breach by EMKE of the terms of the Master Subcontract Agreement, Legacy and its insurers have sustained damages and will continue to sustain damages, including the costs and attorneys' fees expended to defend this lawsuit.

277.    Without admitting any of the allegations of Harkins' Third Party Complaint, Legacy presently avers that if the injuries and damages asserted in the Third Party Complaint are proven to be true, in whole or in part, then said injuries and damages were caused by the acts and/or omissions of EMKE in the performance of the Work.

278.    Furthermore, without admitting any of the allegations of Harkins' Third Party Complaint, Legacy presently avers that if the injuries and damages asserted in the Third Party Complaint are proven to be true, in whole or in part, then EMKE will be contractually required to defend, indemnify and hold Legacy harmless against Harkins' claims, pursuant to the terms of the Master Subcontract Agreement.

279.    Without admitting any of the allegations of Harkins' Third Party Complaint, Legacy presently avers that EMKE is contractually obligated to ensure that its insurer extend coverage to Legacy as an Additional insured pursuant to the terms of the Master Subcontract Agreement.

280.    Without admitting any of the allegations of Harkins' Third Party Complaint, Legacy presently avers that if the injuries and damages asserted in the Third Party Complaint are proven to be true and Legacy is found liable, in whole or in part, then EMKE will be liable over to Legacy for contractual and/or common law indemnification and contribution.

281.    Exemplary, by and through its agents, performed work, including but not limited to, siding repair at the Project; and otherwise was responsible for various aspects of the installation and/or repair of the roofing and siding systems at the Project.

282.    Without admitting any factual averments or conceding any legal conclusions contained within the Harkins Amended Third Party Complaint, Legacy incorporates all well-plead averments of Harkins Amended Third Party Complaint by reference, specifically those allegations regarding Legacy's obligations with respect to the "furnishing and installation of the Building's roofing and siding systems." See Exhibit C at Paragraphs 78 – 92.

283.    Legacy and Exemplary entered into a Master Subcontract Agreement, which governed their relationship and which they agreed would govern the work performed at the Project. A true and correct copy of the Master Subcontract Agreement is attached hereto as **Exhibit "S."** The complete terms of the Master Subcontract are incorporated by reference as if set forth more fully herein.

284.    Pursuant to the Master Subcontract Agreement, Exemplary was responsible for completing all aspects of its work, including but not limited to siding repair at the Project; and various aspects of the installation and/or repair of the roofing and siding systems at the Project.

285.    Specifically, Exemplary agreed it:

…shall be solely responsible for all Work, including but not limited to the techniques, sequences, procedures, means, methods and coordination of all Work. Subcontractor shall supervise and direct all Work and give it all the attention necessary for proper supervision and direction. Subcontractor shall perform all

> Work in a thorough and workmanlike manner according to the highest standards of the appliable trades and to the reasonable satisfaction of Legacy…Subcontractor shall bear all costs involved in the repair or replacement of such work and in the repair or replacement of any other Work necessarily damaged by such repair or replacement….At all times, Subcontractor shall have exclusive and total responsibility for the quality and timeliness of its Work and nothing in this Section shall relieve Subcontractor of any liability or responsibility under law or otherwise.

See Exhibit S at Section 3.2.

286.    Moreover, as part of Exemplary's contractual obligations to Legacy in connection with the Project, Exemplary agreed to defend, indemnify and hold harmless Legacy from claims brought against Legacy arising from or relating to Exemplary's work. See Exhibit S at Section 8.

287.    Additionally, as part of Exemplary's contractual obligations to Legacy in connection with the Project, Exemplary agreed to procure and maintain insurance naming Legacy as an Additional Insured. See Exhibit S at Section 9.

288.    Exemplary has not yet agreed to contractually defend, indemnify or hold harmless Legacy in connection with the claims asserted by Harkins via Harkins' Amended Third Party Complaint.

289.    Exemplary's insurer has not yet agreed to extend coverage to Legacy as an Additional Insured with respect to the claims asserted by Harkins via Harkins' Amended Third Party Complaint.

290.    Any refusal by Exemplary to defend, indemnify and hold harmless Legacy in connection with this matter would constitute a Breach of the Master Subcontractor Agreement.

291.    Any refusal by Exemplary's insurer to extend coverage to Legacy as an Additional Insured would constitute a breach by Exemplary of the Master Subcontractor Agreement.

292.    As a result of any such breach by Exemplary of the terms of the Master Subcontract Agreement, Legacy and its insurers have sustained damages and will continue to sustain damages, including the costs and attorneys' fees expended to defend this lawsuit.

293.    Without admitting any of the allegations of Harkins' Third Party Complaint, Legacy presently avers that if the injuries and damages asserted in the Third Party Complaint are proven to be true, in whole or in part, then said injuries and damages were caused by the acts and/or omissions of Exemplary in the performance of the Work.

294.    Furthermore, without admitting any of the allegations of Harkins' Third Party Complaint, Legacy presently avers that if the injuries and damages asserted in the Third Party Complaint are proven to be true, in whole or in part, then Exemplary will be contractually required to defend, indemnify and hold Legacy harmless against Harkins' claims, pursuant to the terms of the Master Subcontract Agreement.

295.    Without admitting any of the allegations of Harkins' Third Party Complaint, Legacy presently avers that Exemplary is contractually obligated to ensure that its insurer extend coverage to Legacy as an Additional insured pursuant to the terms of the Master Subcontract Agreement.

296.    Without admitting any of the allegations of Harkins' Third Party Complaint, Legacy presently avers that if the injuries and damages asserted in the Third Party Complaint are proven to be true and Legacy is found liable, in whole or in part, then Exemplary will be liable over to Legacy for contractual and/or common law indemnification and contribution.

## COUNT I – CONTRIBUTION

### Legacy v. All Fifth Party Defendants

297.    Legacy repeats and reiterates each and every allegation heretofore made in this Fifth Party Complaint as if set forth more particularly at length.

298.    Legacy also incorporates by reference all well-plead averments of Harkins' Amended Third Party Complaint, without admission, as though same were set forth herein.

299.    While denying liability on Legacy's part, should Harkins recover damages in this action against Legacy, then the Fifth Party Defendants are each liable over to Legacy for common law contribution for any monies that Legacy may be found liable or responsible to Harkins.

300.    Specifically, the Fifth Party Defendants are liable over to Legacy based upon their respective acts or omissions, including but not limited to, as follows:

a.      Failure to adhere to material terms of written and/or oral contract;

b.      Failure to perform their respective Work at the Project in an adequate and workmanlike manner;

c.      Failure to correctly furnish and/or install a portion of the Building's roofing and/or siding systems;

d.      Causing damage to the building's roofing and/or siding systems or other building elements during the course of their Work at the building;

e.      Misrepresenting the quality, adequacy, or completeness of their Work at the building; and/or

f.      Other such liability producing conduct as may be revealed through the course of discovery.

301.    To the extent the allegations asserted by Harkins with respect to the alleged deficiencies in connection with the installation and/or construction of the Project's HVAC system and building envelope, including roofing and/or siding, are proven true, then any deficiencies alleged by the named Fifth Party Defendants herein, each of whom are liable over to Legacy by why of common law contribution.

WHEREFORE, Fifth Party Plaintiff, Legacy Services USA LLC, respectfully requests that this Honorable Court enter judgment in its favor against the Fifth Party Defendants, Locosta Construction, LLC; Trebor One Inc.; Konstantin Tyaschko d/b/a GPHI Home Remodeling; Chimbo Construction, LLC; L and I Construction, LLC; DML Enterprises Inc.; Goldstone General Contractors Corp.; Storm Master Co Inc. d/b/a Storm Master South; Umar Construction LLC; Ernie Bender Enterprises Inc.; Perfect Exteriors, LLC; Five Star Gutters, LLC; Green V Star Inc.; Alternative Gutters, LLC; TP Construction and Roofing Inc.; EMKE Contractors, LLC; and/or Exemplary Construction, LLC.

## COUNT II – BREACH OF CONTRACT

### Legacy v. Locosta

302.    Legacy repeats and reiterates each and every allegation heretofore made in this Fifth Party Complaint as if set forth more particularly at length.

303.    Legacy also incorporates by reference all well-plead averments of Harkins' Amended Third Party Complaint, without admission, as though same were set forth herein.

304.    Locosta was required to perform all work at the Project in accordance with the terms and conditions of the Master Subcontract Agreement. See Exhibit D.

305.    If the allegations of Harkins' Amended Third Party Complaint are proven true, Locosta breached its obligations to perform its work in accordance with the terms and conditions

of the Master Subcontract Agreement, including but not limited to Section 3.2 of the Master Subcontract Agreement.

306.    The Master Subcontract Agreement entered into by Locosta contained a provision requiring Locosta to defend, indemnify and hold Legacy harmless from the types of claims asserted by Harkins in this matter. See Exhibit D.

307.    Locosta is contractually obligated to defend, indemnify and hold Legacy harmless from and against the claims asserted by Harkins in this matter.

308.    Any failure by Locasta to defend, indemnify and hold Legacy harmless from and against the claims asserted by Harkins in this matter constitutes a material breach of the Master Subcontract Agreement.

309.    Additionally, the Master Subcontract Agreement also requires Locosta to procure and maintain insurance naming Legacy as an Additional Insured. See Exhibit D.

310.    Any failure by Locosta's Commercial General Liability Insurance Company to extend coverage to Legacy as an Additional Insured and to provide defense and indemnification from and against the claims asserted by Harkins is a material breach of the Master Subcontract Agreement.

311.    As a result of any such breaches of the Master Subcontract Agreement, Legacy has incurred and will continue to incur damages, including expenses, costs and attorneys' fees in the investigation and defense of this action.

312.    As a result of the breaches of the Master Subcontract Agreement by Locosta, Legacy is entitled to recover damages for said breaches, including all expenses, costs, and attorneys' fees incurred in the investigation and defense of this action, along with any judgment that may be entered against Legacy.

313.    To date, Locosta has not agreed to defend, indemnify and hold Legacy harmless, nor has Locosta's Commercial General Liability Insurance Company agreed to provide insurance coverage to Legacy, as is required by the Master Subcontract Agreement.

314.    As a result, Legacy has stained damage, and continues to sustain damage, including damage in the nature of attorneys' fees and costs.

WHEREFORE, Fifth Party Plaintiff, Legacy Service USA LLC, respectfully requests that this Honorable Court enter Judgement in its favor and against Fifth Party Defendant, Locosta, for breach of contract, including delay damages, interest, costs and expenses, and other such relief as the Court deems just and proper.

## COUNT III – CONTRACTUAL INDEMNIFICATION

### Legacy v. Locosta

315.    Legacy repeats and reiterates each and every allegation heretofore made in this Fifth Party Complaint as if set forth more particularly at length.

316.    Legacy also incorporates by reference all well-plead averments of Harkins' Amended Third Party Complaint, without admission, as though same were set forth herein.

317.    For the reasons set forth above, any amount which Legacy will have to pay in this case in the nature of any settlement, judgment, costs, or attorneys' fees is a loss caused by Locosta's failure to perform its Work at the Project in accordance with the terms of the Master Subcontract Agreement.

318.    For the reasons set forth above, any amount which Legacy will have to pay in this case in the nature of any settlement, judgment, costs, or attorneys' fees is a loss caused by Locosta's failure to defend and indemnify Legacy from and against the claims asserted by Harkins, as required by the terms Master Subcontract Agreement.

WHEREFORE, Fifth Party Plaintiff Legacy, respectfully requests that this Honorable Court enter judgment in its favor and against Fifth Party Defendant, Locosta, for contractual indemnification including delay damages, interest, costs and expenses, and other such relief as the Court deems just and proper.

## COUNT IV – BREACH OF CONTRACT

### Legacy v. Trebor One

319.    Legacy repeats and reiterates each and every allegation heretofore made in this Fifth Party Complaint as if set forth more particularly at length.

320.    Legacy also incorporates by reference all well-plead averments of Harkins' Amended Third Party Complaint, without admission, as though same were set forth herein.

321.    Trebor One was required to perform all work at the Project in accordance with the terms and conditions of the Master Subcontract Agreement. See Exhibit E.

322.    If the allegations of Harkins' Amended Third Party Complaint are proven true, Trebor One breached its obligations to perform its work in accordance with the terms and conditions of the Master Subcontract Agreement, including but not limited to Section 3.2 of the Master Subcontract Agreement.

323.    The Master Subcontract Agreement entered into by Trebor One contained a provision requiring Trebor One to defend, indemnify and hold Legacy harmless from the types of claims asserted by Harkins in this matter. See Exhibit E.

324.    Trebor One is contractually obligated to defend, indemnify and hold Legacy harmless from and against the claims asserted by Harkins in this matter.

325.    Any failure by Trebor One to defend, indemnify and hold Legacy harmless from and against the claims asserted by Harkins in this matter constitutes a material breach of the Master Subcontract Agreement.

326.    Additionally, the Master Subcontract Agreement also requires Trebor One to procure and maintain insurance naming Legacy as an Additional Insured. See Exhibit E.

327.    Any failure by Trebor One's Commercial General Liability Insurance Company to extend coverage to Legacy as an Additional Insured and to provide defense and indemnification from and against the claims asserted by Harkins is a material breach of the Master Subcontract Agreement.

328.    As a result of any such breaches of the Master Subcontract Agreement, Legacy has incurred and will continue to incur damages, including expenses, costs and attorneys' fees in the investigation and defense of this action.

329.    As a result of the breaches of the Master Subcontract Agreement by Trebor One, Legacy is entitled to recover damages for said breaches, including all expenses, costs, and attorneys' fees incurred in the investigation and defense of this action, along with any judgment that may be entered against Legacy.

330.    To date, Trebor One has not agreed to defend, indemnify and hold Legacy harmless, nor has Trebor One's Commercial General Liability Insurance Company agreed to provide insurance coverage to Legacy, as is required by the Master Subcontract Agreement.

331.    As a result, Legacy has stained damage, and continues to sustain damage, including damage in the nature of attorneys' fees and costs.

WHEREFORE, Fifth Party Plaintiff, Legacy Service USA LLC, respectfully requests that this Honorable Court enter Judgement in its favor and against Fifth Party Defendant, Trebor One,

for breach of contract, including delay damages, interest, costs and expenses, and other such relief as the Court deems just and proper.

## COUNT V – CONTRACTUAL INDEMNIFICATION

### Legacy v. Trebor One

332.    Legacy repeats and reiterates each and every allegation heretofore made in this Fifth Party Complaint as if set forth more particularly at length.

333.    Legacy also incorporates by reference all well-plead averments of Harkins' Amended Third Party Complaint, without admission, as though same were set forth herein.

334.    For the reasons set forth above, any amount which Legacy will have to pay in this case in the nature of any settlement, judgment, costs, or attorneys' fees is a loss caused by Trebor One's failure to perform its Work at the Project in accordance with the terms of the Master Subcontract Agreement.

335.    For the reasons set forth above, any amount which Legacy will have to pay in this case in the nature of any settlement, judgment, costs, or attorneys' fees is a loss caused by Trebor One's failure to defend and indemnify Legacy from and against the claims asserted by Harkins, as required by the terms Master Subcontract Agreement.

WHEREFORE, Fifth Party Plaintiff Legacy, respectfully requests that this Honorable Court enter judgment in its favor and against Fifth Party Defendant, Trebor One, for contractual indemnification including delay damages, interest, costs and expenses, and other such relief as the Court deems just and proper.

## COUNT VI – BREACH OF CONTRACT

### Legacy v. GPHI

336.    Legacy repeats and reiterates each and every allegation heretofore made in this Fifth Party Complaint as if set forth more particularly at length.

337.    Legacy also incorporates by reference all well-plead averments of Harkins' Amended Third Party Complaint, without admission, as though same were set forth herein.

338.    GPHI was required to perform all work at the Project in accordance with the terms and conditions of the Master Subcontract Agreement. See Exhibit F.

339.    If the allegations of Harkins' Amended Third Party Complaint are proven true, GPHI breached its obligations to perform its work in accordance with the terms and conditions of the Master Subcontract Agreement, including but not limited to Section 3.2 of the Master Subcontract Agreement.

340.    The Master Subcontract Agreement entered into by GPHI contained a provision requiring GPHI to defend, indemnify and hold Legacy harmless from the types of claims asserted by Harkins in this matter. See Exhibit F.

341.    GPHI is contractually obligated to defend, indemnify and hold Legacy harmless from and against the claims asserted by Harkins in this matter.

342.    Any failure by GPHI to defend, indemnify and hold Legacy harmless from and against the claims asserted by Harkins in this matter constitutes a material breach of the Master Subcontract Agreement.

343.    Additionally, the Master Subcontract Agreement also requires GPHI to procure and maintain insurance naming Legacy as an Additional Insured. See Exhibit F.

344.    Any failure by GPHI's Commercial General Liability Insurance Company to extend coverage to Legacy as an Additional Insured and to provide defense and indemnification from and against the claims asserted by Harkins is a material breach of the Master Subcontract Agreement.

345.    As a result of any such breaches of the Master Subcontract Agreement, Legacy has incurred and will continue to incur damages, including expenses, costs and attorneys' fees in the investigation and defense of this action.

346.    As a result of the breaches of the Master Subcontract Agreement by GPHI, Legacy is entitled to recover damages for said breaches, including all expenses, costs, and attorneys' fees incurred in the investigation and defense of this action, along with any judgment that may be entered against Legacy.

347.    To date, GPHI has not agreed to defend, indemnify and hold Legacy harmless, nor has GPHI's Commercial General Liability Insurance Company agreed to provide insurance coverage to Legacy, as is required by the Master Subcontract Agreement.

348.    As a result, Legacy has stained damage, and continues to sustain damage, including damage in the nature of attorneys' fees and costs.

WHEREFORE, Fifth Party Plaintiff, Legacy Service USA LLC, respectfully requests that this Honorable Court enter Judgement in its favor and against Fifth Party Defendant, GPHI, for breach of contract, including delay damages, interest, costs and expenses, and other such relief as the Court deems just and proper.

## COUNT VII – CONTRACTUAL INDEMNIFICATION

### Legacy v. GPHI

349.    Legacy repeats and reiterates each and every allegation heretofore made in this Fifth Party Complaint as if set forth more particularly at length.

350.    Legacy also incorporates by reference all well-plead averments of Harkins' Amended Third Party Complaint, without admission, as though same were set forth herein.

351.    For the reasons set forth above, any amount which Legacy will have to pay in this case in the nature of any settlement, judgment, costs, or attorneys' fees is a loss caused by GPHI's failure to perform its Work at the Project in accordance with the terms of the Master Subcontract Agreement. See Exhibit F.

352.    For the reasons set forth above, any amount which Legacy will have to pay in this case in the nature of any settlement, judgment, costs, or attorneys' fees is a loss caused by GPHI's failure to defend and indemnify Legacy from and against the claims asserted by Harkins, as required by the terms Master Subcontract Agreement. See Exhibit F.

WHEREFORE, Fifth Party Plaintiff Legacy, respectfully requests that this Honorable Court enter judgment in its favor and against Fifth Party Defendant, GPHI, for contractual indemnification including delay damages, interest, costs and expenses, and other such relief as the Court deems just and proper.

## COUNT VIII – BREACH OF CONTRACT

### Legacy v. Chimbo

353.    Legacy repeats and reiterates each and every allegation heretofore made in this Fifth Party Complaint as if set forth more particularly at length.

354.    Legacy also incorporates by reference all well-plead averments of Harkins' Amended Third Party Complaint, without admission, as though same were set forth herein.

355.    Chimbo was required to perform all work at the Project in accordance with the terms and conditions of the Master Subcontract Agreement. See Exhibit G.

356.    If the allegations of Harkins' Amended Third Party Complaint are proven true, Chimbo breached its obligations to perform its work in accordance with the terms and conditions of the Master Subcontract Agreement, including but not limited to Section 3.2 of the Master Subcontract Agreement.

357.    The Master Subcontract Agreement entered into by Chimbo contained a provision requiring Chimbo to defend, indemnify and hold Legacy harmless from the types of claims asserted by Harkins in this matter. See Exhibit G.

358.    Chimbo is contractually obligated to defend, indemnify and hold Legacy harmless from and against the claims asserted by Harkins in this matter.

359.    Any failure by Chimbo to defend, indemnify and hold Legacy harmless from and against the claims asserted by Harkins in this matter constitutes a material breach of the Master Subcontract Agreement.

360.    Additionally, the Master Subcontract Agreement also requires Chimbo to procure and maintain insurance naming Legacy as an Additional Insured. See Exhibit G.

361.    Any failure by Chimbo's Commercial General Liability Insurance Company to extend coverage to Legacy as an Additional Insured and to provide defense and indemnification from and against the claims asserted by Harkins is a material breach of the Master Subcontract Agreement.

362.    As a result of any such breaches of the Master Subcontract Agreement, Legacy has incurred and will continue to incur damages, including expenses, costs and attorneys' fees in the investigation and defense of this action.

363.    As a result of the breaches of the Master Subcontract Agreement by Chimbo, Legacy is entitled to recover damages for said breaches, including all expenses, costs, and attorneys' fees incurred in the investigation and defense of this action, along with any judgment that may be entered against Legacy.

364.    To date, Chimbo has not agreed to defend, indemnify and hold Legacy harmless, nor has Chimbo's Commercial General Liability Insurance Company agreed to provide insurance coverage to Legacy, as is required by the Master Subcontract Agreement.

365.    As a result, Legacy has stained damage, and continues to sustain damage, including damage in the nature of attorneys' fees and costs.

WHEREFORE, Fifth Party Plaintiff, Legacy Service USA LLC, respectfully requests that this Honorable Court enter Judgement in its favor and against Fifth Party Defendant, Chimbo, for breach of contract, including delay damages, interest, costs and expenses, and other such relief as the Court deems just and proper.

## COUNT IX – CONTRACTUAL INDEMNIFICATION

### Legacy v. Chimbo

366.    Legacy repeats and reiterates each and every allegation heretofore made in this Fifth Party Complaint as if set forth more particularly at length.

367.    Legacy also incorporates by reference all well-plead averments of Harkins' Amended Third Party Complaint, without admission, as though same were set forth herein.

368.    For the reasons set forth above, any amount which Legacy will have to pay in this case in the nature of any settlement, judgment, costs, or attorneys' fees is a loss caused by Chimbo's failure to perform its Work at the Project in accordance with the terms of the Master Subcontract Agreement. See Exhibit G.

369.    For the reasons set forth above, any amount which Legacy will have to pay in this case in the nature of any settlement, judgment, costs, or attorneys' fees is a loss caused by Chimbo's failure to defend and indemnify Legacy from and against the claims asserted by Harkins, as required by the terms Master Subcontract Agreement. See Exhibit G.

WHEREFORE, Fifth Party Plaintiff Legacy, respectfully requests that this Honorable Court enter judgment in its favor and against Fifth Party Defendant, Chimbo, for contractual indemnification including delay damages, interest, costs and expenses, and other such relief as the Court deems just and proper.

## COUNT X – BREACH OF CONTRACT

### Legacy v. L&I

370.    Legacy repeats and reiterates each and every allegation heretofore made in this Fifth Party Complaint as if set forth more particularly at length.

371.    Legacy also incorporates by reference all well-plead averments of Harkins' Amended Third Party Complaint, without admission, as though same were set forth herein.

372.    L&I was required to perform all work at the Project in accordance with the terms and conditions of the Master Subcontract Agreement. See Exhibit H.

373.    If the allegations of Harkins' Amended Third Party Complaint are proven true, L&I breached its obligations to perform its work in accordance with the terms and conditions of the

Master Subcontract Agreement, including but not limited to Section 3.2 of the Master Subcontract Agreement.

374.    The Master Subcontract Agreement entered into by L&I contained a provision requiring L&I to defend, indemnify and hold Legacy harmless from the types of claims asserted by Harkins in this matter. See Exhibit H.

375.    L&I is contractually obligated to defend, indemnify and hold Legacy harmless from and against the claims asserted by Harkins in this matter.

376.    Any failure by L&I to defend, indemnify and hold Legacy harmless from and against the claims asserted by Harkins in this matter constitutes a material breach of the Master Subcontract Agreement.

377.    Additionally, the Master Subcontract Agreement also requires L&I to procure and maintain insurance naming Legacy as an Additional Insured. See Exhibit H.

378.    Any failure by L&I's Commercial General Liability Insurance Company to extend coverage to Legacy as an Additional Insured and to provide defense and indemnification from and against the claims asserted by Harkins is a material breach of the Master Subcontract Agreement.

379.    As a result of any such breaches of the Master Subcontract Agreement, Legacy has incurred and will continue to incur damages, including expenses, costs and attorneys' fees in the investigation and defense of this action.

380.    As a result of the breaches of the Master Subcontract Agreement by L&I, Legacy is entitled to recover damages for said breaches, including all expenses, costs, and attorneys' fees incurred in the investigation and defense of this action, along with any judgment that may be entered against Legacy.

381.    To date, L&I has not agreed to defend, indemnify and hold Legacy harmless, nor has L&I's Commercial General Liability Insurance Company agreed to provide insurance coverage to Legacy, as is required by the Master Subcontract Agreement.

382.    As a result, Legacy has stained damage, and continues to sustain damage, including damage in the nature of attorneys' fees and costs.

WHEREFORE, Fifth Party Plaintiff, Legacy Service USA LLC, respectfully requests that this Honorable Court enter Judgement in its favor and against Fifth Party Defendant, L&I, for breach of contract, including delay damages, interest, costs and expenses, and other such relief as the Court deems just and proper.

## COUNT XI – CONTRACTUAL INDEMNIFICATION

### Legacy v. L&I

383.    Legacy repeats and reiterates each and every allegation heretofore made in this Fifth Party Complaint as if set forth more particularly at length.

384.    Legacy also incorporates by reference all well-plead averments of Harkins' Amended Third Party Complaint, without admission, as though same were set forth herein.

385.    For the reasons set forth above, any amount which Legacy will have to pay in this case in the nature of any settlement, judgment, costs, or attorneys' fees is a loss caused by L&I's failure to perform its Work at the Project in accordance with the terms of the Master Subcontract Agreement. See Exhibit H.

386.    For the reasons set forth above, any amount which Legacy will have to pay in this case in the nature of any settlement, judgment, costs, or attorneys' fees is a loss caused by L&I's failure to defend and indemnify Legacy from and against the claims asserted by Harkins, as required by the terms Master Subcontract Agreement. See Exhibit H.

WHEREFORE, Fifth Party Plaintiff Legacy, respectfully requests that this Honorable Court enter judgment in its favor and against Fifth Party Defendant, L&I, for contractual indemnification including delay damages, interest, costs and expenses, and other such relief as the Court deems just and proper.

## COUNT XII – BREACH OF CONTRACT

### Legacy v. DML

387.    Legacy repeats and reiterates each and every allegation heretofore made in this Fifth Party Complaint as if set forth more particularly at length.

388.    Legacy also incorporates by reference all well-plead averments of Harkins' Amended Third Party Complaint, without admission, as though same were set forth herein.

389.    DML was required to perform all work at the Project in accordance with the terms and conditions of the Master Subcontract Agreement. See Exhibit I.

390.    If the allegations of Harkins' Amended Third Party Complaint are proven true, DML breached its obligations to perform its work in accordance with the terms and conditions of the Master Subcontract Agreement, including but not limited to Section 3.2 of the Master Subcontract Agreement.

391.    The Master Subcontract Agreement entered into by DML contained a provision requiring DML to defend, indemnify and hold Legacy harmless from the types of claims asserted by Harkins in this matter. See Exhibit I.

392.    DML is contractually obligated to defend, indemnify and hold Legacy harmless from and against the claims asserted by Harkins in this matter.

393.    Any failure by DML to defend, indemnify and hold Legacy harmless from and against the claims asserted by Harkins in this matter constitutes a material breach of the Master Subcontract Agreement.

394.    Additionally, the Master Subcontract Agreement also requires DML to procure and maintain insurance naming Legacy as an Additional Insured. See Exhibit I.

395.    Any failure by DML's Commercial General Liability Insurance Company to extend coverage to Legacy as an Additional Insured and to provide defense and indemnification from and against the claims asserted by Harkins is a material breach of the Master Subcontract Agreement.

396.    As a result of any such breaches of the Master Subcontract Agreement, Legacy has incurred and will continue to incur damages, including expenses, costs and attorneys' fees in the investigation and defense of this action.

397.    As a result of the breaches of the Master Subcontract Agreement by DML, Legacy is entitled to recover damages for said breaches, including all expenses, costs, and attorneys' fees incurred in the investigation and defense of this action, along with any judgment that may be entered against Legacy.

398.    To date, DML has not agreed to defend, indemnify and hold Legacy harmless, nor has DML's Commercial General Liability Insurance Company agreed to provide insurance coverage to Legacy, as is required by the Master Subcontract Agreement.

399.    As a result, Legacy has stained damage, and continues to sustain damage, including damage in the nature of attorneys' fees and costs.

WHEREFORE, Fifth Party Plaintiff, Legacy Service USA LLC, respectfully requests that this Honorable Court enter Judgement in its favor and against Fifth Party Defendant, DML, for

breach of contract, including delay damages, interest, costs and expenses, and other such relief as the Court deems just and proper.

## COUNT XIII – CONTRACTUAL INDEMNIFICATION

### Legacy v. DML

400.    Legacy repeats and reiterates each and every allegation heretofore made in this Fifth Party Complaint as if set forth more particularly at length.

401.    Legacy also incorporates by reference all well-plead averments of Harkins' Amended Third Party Complaint, without admission, as though same were set forth herein.

402.    For the reasons set forth above, any amount which Legacy will have to pay in this case in the nature of any settlement, judgment, costs, or attorneys' fees is a loss caused by DML's failure to perform its Work at the Project in accordance with the terms of the Master Subcontract Agreement.

403.    For the reasons set forth above, any amount which Legacy will have to pay in this case in the nature of any settlement, judgment, costs, or attorneys' fees is a loss caused by DML's failure to defend and indemnify Legacy from and against the claims asserted by Harkins, as required by the terms Master Subcontract Agreement.

WHEREFORE, Fifth Party Plaintiff Legacy, respectfully requests that this Honorable Court enter judgment in its favor and against Fifth Party Defendant, DML, for contractual indemnification including delay damages, interest, costs and expenses, and other such relief as the Court deems just and proper.

## COUNT XIV – BREACH OF CONTRACT

### Legacy v. Goldstone

404.    Legacy repeats and reiterates each and every allegation heretofore made in this Fifth Party Complaint as if set forth more particularly at length.

405.    Legacy also incorporates by reference all well-plead averments of Harkins' Amended Third Party Complaint, without admission, as though same were set forth herein.

406.    Goldstone was required to perform all work at the Project in accordance with the terms and conditions of the Master Subcontract Agreement. See Exhibit J.

407.    If the allegations of Harkins' Amended Third Party Complaint are proven true, Goldstone breached its obligations to perform its work in accordance with the terms and conditions of the Master Subcontract Agreement, including but not limited to Section 3.2 of the Master Subcontract Agreement.

408.    The Master Subcontract Agreement entered into by Goldstone contained a provision requiring Goldstone to defend, indemnify and hold Legacy harmless from the types of claims asserted by Harkins in this matter. See Exhibit J.

409.    Goldstone is contractually obligated to defend, indemnify and hold Legacy harmless from and against the claims asserted by Harkins in this matter.

410.    Any failure by Goldstone to defend, indemnify and hold Legacy harmless from and against the claims asserted by Harkins in this matter constitutes a material breach of the Master Subcontract Agreement.

411.    Additionally, the Master Subcontract Agreement also requires Goldstone to procure and maintain insurance naming Legacy as an Additional Insured. See Exhibit J.

412.    Any failure by Goldstone's Commercial General Liability Insurance Company to extend coverage to Legacy as an Additional Insured and to provide defense and indemnification from and against the claims asserted by Harkins is a material breach of the Master Subcontract Agreement.

413.    As a result of any such breaches of the Master Subcontract Agreement, Legacy has incurred and will continue to incur damages, including expenses, costs and attorneys' fees in the investigation and defense of this action.

414.    As a result of the breaches of the Master Subcontract Agreement by Goldstone, Legacy is entitled to recover damages for said breaches, including all expenses, costs, and attorneys' fees incurred in the investigation and defense of this action, along with any judgment that may be entered against Legacy.

415.    To date, Goldstone has not agreed to defend, indemnify and hold Legacy harmless, nor has Goldstone's Commercial General Liability Insurance Company agreed to provide insurance coverage to Legacy, as is required by the Master Subcontract Agreement.

416.    As a result, Legacy has stained damage, and continues to sustain damage, including damage in the nature of attorneys' fees and costs.

WHEREFORE, Fifth Party Plaintiff, Legacy Service USA LLC, respectfully requests that this Honorable Court enter Judgement in its favor and against Fifth Party Defendant, Goldstone, for breach of contract, including delay damages, interest, costs and expenses, and other such relief as the Court deems just and proper.

## COUNT XV– CONTRACTUAL INDEMNIFICATION

### Legacy v. Goldstone

417.    Legacy repeats and reiterates each and every allegation heretofore made in this Fifth Party Complaint as if set forth more particularly at length.

418.    Legacy also incorporates by reference all well-plead averments of Harkins' Amended Third Party Complaint, without admission, as though same were set forth herein.

419.    For the reasons set forth above, any amount which Legacy will have to pay in this case in the nature of any settlement, judgment, costs, or attorneys' fees is a loss caused by Goldstone's failure to perform its Work at the Project in accordance with the terms of the Master Subcontract Agreement.

420.    For the reasons set forth above, any amount which Legacy will have to pay in this case in the nature of any settlement, judgment, costs, or attorneys' fees is a loss caused by Goldstone's failure to defend and indemnify Legacy from and against the claims asserted by Harkins, as required by the terms Master Subcontract Agreement.

WHEREFORE, Fifth Party Plaintiff Legacy, respectfully requests that this Honorable Court enter judgment in its favor and against Fifth Party Defendant, Goldstone, for contractual indemnification including delay damages, interest, costs and expenses, and other such relief as the Court deems just and proper.

## COUNT XVI – BREACH OF CONTRACT

### Legacy v. Umar

421.    Legacy repeats and reiterates each and every allegation heretofore made in this Fifth Party Complaint as if set forth more particularly at length.

422.    Legacy also incorporates by reference all well-plead averments of Harkins' Amended Third Party Complaint, without admission, as though same were set forth herein.

423.    Umar was required to perform all work at the Project in accordance with the terms and conditions of the Master Subcontract Agreement. See Exhibit K.

424.    If the allegations of Harkins' Amended Third Party Complaint are proven true, Umar breached its obligations to perform its work in accordance with the terms and conditions of the Master Subcontract Agreement, including but not limited to Section 3.2 of the Master Subcontract Agreement.

425.    The Master Subcontract Agreement entered into by Umar contained a provision requiring Umar to defend, indemnify and hold Legacy harmless from the types of claims asserted by Harkins in this matter. See Exhibit K.

426.    Umar is contractually obligated to defend, indemnify and hold Legacy harmless from and against the claims asserted by Harkins in this matter.

427.    Any failure by Umar to defend, indemnify and hold Legacy harmless from and against the claims asserted by Harkins in this matter constitutes a material breach of the Master Subcontract Agreement.

428.    Additionally, the Master Subcontract Agreement also requires Umar to procure and maintain insurance naming Legacy as an Additional Insured. See Exhibit K.

429.    Any failure by Umar's Commercial General Liability Insurance Company to extend coverage to Legacy as an Additional Insured and to provide defense and indemnification from and against the claims asserted by Harkins is a material breach of the Master Subcontract Agreement.

430.    As a result of any such breaches of the Master Subcontract Agreement, Legacy has incurred and will continue to incur damages, including expenses, costs and attorneys' fees in the investigation and defense of this action.

431.    As a result of the breaches of the Master Subcontract Agreement by Umar, Legacy is entitled to recover damages for said breaches, including all expenses, costs, and attorneys' fees incurred in the investigation and defense of this action, along with any judgment that may be entered against Legacy.

432.    To date, Umar has not agreed to defend, indemnify and hold Legacy harmless, nor has Umar's Commercial General Liability Insurance Company agreed to provide insurance coverage to Legacy, as is required by the Master Subcontract Agreement.

433.    As a result, Legacy has stained damage, and continues to sustain damage, including damage in the nature of attorneys' fees and costs.

WHEREFORE, Fifth Party Plaintiff, Legacy Service USA LLC, respectfully requests that this Honorable Court enter Judgement in its favor and against Fifth Party Defendant, Umar, for breach of contract, including delay damages, interest, costs and expenses, and other such relief as the Court deems just and proper.

## COUNT XVII– CONTRACTUAL INDEMNIFICATION

### Legacy v. Umar

434.    Legacy repeats and reiterates each and every allegation heretofore made in this Fifth Party Complaint as if set forth more particularly at length.

435.    Legacy also incorporates by reference all well-plead averments of Harkins' Amended Third Party Complaint, without admission, as though same were set forth herein.

436.    For the reasons set forth above, any amount which Legacy will have to pay in this case in the nature of any settlement, judgment, costs, or attorneys' fees is a loss caused by Umar's failure to perform its Work at the Project in accordance with the terms of the Master Subcontract Agreement.

437.    For the reasons set forth above, any amount which Legacy will have to pay in this case in the nature of any settlement, judgment, costs, or attorneys' fees is a loss caused by Umar's failure to defend and indemnify Legacy from and against the claims asserted by Harkins, as required by the terms Master Subcontract Agreement.

WHEREFORE, Fifth Party Plaintiff Legacy, respectfully requests that this Honorable Court enter judgment in its favor and against Fifth Party Defendant, Umar, for contractual indemnification including delay damages, interest, costs and expenses, and other such relief as the Court deems just and proper.

## COUNT XVIII – BREACH OF CONTRACT

### Legacy v. Bender

438.    Legacy repeats and reiterates each and every allegation heretofore made in this Fifth Party Complaint as if set forth more particularly at length.

439.    Legacy also incorporates by reference all well-plead averments of Harkins' Amended Third Party Complaint, without admission, as though same were set forth herein.

440.    Bender was required to perform all work at the Project in accordance with the terms and conditions of the Master Subcontract Agreement. See Exhibit L.

441.    If the allegations of Harkins' Amended Third Party Complaint are proven true, Bender breached its obligations to perform its work in accordance with the terms and conditions

of the Master Subcontract Agreement, including but not limited to Section 3.2 of the Master Subcontract Agreement.

442.    The Master Subcontract Agreement entered into by Bender contained a provision requiring Bender to defend, indemnify and hold Legacy harmless from the types of claims asserted by Harkins in this matter. See Exhibit L.

443.    Bender is contractually obligated to defend, indemnify and hold Legacy harmless from and against the claims asserted by Harkins in this matter.

444.    Any failure by Bender to defend, indemnify and hold Legacy harmless from and against the claims asserted by Harkins in this matter constitutes a material breach of the Master Subcontract Agreement.

445.    Additionally, the Master Subcontract Agreement also requires Bender to procure and maintain insurance naming Legacy as an Additional Insured. See Exhibit L.

446.    Any failure by Bender's Commercial General Liability Insurance Company to extend coverage to Legacy as an Additional Insured and to provide defense and indemnification from and against the claims asserted by Harkins is a material breach of the Master Subcontract Agreement.

447.    As a result of any such breaches of the Master Subcontract Agreement, Legacy has incurred and will continue to incur damages, including expenses, costs and attorneys' fees in the investigation and defense of this action.

448.    As a result of the breaches of the Master Subcontract Agreement by Bender, Legacy is entitled to recover damages for said breaches, including all expenses, costs, and attorneys' fees incurred in the investigation and defense of this action, along with any judgment that may be entered against Legacy.

449.    To date, Bender has not agreed to defend, indemnify and hold Legacy harmless, nor has Bender's Commercial General Liability Insurance Company agreed to provide insurance coverage to Legacy, as is required by the Master Subcontract Agreement.

450.    As a result, Legacy has stained damage, and continues to sustain damage, including damage in the nature of attorneys' fees and costs.

WHEREFORE, Fifth Party Plaintiff, Legacy Service USA LLC, respectfully requests that this Honorable Court enter Judgement in its favor and against Fifth Party Defendant, Bender, for breach of contract, including delay damages, interest, costs and expenses, and other such relief as the Court deems just and proper.

### COUNT XIX– CONTRACTUAL INDEMNIFICATION

#### Legacy v. Bender

451.    Legacy repeats and reiterates each and every allegation heretofore made in this Fifth Party Complaint as if set forth more particularly at length.

452.    Legacy also incorporates by reference all well-plead averments of Harkins' Amended Third Party Complaint, without admission, as though same were set forth herein.

453.    For the reasons set forth above, any amount which Legacy will have to pay in this case in the nature of any settlement, judgment, costs, or attorneys' fees is a loss caused by Bender's failure to perform its Work at the Project in accordance with the terms of the Master Subcontract Agreement.

454.    For the reasons set forth above, any amount which Legacy will have to pay in this case in the nature of any settlement, judgment, costs, or attorneys' fees is a loss caused by Bender's failure to defend and indemnify Legacy from and against the claims asserted by Harkins, as required by the terms Master Subcontract Agreement.

WHEREFORE, Fifth Party Plaintiff Legacy, respectfully requests that this Honorable Court enter judgment in its favor and against Fifth Party Defendant, Bender, for contractual indemnification including delay damages, interest, costs and expenses, and other such relief as the Court deems just and proper.

## COUNT XX – BREACH OF CONTRACT

### Legacy v. Perfect Exteriors

455.    Legacy repeats and reiterates each and every allegation heretofore made in this Fifth Party Complaint as if set forth more particularly at length.

456.    Legacy also incorporates by reference all well-plead averments of Harkins' Amended Third Party Complaint, without admission, as though same were set forth herein.

457.    Perfect Exteriors was required to perform all work at the Project in accordance with the terms and conditions of the Master Subcontract Agreement. See Exhibit M.

458.    If the allegations of Harkins' Amended Third Party Complaint are proven true, Perfect Exteriors breached its obligations to perform its work in accordance with the terms and conditions of the Master Subcontract Agreement, including but not limited to Section 3.2 of the Master Subcontract Agreement.

459.    The Master Subcontract Agreement entered into by Perfect Exteriors contained a provision requiring Perfect Exteriors to defend, indemnify and hold Legacy harmless from the types of claims asserted by Harkins in this matter. See Exhibit M.

460.    Perfect Exteriors is contractually obligated to defend, indemnify and hold Legacy harmless from and against the claims asserted by Harkins in this matter.

461.    Any failure by Perfect Exteriors to defend, indemnify and hold Legacy harmless from and against the claims asserted by Harkins in this matter constitutes a material breach of the Master Subcontract Agreement.

462.    Additionally, the Master Subcontract Agreement also requires Perfect Exteriors to procure and maintain insurance naming Legacy as an Additional Insured. See Exhibit M.

463.    Any failure by Perfect Exteriors' Commercial General Liability Insurance Company to extend coverage to Legacy as an Additional Insured and to provide defense and indemnification from and against the claims asserted by Harkins is a material breach of the Master Subcontract Agreement.

464.    As a result of any such breaches of the Master Subcontract Agreement, Legacy has incurred and will continue to incur damages, including expenses, costs and attorneys' fees in the investigation and defense of this action.

465.    As a result of the breaches of the Master Subcontract Agreement by Perfect Exteriors, Legacy is entitled to recover damages for said breaches, including all expenses, costs, and attorneys' fees incurred in the investigation and defense of this action, along with any judgment that may be entered against Legacy.

466.    To date, Perfect Exteriors has not agreed to defend, indemnify and hold Legacy harmless, nor has Perfect Exteriors' Commercial General Liability Insurance Company agreed to provide insurance coverage to Legacy, as is required by the Master Subcontract Agreement.

467.    As a result, Legacy has stained damage, and continues to sustain damage, including damage in the nature of attorneys' fees and costs.

WHEREFORE, Fifth Party Plaintiff, Legacy Service USA LLC, respectfully requests that this Honorable Court enter Judgement in its favor and against Fifth Party Defendant, Perfect

Exteriors, for breach of contract, including delay damages, interest, costs and expenses, and other such relief as the Court deems just and proper.

## COUNT XIX– CONTRACTUAL INDEMNIFICATION

### Legacy v. Perfect Exteriors

468.    Legacy repeats and reiterates each and every allegation heretofore made in this Fifth Party Complaint as if set forth more particularly at length.

469.    Legacy also incorporates by reference all well-plead averments of Harkins' Amended Third Party Complaint, without admission, as though same were set forth herein.

470.    For the reasons set forth above, any amount which Legacy will have to pay in this case in the nature of any settlement, judgment, costs, or attorneys' fees is a loss caused by Perfect Exteriors' failure to perform its Work at the Project in accordance with the terms of the Master Subcontract Agreement.

471.    For the reasons set forth above, any amount which Legacy will have to pay in this case in the nature of any settlement, judgment, costs, or attorneys' fees is a loss caused by Perfect Exteriors' failure to defend and indemnify Legacy from and against the claims asserted by Harkins, as required by the terms Master Subcontract Agreement.

WHEREFORE, Fifth Party Plaintiff Legacy, respectfully requests that this Honorable Court enter judgment in its favor and against Fifth Party Defendant, Perfect Exteriors, for contractual indemnification including delay damages, interest, costs and expenses, and other such relief as the Court deems just and proper.

## COUNT XXI – BREACH OF CONTRACT

### Legacy v. Five Star

472.    Legacy repeats and reiterates each and every allegation heretofore made in this Fifth Party Complaint as if set forth more particularly at length.

473.    Legacy also incorporates by reference all well-plead averments of Harkins' Amended Third Party Complaint, without admission, as though same were set forth herein.

474.    Five Star was required to perform all work at the Project in accordance with the terms and conditions of the Master Subcontract Agreement. See Exhibit N.

475.    If the allegations of Harkins' Amended Third Party Complaint are proven true, Five Star breached its obligations to perform its work in accordance with the terms and conditions of the Master Subcontract Agreement, including but not limited to Section 3.2 of the Master Subcontract Agreement.

476.    The Master Subcontract Agreement entered into by Five Star contained a provision requiring Five Star to defend, indemnify and hold Legacy harmless from the types of claims asserted by Harkins in this matter. See Exhibit N.

477.    Five Star is contractually obligated to defend, indemnify and hold Legacy harmless from and against the claims asserted by Harkins in this matter.

478.    Any failure by Five Star to defend, indemnify and hold Legacy harmless from and against the claims asserted by Harkins in this matter constitutes a material breach of the Master Subcontract Agreement.

479.    Additionally, the Master Subcontract Agreement also requires Five Star to procure and maintain insurance naming Legacy as an Additional Insured. See Exhibit N.

480.    Any failure by Five Star's Commercial General Liability Insurance Company to extend coverage to Legacy as an Additional Insured and to provide defense and indemnification from and against the claims asserted by Harkins is a material breach of the Master Subcontract Agreement.

481.    As a result of any such breaches of the Master Subcontract Agreement, Legacy has incurred and will continue to incur damages, including expenses, costs and attorneys' fees in the investigation and defense of this action.

482.    As a result of the breaches of the Master Subcontract Agreement by Five Star, Legacy is entitled to recover damages for said breaches, including all expenses, costs, and attorneys' fees incurred in the investigation and defense of this action, along with any judgment that may be entered against Legacy.

483.    To date, Five Star has not agreed to defend, indemnify and hold Legacy harmless, nor has Five Star's Commercial General Liability Insurance Company agreed to provide insurance coverage to Legacy, as is required by the Master Subcontract Agreement.

484.    As a result, Legacy has stained damage, and continues to sustain damage, including damage in the nature of attorneys' fees and costs.

WHEREFORE, Fifth Party Plaintiff, Legacy Service USA LLC, respectfully requests that this Honorable Court enter Judgement in its favor and against Fifth Party Defendant, Five Star, for breach of contract, including delay damages, interest, costs and expenses, and other such relief as the Court deems just and proper.

## COUNT XXII– CONTRACTUAL INDEMNIFICATION

### Legacy v. Five Star

485.    Legacy repeats and reiterates each and every allegation heretofore made in this Fifth Party Complaint as if set forth more particularly at length.

486.    Legacy also incorporates by reference all well-plead averments of Harkins' Amended Third Party Complaint, without admission, as though same were set forth herein.

487.    For the reasons set forth above, any amount which Legacy will have to pay in this case in the nature of any settlement, judgment, costs, or attorneys' fees is a loss caused by Five Star's failure to perform its Work at the Project in accordance with the terms of the Master Subcontract Agreement.

488.    For the reasons set forth above, any amount which Legacy will have to pay in this case in the nature of any settlement, judgment, costs, or attorneys' fees is a loss caused by Five Star's failure to defend and indemnify Legacy from and against the claims asserted by Harkins, as required by the terms Master Subcontract Agreement.

WHEREFORE, Fifth Party Plaintiff Legacy, respectfully requests that this Honorable Court enter judgment in its favor and against Fifth Party Defendant, Five Star, for contractual indemnification including delay damages, interest, costs and expenses, and other such relief as the Court deems just and proper.

## COUNT XXIII – BREACH OF CONTRACT

### Legacy v. Green

489.    Legacy repeats and reiterates each and every allegation heretofore made in this Fifth Party Complaint as if set forth more particularly at length.

490.    Legacy also incorporates by reference all well-plead averments of Harkins' Amended Third Party Complaint, without admission, as though same were set forth herein.

491.    Green was required to perform all work at the Project in accordance with the terms and conditions of the Master Subcontract Agreement. See Exhibit O.

492.    If the allegations of Harkins' Amended Third Party Complaint are proven true, Green breached its obligations to perform its work in accordance with the terms and conditions of the Master Subcontract Agreement, including but not limited to Section 3.2 of the Master Subcontract Agreement.

493.    The Master Subcontract Agreement entered into by Green contained a provision requiring Green to defend, indemnify and hold Legacy harmless from the types of claims asserted by Harkins in this matter. See Exhibit O.

494.    Green is contractually obligated to defend, indemnify and hold Legacy harmless from and against the claims asserted by Harkins in this matter.

495.    Any failure by Green to defend, indemnify and hold Legacy harmless from and against the claims asserted by Harkins in this matter constitutes a material breach of the Master Subcontract Agreement.

496.    Additionally, the Master Subcontract Agreement also requires Green to procure and maintain insurance naming Legacy as an Additional Insured. See Exhibit O.

497.    Any failure by Green's Commercial General Liability Insurance Company to extend coverage to Legacy as an Additional Insured and to provide defense and indemnification from and against the claims asserted by Harkins is a material breach of the Master Subcontract Agreement.

498.    As a result of any such breaches of the Master Subcontract Agreement, Legacy has incurred and will continue to incur damages, including expenses, costs and attorneys' fees in the investigation and defense of this action.

499.    As a result of the breaches of the Master Subcontract Agreement by Green, Legacy is entitled to recover damages for said breaches, including all expenses, costs, and attorneys' fees incurred in the investigation and defense of this action, along with any judgment that may be entered against Legacy.

500.    To date, Green has not agreed to defend, indemnify and hold Legacy harmless, nor has Green's Commercial General Liability Insurance Company agreed to provide insurance coverage to Legacy, as is required by the Master Subcontract Agreement.

501.    As a result, Legacy has stained damage, and continues to sustain damage, including damage in the nature of attorneys' fees and costs.

WHEREFORE, Fifth Party Plaintiff, Legacy Service USA LLC, respectfully requests that this Honorable Court enter Judgement in its favor and against Fifth Party Defendant, Green, for breach of contract, including delay damages, interest, costs and expenses, and other such relief as the Court deems just and proper.

## COUNT XXIV– CONTRACTUAL INDEMNIFICATION

### Legacy v. Green

502.    Legacy repeats and reiterates each and every allegation heretofore made in this Fifth Party Complaint as if set forth more particularly at length.

503.    Legacy also incorporates by reference all well-plead averments of Harkins' Amended Third Party Complaint, without admission, as though same were set forth herein.

504.    For the reasons set forth above, any amount which Legacy will have to pay in this case in the nature of any settlement, judgment, costs, or attorneys' fees is a loss caused by Green's failure to perform its Work at the Project in accordance with the terms of the Master Subcontract Agreement.

505.    For the reasons set forth above, any amount which Legacy will have to pay in this case in the nature of any settlement, judgment, costs, or attorneys' fees is a loss caused by Green's failure to defend and indemnify Legacy from and against the claims asserted by Harkins, as required by the terms Master Subcontract Agreement.

WHEREFORE, Fifth Party Plaintiff Legacy, respectfully requests that this Honorable Court enter judgment in its favor and against Fifth Party Defendant, Green, for contractual indemnification including delay damages, interest, costs and expenses, and other such relief as the Court deems just and proper.

## COUNT XXV – BREACH OF CONTRACT

### Legacy v. Alternative Gutters

506.    Legacy repeats and reiterates each and every allegation heretofore made in this Fifth Party Complaint as if set forth more particularly at length.

507.    Legacy also incorporates by reference all well-plead averments of Harkins' Amended Third Party Complaint, without admission, as though same were set forth herein.

508.    Alternative Gutters was required to perform all work at the Project in accordance with the terms and conditions of the Master Subcontract Agreement. See Exhibit P.

509.    If the allegations of Harkins' Amended Third Party Complaint are proven true, Alternative Gutters breached its obligations to perform its work in accordance with the terms and

conditions of the Master Subcontract Agreement, including but not limited to Section 3.2 of the Master Subcontract Agreement.

510.    The Master Subcontract Agreement entered into by Alternative Gutters contained a provision requiring Alternative Gutters to defend, indemnify and hold Legacy harmless from the types of claims asserted by Harkins in this matter. See Exhibit P.

511.    Alternative Gutters is contractually obligated to defend, indemnify and hold Legacy harmless from and against the claims asserted by Harkins in this matter.

512.    Any failure by Alternative Gutters to defend, indemnify and hold Legacy harmless from and against the claims asserted by Harkins in this matter constitutes a material breach of the Master Subcontract Agreement.

513.    Additionally, the Master Subcontract Agreement also requires Alternative Gutters to procure and maintain insurance naming Legacy as an Additional Insured. See Exhibit P.

514.    Any failure by Alternative Gutters' Commercial General Liability Insurance Company to extend coverage to Legacy as an Additional Insured and to provide defense and indemnification from and against the claims asserted by Harkins is a material breach of the Master Subcontract Agreement.

515.    As a result of any such breaches of the Master Subcontract Agreement, Legacy has incurred and will continue to incur damages, including expenses, costs and attorneys' fees in the investigation and defense of this action.

516.    As a result of the breaches of the Master Subcontract Agreement by Alternative Gutters, Legacy is entitled to recover damages for said breaches, including all expenses, costs, and attorneys' fees incurred in the investigation and defense of this action, along with any judgment that may be entered against Legacy.

517. To date, Alternative Gutters has not agreed to defend, indemnify and hold Legacy harmless, nor has Alternative Gutters' Commercial General Liability Insurance Company agreed to provide insurance coverage to Legacy, as is required by the Master Subcontract Agreement.

518. As a result, Legacy has stained damage, and continues to sustain damage, including damage in the nature of attorneys' fees and costs.

WHEREFORE, Fifth Party Plaintiff, Legacy Service USA LLC, respectfully requests that this Honorable Court enter Judgement in its favor and against Fifth Party Defendant, Alternative Gutters, for breach of contract, including delay damages, interest, costs and expenses, and other such relief as the Court deems just and proper.

## COUNT XXVI– CONTRACTUAL INDEMNIFICATION

### Legacy v. Alternative Gutters

519. Legacy repeats and reiterates each and every allegation heretofore made in this Fifth Party Complaint as if set forth more particularly at length.

520. Legacy also incorporates by reference all well-plead averments of Harkins' Amended Third Party Complaint, without admission, as though same were set forth herein.

521. For the reasons set forth above, any amount which Legacy will have to pay in this case in the nature of any settlement, judgment, costs, or attorneys' fees is a loss caused by Alternative Gutters' failure to perform its Work at the Project in accordance with the terms of the Master Subcontract Agreement.

522. For the reasons set forth above, any amount which Legacy will have to pay in this case in the nature of any settlement, judgment, costs, or attorneys' fees is a loss caused by Alternative Gutters' failure to defend and indemnify Legacy from and against the claims asserted by Harkins, as required by the terms Master Subcontract Agreement.

WHEREFORE, Fifth Party Plaintiff Legacy, respectfully requests that this Honorable Court enter judgment in its favor and against Fifth Party Defendant, Alternative Gutters, for contractual indemnification including delay damages, interest, costs and expenses, and other such relief as the Court deems just and proper.

## COUNT XXVII – BREACH OF CONTRACT

### Legacy v. TPC

523.    Legacy repeats and reiterates each and every allegation heretofore made in this Fifth Party Complaint as if set forth more particularly at length.

524.    Legacy also incorporates by reference all well-plead averments of Harkins' Amended Third Party Complaint, without admission, as though same were set forth herein.

525.    TPC was required to perform all work at the Project in accordance with the terms and conditions of the Master Subcontract Agreement. See Exhibit Q.

526.    If the allegations of Harkins' Amended Third Party Complaint are proven true, TPC breached its obligations to perform its work in accordance with the terms and conditions of the Master Subcontract Agreement, including but not limited to Section 3.2 of the Master Subcontract Agreement.

527.    The Master Subcontract Agreement entered into by TPC contained a provision requiring TPC to defend, indemnify and hold Legacy harmless from the types of claims asserted by Harkins in this matter. See Exhibit Q.

528.    TPC is contractually obligated to defend, indemnify and hold Legacy harmless from and against the claims asserted by Harkins in this matter.

529.    Any failure by TPC to defend, indemnify and hold Legacy harmless from and against the claims asserted by Harkins in this matter constitutes a material breach of the Master Subcontract Agreement.

530.    Additionally, the Master Subcontract Agreement also requires TPC to procure and maintain insurance naming Legacy as an Additional Insured. See Exhibit Q.

531.    Any failure by TPC's Commercial General Liability Insurance Company to extend coverage to Legacy as an Additional Insured and to provide defense and indemnification from and against the claims asserted by Harkins is a material breach of the Master Subcontract Agreement.

532.    As a result of any such breaches of the Master Subcontract Agreement, Legacy has incurred and will continue to incur damages, including expenses, costs and attorneys' fees in the investigation and defense of this action.

533.    As a result of the breaches of the Master Subcontract Agreement by TPC, Legacy is entitled to recover damages for said breaches, including all expenses, costs, and attorneys' fees incurred in the investigation and defense of this action, along with any judgment that may be entered against Legacy.

534.    To date, TPC has not agreed to defend, indemnify and hold Legacy harmless, nor has TPC's Commercial General Liability Insurance Company agreed to provide insurance coverage to Legacy, as is required by the Master Subcontract Agreement.

535.    As a result, Legacy has stained damage, and continues to sustain damage, including damage in the nature of attorneys' fees and costs.

WHEREFORE, Fifth Party Plaintiff, Legacy Service USA LLC, respectfully requests that this Honorable Court enter Judgement in its favor and against Fifth Party Defendant, TPC, for

breach of contract, including delay damages, interest, costs and expenses, and other such relief as the Court deems just and proper.

## COUNT XXVIII– CONTRACTUAL INDEMNIFICATION

### Legacy v. TPC

536.    Legacy repeats and reiterates each and every allegation heretofore made in this Fifth Party Complaint as if set forth more particularly at length.

537.    Legacy also incorporates by reference all well-plead averments of Harkins' Amended Third Party Complaint, without admission, as though same were set forth herein.

538.    For the reasons set forth above, any amount which Legacy will have to pay in this case in the nature of any settlement, judgment, costs, or attorneys' fees is a loss caused by TPC's failure to perform its Work at the Project in accordance with the terms of the Master Subcontract Agreement.

539.    For the reasons set forth above, any amount which Legacy will have to pay in this case in the nature of any settlement, judgment, costs, or attorneys' fees is a loss caused by TPC's failure to defend and indemnify Legacy from and against the claims asserted by Harkins, as required by the terms Master Subcontract Agreement.

WHEREFORE, Fifth Party Plaintiff Legacy, respectfully requests that this Honorable Court enter judgment in its favor and against Fifth Party Defendant, TPC, for contractual indemnification including delay damages, interest, costs and expenses, and other such relief as the Court deems just and proper.

## COUNT XXIX – BREACH OF ORAL CONTRACT

### Legacy v. Storm Master

540.    Legacy repeats and reiterates each and every allegation heretofore made in this Fifth Party Complaint as if set forth more particularly at length.

541.    Legacy also incorporates by reference all well-plead averments of Harkins' Amended Third Party Complaint, without admission, as though same were set forth herein.

542.    Storm Master was required to perform all work at the Project in accordance with the terms and conditions of the oral agreement by which it was retained by Legacy.

543.    If the allegations of Harkins' Amended Third Party Complaint are proven true, Storm Master breached its obligations to perform its work in accordance with the terms and conditions the oral agreement it had with Legacy in connection with the Project.

544.    As term of its oral agreement with Legacy, Storm Master was required to procure and maintain insurance naming Legacy as an Additional Insured.

545.    Any failure by Storm Master's Commercial General Liability Insurance Company to extend coverage to Legacy as an Additional Insured and to provide defense and indemnification from and against the claims asserted by Harkins is a material breach of the oral agreement between Storm Master and Legacy.

546.    As a result of any such breaches, Legacy has incurred and will continue to incur damages, including expenses, costs and attorneys' fees in the investigation and defense of this action.

547.    As a result of the breaches the oral agreement by Storm Master, Legacy is entitled to recover damages for said breaches, including all expenses, costs, and attorneys' fees incurred in

the investigation and defense of this action, along with any judgment that may be entered against Legacy.

548.    To date, Storm Master's Commercial General Liability Insurance Company agreed to provide insurance coverage to Legacy, as is required by the Master Subcontract Agreement.

549.    As a result, Legacy has stained damage, and continues to sustain damage, including damage in the nature of attorneys' fees and costs.

WHEREFORE, Fifth Party Plaintiff, Legacy Service USA LLC, respectfully requests that this Honorable Court enter Judgement in its favor and against Fifth Party Defendant, Storm Master, for breach of contract, including delay damages, interest, costs and expenses, and other such relief as the Court deems just and proper.

## COUNT XXX – BREACH OF CONTRACT

### Legacy v. EMKE

550.    Legacy repeats and reiterates each and every allegation heretofore made in this Fifth Party Complaint as if set forth more particularly at length.

551.    Legacy also incorporates by reference all well-plead averments of Harkins' Amended Third Party Complaint, without admission, as though same were set forth herein.

552.    EMKE was required to perform all work at the Project in accordance with the terms and conditions of the Master Subcontract Agreement. See Exhibit R.

553.    If the allegations of Harkins' Amended Third Party Complaint are proven true, EMKE breached its obligations to perform its work in accordance with the terms and conditions of the Master Subcontract Agreement, including but not limited to Section 3.2 of the Master Subcontract Agreement.

554.    The Master Subcontract Agreement entered into by EMKE contained a provision requiring EMKE to defend, indemnify and hold Legacy harmless from the types of claims asserted by Harkins in this matter. See Exhibit R.

555.    EMKE is contractually obligated to defend, indemnify and hold Legacy harmless from and against the claims asserted by Harkins in this matter.

556.    Any failure by Locasta to defend, indemnify and hold Legacy harmless from and against the claims asserted by Harkins in this matter constitutes a material breach of the Master Subcontract Agreement.

557.    Additionally, the Master Subcontract Agreement also requires EMKE to procure and maintain insurance naming Legacy as an Additional Insured. See Exhibit R.

558.    Any failure by EMKE's Commercial General Liability Insurance Company to extend coverage to Legacy as an Additional Insured and to provide defense and indemnification from and against the claims asserted by Harkins is a material breach of the Master Subcontract Agreement.

559.    As a result of any such breaches of the Master Subcontract Agreement, Legacy has incurred and will continue to incur damages, including expenses, costs and attorneys' fees in the investigation and defense of this action.

560.    As a result of the breaches of the Master Subcontract Agreement by EMKE, Legacy is entitled to recover damages for said breaches, including all expenses, costs, and attorneys' fees incurred in the investigation and defense of this action, along with any judgment that may be entered against Legacy.

561.    To date, EMKE has not agreed to defend, indemnify and hold Legacy harmless, nor has EMKE's Commercial General Liability Insurance Company agreed to provide insurance coverage to Legacy, as is required by the Master Subcontract Agreement.

562.    As a result, Legacy has stained damage, and continues to sustain damage, including damage in the nature of attorneys' fees and costs.

WHEREFORE, Fifth Party Plaintiff, Legacy Service USA LLC, respectfully requests that this Honorable Court enter Judgement in its favor and against Fifth Party Defendant, EMKE, for breach of contract, including delay damages, interest, costs and expenses, and other such relief as the Court deems just and proper.

## COUNT XXXI– CONTRACTUAL INDEMNIFICATION

### Legacy v. EMKE

563.    Legacy repeats and reiterates each and every allegation heretofore made in this Fifth Party Complaint as if set forth more particularly at length.

564.    Legacy also incorporates by reference all well-plead averments of Harkins' Amended Third Party Complaint, without admission, as though same were set forth herein.

565.    For the reasons set forth above, any amount which Legacy will have to pay in this case in the nature of any settlement, judgment, costs, or attorneys' fees is a loss caused by EMKE's failure to perform its Work at the Project in accordance with the terms of the Master Subcontract Agreement.

566.    For the reasons set forth above, any amount which Legacy will have to pay in this case in the nature of any settlement, judgment, costs, or attorneys' fees is a loss caused by EMKE's failure to defend and indemnify Legacy from and against the claims asserted by Harkins, as required by the terms Master Subcontract Agreement.

WHEREFORE, Fifth Party Plaintiff Legacy, respectfully requests that this Honorable Court enter judgment in its favor and against Fifth Party Defendant, EMKE, for contractual indemnification including delay damages, interest, costs and expenses, and other such relief as the Court deems just and proper.

## COUNT XXXII – BREACH OF CONTRACT

### Legacy v. Exemplary

567. Legacy repeats and reiterates each and every allegation heretofore made in this Fifth Party Complaint as if set forth more particularly at length.

568. Legacy also incorporates by reference all well-plead averments of Harkins' Amended Third Party Complaint, without admission, as though same were set forth herein.

569. Exemplary was required to perform all work at the Project in accordance with the terms and conditions of the Master Subcontract Agreement. See Exhibit S.

570. If the allegations of Harkins' Amended Third Party Complaint are proven true, Exemplary breached its obligations to perform its work in accordance with the terms and conditions of the Master Subcontract Agreement, including but not limited to Section 3.2 of the Master Subcontract Agreement.

571. The Master Subcontract Agreement entered into by Exemplary contained a provision requiring Exemplary to defend, indemnify and hold Legacy harmless from the types of claims asserted by Harkins in this matter. See Exhibit S.

572. Exemplary is contractually obligated to defend, indemnify and hold Legacy harmless from and against the claims asserted by Harkins in this matter.

573.    Any failure by Locasta to defend, indemnify and hold Legacy harmless from and against the claims asserted by Harkins in this matter constitutes a material breach of the Master Subcontract Agreement.

574.    Additionally, the Master Subcontract Agreement also requires Exemplary to procure and maintain insurance naming Legacy as an Additional Insured. See Exhibit S.

575.    Any failure by Exemplary's Commercial General Liability Insurance Company to extend coverage to Legacy as an Additional Insured and to provide defense and indemnification from and against the claims asserted by Harkins is a material breach of the Master Subcontract Agreement.

576.    As a result of any such breaches of the Master Subcontract Agreement, Legacy has incurred and will continue to incur damages, including expenses, costs and attorneys' fees in the investigation and defense of this action.

577.    As a result of the breaches of the Master Subcontract Agreement by Exemplary, Legacy is entitled to recover damages for said breaches, including all expenses, costs, and attorneys' fees incurred in the investigation and defense of this action, along with any judgment that may be entered against Legacy.

578.    To date, Exemplary has not agreed to defend, indemnify and hold Legacy harmless, nor has Exemplary's Commercial General Liability Insurance Company agreed to provide insurance coverage to Legacy, as is required by the Master Subcontract Agreement.

579.    As a result, Legacy has stained damage, and continues to sustain damage, including damage in the nature of attorneys' fees and costs.

WHEREFORE, Fifth Party Plaintiff, Legacy Service USA LLC, respectfully requests that this Honorable Court enter Judgement in its favor and against Fifth Party Defendant, Exemplary,

for breach of contract, including delay damages, interest, costs and expenses, and other such relief as the Court deems just and proper.

## COUNT XXXIII– CONTRACTUAL INDEMNIFICATION

### Legacy v. Exemplary

580.    Legacy repeats and reiterates each and every allegation heretofore made in this Fifth Party Complaint as if set forth more particularly at length.

581.    Legacy also incorporates by reference all well-plead averments of Harkins' Amended Third Party Complaint, without admission, as though same were set forth herein.

582.    For the reasons set forth above, any amount which Legacy will have to pay in this case in the nature of any settlement, judgment, costs, or attorneys' fees is a loss caused by Exemplary's failure to perform its Work at the Project in accordance with the terms of the Master Subcontract Agreement.

583.    For the reasons set forth above, any amount which Legacy will have to pay in this case in the nature of any settlement, judgment, costs, or attorneys' fees is a loss caused by Exemplary's failure to defend and indemnify Legacy from and against the claims asserted by Harkins, as required by the terms Master Subcontract Agreement.

WHEREFORE, Fifth Party Plaintiff Legacy, respectfully requests that this Honorable Court enter judgment in its favor and against Fifth Party Defendant, Exemplary, for contractual indemnification including delay damages, interest, costs and expenses, and other such relief as the Court deems just and proper.

Respectfully Submitted,

**THOMAS, THOMAS & HAFER LLP**

Dated: January 21, 2025

**By**:    /s/ Benjamin C. Frommer

Benjamin C. Frommer, Esquire
Attorney for Legacy Services USA, LLC
Identification No. 319993
Four Penn Center, Suite 1060
1600 JFK Boulevard
Philadelphia, PA 19103
267-861-7585
bfrommer@tthlaw.com


By:    /s/ Laura J. Herzog

Laura J. Herzog, Esquire
Attorney for Legacy Services USA, LLC
Identification No. 63439
1550 Pond Road, Suite 210
Allentown, PA 18104
620-332-7004
lherzog@tthlaw.com

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| 335 RIGHTERS FERRY ROAD, LP | : | |
| *Plaintiff,* | : | Case No. 2:23-CV-1963 |
| | : | |
| v. | : | |
| | : | |
| MINNO & WASKO ARCHITECTS | : | |
| AND PLANNERS, PC and MOORE | : | |
| CONSULTING ENGINEERS, LLC | : | |
| Defendants, | : | |
| | : | |
| v. | : | |
| | : | |
| HARKINS BUILDERS, INC., et al | : | **JURY TRIAL DEMANDED** |
| *Defendants/Third Party* | : | |
| *Plaintiff,* | : | |
| v. | : | |
| | : | |
| LEGACY SERVICES USA, LLC et al | : | |
| *Third Party Defendants* | : | |
| *[Correctly Fourth Party Defendants]* | : | |
| *and Fifth Party Plaintiffs* | : | |
| | : | |
| v. | : | |
| | : | |
| LOCOSTA CONSTRUCTION, LLC; | : | |
| TREBOR ONE INC.; KONSTANTIN | : | |
| TYASCHKO D/B/A GPHI HOME | : | |
| REMODELING; CHIMBO | : | |
| CONSTRUCTION, LLC; L AND I | : | |
| CONSTRUCTION, LLC; DML | : | |
| ENTERPRISES INC.; GOLDSTONE | : | |
| GENERAL CONTRACTORS | : | |
| CORP.;STORM MASTER CO INC. D/B/A | : | |
| STORM MASTER SOUTH; UMAR | : | |
| CONSTRUCTION LLC; ERNIE BENDER | : | |
| ENTERPRISES INC.; PERFECT | : | |
| EXTERIORS, LLC; FIVE STAR | : | |
| GUTTERS, LLC; GREEN V STAR INC.; | : | |
| ALTERNATIVE GUTTERS, LLC; TP | : | |
| CONSTRUCTION AND ROOFING INC.; | : | |
| EMKE CONTRACTORS, LLC; and | : | |
| EXEMPLARY CONSTRUCTION, LLC; | : | |
| *Fifth Party Defendants* | : | |

## CERTIFICATE OF SERVICE

The undersigned, of the law firm Thomas, Thomas & Hafer LLP, hereby certifies that a true and correct copy of the foregoing Fifth Party Complaint was served on all counsel of record via the United States Federal Court E-filing system.

Respectfully Submitted,

**THOMAS, THOMAS & HAFER LLP**

Dated: January 21, 2025

**By**:    /s/ *Benjamin C. Frommer*
Benjamin C. Frommer, Esquire
Attorney for Legacy Services USA, LLC
Identification No. 319993
Four Penn Center, Suite 1060
1600 JFK Boulevard
Philadelphia, PA 19103
267-861-7585
bfrommer@tthlaw.com

By:    /s/ *Laura J. Herzog*
Laura J. Herzog, Esquire
Attorney for Legacy Services USA, LLC
Identification No. 63439
1550 Pond Road, Suite 210
Allentown, PA 18104
620-332-7004
lherzog@tthlaw.com